UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Westfield Insurance Company, Civil File No. 00-CV-987 JNE/JSM

Plaintiff,

vs.

Weis Builders, Inc., Healey Ramme Co., sued as Healey Ramme Company, CNA Insurance Companies, sued as CNA Insurance Company, Promenade Village Townhomes, L.L.C., and Valley Forge Insurance Company, one of the CNA Companies,

Defendants,

and

Weis Builders, Inc.,

Third Party Plaintiff,

vs.

Waterproofing By Experts, Inc., and BRW Elness Architects, Inc., n/k/a Elness Swenson Graham Architects, Inc., Colloid Environmental Technologies Co., and J-Berd Mechanical Contractors, Inc.,

Third Party Defendants,

and

Colloid Environmental Technologies Co.,

Third-Party Defendant and Fourth-Party Plaintiff,

v.

Chris Craft Industrial Products, Inc.,

Fourth-Party Defendant,

**DEFENDANT AND THIRD-PARTY PLAINTIFF WEIS BUILDERS, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTIONS IN LIMINE**

and

J-Berd Mechanical Contractors, Inc.,

Fourth-Party Plaintiff,

v.

Mikesh, Inc.,

Fourth-Party Defendant.

---

## INTRODUCTION

Defendant and third-party plaintiff Weis Builders, Inc., makes the following motions in limine:

1. Weis requests that the Court exclude from trial any evidence from David Campbell, Sid Bhatt, Richard Stehley, William Arockiasamy, Robert Kudder, Jeffrey Schuh, Jon Camaya, Tim Charboneau or Scott Vanderburg regarding Weis' duties, responsibilities and standard of care as a general contractor on the Promenade Oaks project. None of the aforementioned individuals are general contractors and they are not qualified to testify regarding the responsibilities, duties and standard of care for general contractors.

2. Weis requests that the Court exclude from trial any evidence that leaks have occurred at the repairs performed at the property. There is no reliable evidence establishing that any leaks occurred at any of the repaired areas. Therefore, any evidence suggesting as much should be barred because it would be the product of speculation.

3. Weis requests that, under Federal Rule of Evidence 702, the report and opinions of Robert Strachota be excluded from trial as the introduction of any opinions, evidence or testimony from Mr. Strachota will not assist the jury in understanding the evidence or determining a fact in issue. Mr. Strachota opines regarding an alleged diminished value of the property (i.e., a value with leaks and a value without leaks) and evidence regarding that information is available without his opinions. Thad Palmer, a representative of the company that purchased the property, testified regarding the value of the property with and without leaks.

4. Weis requests that the court exclude from trial the following coverage related

> issues, and the evidence that is related to those issues: whether Weis had consent from Westfield to perform remedial work and the application of the professional services exclusion in the Westfield policy. The introduction of evidence related to these issues is extremely prejudicial to Weis and will be confusing to the jury.

**FACTS**

In light of the summary judgment motions in this case, the court is familiar with the facts and therefore, Weis limits its fact section to those that pertain directly to its motions in limine.

The parties have retained a number of experts to evaluate the property at issue, including Sid Bhatt, William Arockiasamy, Richard Stehley, Jeffrey Schuh, David Campbell, and Robert Kudder. None of these individuals are, or have been, general contractors. Indeed, Mr. Stehely, Mr. Bhatt, Mr. Campbell and Mr. Arockiasamy testified that they have never been general contractors and were not hired to analyze the general contractor's work on this project. *Ex. A, Stehley depo, pg. 79, lines 20-24; Ex. C, Bhatt depo, pg. 56, lines 20-24; Ex. F, Campbell depo, vol. 2, pg. 68, lines 11-20; and Ex. D, Arockiasamy depo, pg. 64, lines 8-10.* Mr. Kudder also testified that he has never been a general contractor. *Ex. B, Kudder depo, pg. 115, lines 16-17.* While Mr. Schuh's company has served as a general contractor, he has never done so, and, on this matter, he was not hired to analyze the general contractor's work on the project. *Ex. E, Schuh depo, pgs. 189-190.*

Also, the new owner of the property retained or employed individuals who analyzed the property, namely, Mr. Camaya, Mr. Vanderburg and Mr. Charboneau. Mr. Camaya testified that he has not been a general contractor and that he does not hold himself out as an expert regarding the standards under which a general contractor operates. *Ex. G, Camaya depo, vol. 1, pg. 109, lines 8-15.* Similarly, Mr. Charboneau testified that has not served as a general contractor and is

not an expert regarding the standards of care for a general contractor. *Ex. H, Charboneau depo, pg. 107, lines 13-21.* Mr. Vanderburg testified that his job on this matter was to perform due diligence on the Promenade property, i.e., inspect the condition of the property. *Ex. I, Vanderberg depo vol. 1, pgs. 27-29.* There is no evidence that he analyzed the role or performance of the general contractor on the project.

There is no evidence that anyone has tested or performed any specific investigation to determine whether any of the areas that Weis repaired continue to leak. All that is and can be offered regarding whether repaired areas are leaking is speculation.

In December 2002, GID purchased the property from Promenade. Thad Palmer was the project manager for GID in its purchase of Promenade. *Ex. J, Palmer depo, pg. 12, lines 21-24.* Mr. Palmer testified that prior to conducting due diligence, he received a broker's package and a litigation disclosure that discussed the water problem and he walked through the property. *Id. at pgs. 14-16, and 21-25.*

The broker's package included the historical occupancy of the property, which Mr. Palmer considered to be "good" (*Id. at pgs. 27-28, lines 9-25, 1-14*), the historical operating statement (*Id. at. pgs. 37-38, lines 21-25, 1-13*), rent rates for four "comparable properties" (*Id. at pg. 29, lines 6-15*), some "sales comparables" (*Id. a. pgs. 33-34, lines 2-25, 1*) and the income and expenses for the property (*Id. at pgs 26-27, lines 8-25, 1-5*). Mr. Palmer also had knowledge regarding the Eagan market as GID owns a rental property within a mile of Promenade known as Alden Pond. *Id. at pgs. 18-19, lines 20-25, 1-2 and pg. 173, lines 6-13.* Based on the information that Mr. Palmer had prior to due diligence, he valued the property at $30 million dollars. *Id. at pgs. 21-23.* Mr. Palmer testified that he arrived at the $30 million dollar value by

creating a financial model and running the economic performance attributes of the property through the model. *Id. at pg. 26, lines 8-15.* The economic performance attributes included the income and expenses for the property, its historical occupancy and Mr. Palmer's estimates of future performance. *Id. at pgs. 26-27, lines 16-25, 1-5.* Mr. Palmer also testified that had he not walked the property or received the litigation disclosure, he would have valued the property at $30.5 million. *Id. at pg. 25 lines 17-22.* According to Mr. Palmer, nothing about the transaction supported a conclusion that the leaking affected rents and occupancy prior to the sale. *Id. at pg. 423, lines 18-24, and pgs. 392-93, lines 22-25, 1-7.*

Mr. Palmer made an initial offer to buy the property for $30 million. *Id. at pg. 76 lines 1-24.* Mr. Palmer testified that ultimately, after due diligence, the purchase price was $26 million ($24.5 million up front with a $1.5 million holdback). *Id. at pg. 155, lines 8-11.* According to Mr. Palmer, a number of factors contributed to the reduction from $30.5 million to $26 million. *Id. at pgs. 312-13, lines 12-25, 1-4 and pg. 314.*

Promenade retained Robert Strachota to perform an appraisal regarding the value of the property with and without leaks. Mr. Strachota performed two appraisals, one prior to the sale and one after the sale. He described his charge as follows:

> Mr. Strachota: The first appraisal was requested prior to the sale of the subject property, and I was being asked as a professional to give an opinion of the value of the Promenade Oaks without any influence of the water condition and with the influence of the water condition. The second appraisal does not deal with the second condition, which is the water condition. We simply appraise the property without any consideration of the water problem, and then we rely on the actual sale of the property as the after condition.

*Ex. K, Strachota depo, pgs. 10-11, lines 18-25, 1-3.*

## ARGUMENT

### I. David Campbell, Sid Bhatt, Richard Stehley, William Arockiasamy, Robert Kudder, Jeffrey Schuh, Jon Camaya, Tim Charboneau and Scott Vanderburg are not general contractors and are not qualified to testify regarding Weis' duties, responsibilities and standard of care as a general contractor on the Promenade Oaks project.

Federal Rule of evidence 702 establishes the parameters for allowing expert testimony in a suit:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

*Fed. Rule. Evid. 702*. Under Federal Rule of Evidence 702, a trial judge, in admitting expert testimony, has a gate-keeping responsibility to "ensure that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141, 143 L.Ed. 2d 238, 119 S.Ct. 1167 (1999) (*citing Daubert v. Merrell Dow Parm., Inc.*, 509 U.S. 579, 597, 125 L.Ed. 2d 469, 113 S.Ct. 2786 (1993) and applying Daubert to the testimony of engineers and other experts). Both the Eighth Circuit Court of Appeals and the Supreme Court have made clear that "a person, although qualified as an expert in one area of expertise, may be precluded from offering opinions beyond that expertise, or that are not founded on a reliable methodology." *Teska v. Potlatch Corp.*, 184 F. Supp 2d. 913, 919 (D. Minn. 2002) quoting *Smith v. Rasmussen*, 57 F. Supp.2d 736, 766 (N.D. Iowa 1999), citing *Kumho Tire*, supra at 141. Ultimately, "it is the responsibility of the trial judge to determine whether a particular expert has sufficient specialized knowledge to assist jurors in deciding the specific issues in the case." *Wheeling Pittsburgh Steel Corp. v. Beelman River Terminals, Inc.,* 254 F.3d

706, 715 (8th Cir. 2001) citing *Kumho Tire*, supra at 156, 119 S.Ct. 1167.

Here, Mr. Campbell, Mr. Bhatt, Mr. Arockiasamy, Mr. Kudder, Mr. Schuh, Mr. Stehley, Mr. Camaya, Mr. Charboneau and Mr. Vanderburg do not have the requisite expertise regarding the duties, responsibilities and standard of care for general contractors. These individuals are not general contractors and their respective areas of expertise do not concern the standard of care, duties and responsibilities of general contractors. These individuals may be able to testify regarding their own areas of expertise, but they are not general contractors and they do not hold themselves out as general contractors. Indeed, many of them testified that they were not retained to analyze the role of the general contractor in this matter. As a result, they should not be allowed to offer expert testimony/evidence regarding Weis' duties, responsibilities and standard of care as a general contractor. Any evidence they offer regarding that subject matter would be speculation. *Wheeling Pittsburgh Steel Corp. v. Beelman River Terminals, Inc.*, 254 F.3d 706, 715 (8th Cir. 2001)(confirming that even if the witness may testify as an expert on one aspect of an issue, the trial court must limit the scope of the witness' testimony to the witness' areas of expertise so as to ensure the testimony is reliable under Rule 702).

As a result, these individuals should be precluded from presenting any evidence regarding the standard of care for general contractors in this matter or regarding what Weis should have done on this project.

**II. There is no reliable evidence that any of the areas repaired at Promenade have leaked since repairs. Therefore, there is no basis for any opinions, testimony or evidence alleging that repaired areas have leaked and such evidence should be excluded.**

It has been suggested that areas where repairs were made have continued to leak. There is

no evidence, however, that anyone performed any investigation or tests to determine whether the repaired areas have leaked since repairs. Therefore, any opinions provided regarding leaks at repaired areas are based on speculation and lack foundation and should be excluded. Reliability means the evidence must be based upon scientific knowledge, i.e., "grounded in the methods and procedures of science," and must represent "more than [a] subjective belief or [an] unsupported speculation**.**" *Daubert*, 113 S.Ct. at 2796.

**III.**. **Mr. Strachota's opinions will not assist the jury in deciding an issue of fact or understanding the evidence in this matter. Therefore, Mr. Strachota's opinions, testimony and evidence should be excluded**.

Promenade hired Mr. Strachota to provide an assessment of the property with and without leaks, apparently, to assist the jury with evaluating the value of the property. As Mr. Palmer's testimony illustrates, the sale of the property provides an actual assessment of the property with and without leaks. Mr. Palmer attached a value of $30.5 million to the property without leaks. His company purchased the property for $26 million after he learned of leaks and other information regarding the property that impacted his decision to lower the purchase price. In light of Mr. Palmer' testimony and the documents identified during Mr. Palmer's deposition, Mr. Strachota no longer serves a function in this case. An expert is only necessary where he can provide information not available to the lay person that will assist the lay person in understanding the evidence and/or deciding an issue of fact. *Paris Adult Theatre I et al v. Slaton, District Attorney, et al,* 413 U.S. 49, 57, 37 L.Ed. 2d 446, 456, 93 S.Ct. 2628, 2635 n6 (1973)(confirming that expert testimony "is usually admitted for the purpose of explaining to lay jurors what they otherwise could not understand"); and *Milwaukee and St. Paul Railway Co. v. Kellogg*, 94 U.S. 469, 472-73, 24 L.Ed. 256, 258 (1877)(holding that experts are not permitted to

state their conclusions where the subject matter of a proposed inquiry is a matter of common observation upon which lay persons are capable of forming a judgment). With the information that Mr. Palmer provides, the jury does not need Mr. Strachota's opinions to understand the evidence or decide issues. Mr. Strachota does not provide any additional information that will assist the trier of fact and therefore, any evidence from Mr. Strachota should be excluded.

**IV. Evidence related to whether Westfield consented to Weis' remedial work or the application of a professional services exclusion in Westfield's policy should be excluded from this matter because the introduction of such evidence will be extremely prejudicial to Weis and will confuse the jury.**

Rule 403 of the Federal Rules of Evidence establishes that where the danger of unfair prejudice or confusion outweighs the probative value of relevant evidence, relevant evidence should be excluded; "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury…" *Fed. R. Evid. 403.* Here, Westfield seeks to introduce evidence regarding an insurer's consent to perform repair work and the application of a policy exclusion. The danger of unfair prejudice and confusion that would result from the introduction of this evidence should preclude it from this matter.

The trial at issue concerns construction defect and water infiltration claims. Promenade sued Weis and alleges that Weis is responsible for damages resulting from defective construction and water infiltration. The issues related to these claims will take center stage at the trial. While there is a coverage aspect to the case, the coverage aspect will be secondary. In fact, most of the coverage issues will be decided by the evidence presented in the main part of the case. However, there are a few coverage issues that are solely related to coverage and those issues should be kept

out of this matter.

There are coverage issues concerning whether Weis had consent to perform repair work and the applicability of policy exclusions. These issues are completely distinct from the issues that will be decided at trial. They will require the introduction of witnesses and exhibits that would not be introduced in the trial if these issues were not part of the case. Because of the unrelated and separate nature of the coverage issues, the introduction of the issues and the evidence that goes with those issues will be extremely prejudicial to Weis and will confuse the jury. As explained in the motion to bifurcate, the introduction of these coverage issues in the middle of the trial will unduly tax the jury and it will put Weis in a difficult position – having to defend against claims from Promenade and its own insurers. The coverage-only issues can be decided after this matter and should not be made a part of this case. Therefore, Weis requests that the court exclude these issues from trial and any evidence pertaining to the issues.

**CONCLUSION**

Defendant and third-party plaintiff Weis Builders requests that the court exclude any evidence from Mr. Campbell, Mr. Kudder, Mr. Schuh, Mr. Bhatt, Mr. Arockiasamy, Mr. Camaya, Mr. Vanderburg and Mr,. Charboneau regarding the standards of care for a general contractor because none of these people have expertise regarding the duties, responsibilities and standard of care for a general contractor.

Similarly, Weis requests that the court exclude any evidence indicating that there are leaks at areas that Weis repaired. There is no reliable evidence establishing that there are leaks at repaired areas. No one has tested or investigated the site to determine whether leaks are

occurring at those areas. Therefore, any evidence regarding leaks at the repairs would only be based on speculation and such evidence must be excluded.

Weis also requests that the court exclude any and all opinions and evidence from Mr. Strachota because his services in this matter are no longer needed. As an expert witness, Mr. Strachota is only allowed to testify and produce evidence where his knowledge is needed to educate the jury. Here, because of Mr. Palmer's testimony and the sale of the project, Mr. Strachota's testimony is not needed.

Finally, Weis requests that the court exclude from trial any evidence related to whether Westfield consented to Weis' remedial work and any evidence related to the application of Westfield's policy exclusions. The introduction of such coverage-only evidence will prejudice Weis and confuse the jury and under those circumstances the evidence should not be allowed.

Based upon the foregoing, Weis Builders respectfully requests that the court grant its motions in limine.

Dated: September 3, 2004

s/ Chad J. Stepan______________
Michael D. Hutchens # 167812
Chad J. Stepan. #0279535
Meagher & Geer, P.L.L.P.
4200 Multifoods Tower
33 South Sixth Street
Minneapolis, MN 55402
(612) 338-0661

and

Dean B. Thomson, #141045
Jocelyn L. Knoll, #22988X
Fabyanske Westra & Hart, P.A.
800 LaSalle Avenue, Suite 1900
Minneapolis, MN 55402

***Attorneys for Defendant and***
***Third-Party Plaintiff Weis Builders, Inc.***

/1159280