COPY



UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Westfield Insurance Company,

Plaintiff, Civil File No. 00-CV-987 JEL/JSM

vs.

Weis Builders, Inc.; Healey Ramme Co., sued as Healey Ramme Company; CNA Insurance Companies, sued as CNA Insurance Company; Promenade Village Townhomes, L.L.C.; Valley Forge Insurance Company, one of the CNA Insurance Companies,

Defendants,

and

Weis Builders, Inc.,

Third-Party Plaintiff,

vs.

Waterproofing By Experts, Inc., and BRW Elness Architects, Inc., a/k/a Elness Swenson Graham Architects, Inc., Colloid Environmental Technologies Co., and J-Berd Mechanical Contractors, Inc.,

Third-Party Defendants,

* * * * * *

DEPOSITION OF: RICHARD D. STEHLY, P.E.
TAKEN ON: THURSDAY, OCTOBER 9, 2003
COMMENCING AT: 9:30 A.M.

* * * * * *

CHARLES G. WILLIAMSON, Court Reporter
4209 113th Street West
Bloomington, MN 55437
Telephone: 952-888-8586
Fax: 952-888-3562



and

Colloid Environmental Technologies Co.,

Fourth-Party Plaintiff,

vs.

Chris Craft Industrial Products, Inc.,

Fourth-Party Defendant,

and

J-Berd Mechanical Contractors, Inc.,

Fourth-Party Plaintiff,

vs.

Mikesh, Inc.,

Fourth-Party Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - -

EXHIBIT A



NOTES

Page Line



APPEARANCES:

PATRICK D. REILLY, Esq., Erstad & Riemer, P.A., 200 Riverside Office Tower, 8009 34th Avenue South, Minneapolis, MN 55425, appeared representing Third-Party Defendant and Fourth-Party Plaintiff Colloid Environmental Technologies Co.

G. JOHN VEITH, Esq., Brown & Carlson, P.A., 5411 Circle Down Avenue, Suite 100, Minneapolis, MN 55416-1311, appeared representing Fourth-Party Defendant Chris Craft Industrial Products, Inc.

CHAD J. STEPAN, Esq., Meagher & Geer, P.L.L.P., 33 South Sixth Street, Suite 4200, Minneapolis, MN 55402-3788, appeared representing Defendant Weis Builders, Inc.

LEO I. BRISBOIS, Esq., Stich, Angell, Kreidler & Dodge, 250 Second Avenue South, Suite 120, Minneapolis, MN 55401, appeared representing Defendant Valley Forge Insurance Company.

MARK S. BROWN, Esq., Iverson Reuvers, LLC, 250 Townline Plaza, 8585 West 78th Street, Bloomington, MN 55438, appeared representing Third-Party Defendant Waterproofing By Experts, Inc.

WILLIAM D. HULL, Esq., Coleman, Hull & Van Vliet, PLLP, 8500 Normandale Lake Boulevard, Suite 2110, Minneapolis, MN 55437, appeared representing Third-Party Defendant Elness Swenson Graham Architects, Inc.

CHANDELLE HEYER, Esq., Tomsche, Sonnesyn & Tomsche, P.A., 610 Ottawa Avenue North, Minneapolis, MN 55422, appeared representing Third-Party Defendant J-Berd Mechanical Contractors, Inc.

STEVEN E. RAU, Esq., Flynn, Gaskins & Bennett, LLP, 2900 Metropolitan Centre, 333 South Seventh Street, Minneapolis, MN 55402-2440, appeared representing Defendant Promenade Village Townhomes, LLC.

ANDREA E. REISBORD, Esq., Cousineau, McGuire & Anderson, 600 Travelers Express Tower, 1550 Utica Avenue South, Minneapolis, MN 55416-5318, appeared representing Westfield Insurance Company.

manufacturer of a product to include that particular product in something you're designing?

MR. HULL: I'll object to the form of the question as vague.

THE WITNESS: Are you asking me in a general way, are there things that I have designed and I have relied on a supplier to give me information about it?

MR. STEPAN: Yes. You're designing a project, just generally, and looking for certain material to use and manufacturers provide to you their literature, recommend to you, hey, our material will work for this particular project. Is that the kind of information you rely on from the manufacturer?

THE WITNESS: Yes.

Q (By Mr. Stepan.) Would you say that it would be reasonable, for instance, as part of this project, if the waterproofing manufacturer were to recommend the Swelltite 3000 for this application, for others in the project to rely on those recommendations, that it would be reasonable?

MR. HULL: I'm going to object to the form of the question as an incomplete hypothetical.

Q (By Mr. Stepan.) Do you understand the question, sir?

A **Yes. If the people that you are speaking about receive information from a supplier and they don't know anything**



**about the design of waterproofing systems, I think they should not rely on the information that's being given to them as being necessarily proper.**

Q Why is that?

A **Because if they don't know -- if they're not -- if they're not skilled or if they aren't a waterproofing designer, they don't have the judgment that they need to evaluate the suitability for the claims that are being made about those products.**

Q How do they gain the ability to make a judgment, then?

A **Well, either they go hire someone who is a designer or they invest the time and effort, the learning, so that they can be a designer. One or the other.**

Q Would you consider a waterproofing subcontractor to be somebody who's got knowledge enough to make a determination based upon what the manufacturer has told them about their project?

MR. BROWN: Object that it lacks foundation. Improper hypothetical, too.

THE WITNESS: I think a waterproofing contractor would be knowledgeable about the means and methods of installing waterproofing. They may not necessarily be skilled in designing a waterproofing system.

Q (By Mr. Stepan.) If the waterproofing manufacturer comes



to the waterproofing subcontractor and says, "Our product is applicable for the project you're going to be working on," is it reasonable for the waterproofing subcontractor to rely on that manufacturer's representation?

A **Yes. I think -- I think that is fair that he could -- that he should be able to rely on that, but I don't believe it is necessarily -- I don't believe it necessarily makes the claims of the supplier true, that it is an appropriate system.**

Q Were you aware that the mechanical engineer in this project originally specified one sort of drain for the courtyards and that a different kind of drain was ultimately installed?

MS. HEYER: Would you repeat the question?

MR. STEPAN: Would you read it back, Charlie?

(The court reporter read back the last question at this time.)

THE WITNESS: No.

Q (By Mr. Stepan.) As part of your assignment on this case, were you hired to analyze the general contractor's work?

A **No.**

Q Have you ever been a general contractor?

A **No.**

Q You're not here to offer any opinions regarding the



general contractor's work; is that right?

A **I'll only answer whatever questions I'm asked.**

Q Are you here to offer opinions regarding the general contractor's work on this case?

A **If I know something about the general contractor's work and you ask me a question about it, I will answer.**

Q Do you have any plans to offer any opinions regarding whether the general contractor on this case met the standard of care for a general contractor?

MR. HULL: I'm going to object to the form of the question. It's so vague. Are you asking him about anything in particular about the general contractor?

Q (By Mr. Stepan.) Do you understand the question, sir?

A **I understand the question. I have no plan.**

Q Take a look at Exhibit 814, the August 11th, 2003 report. The introductory paragraph says, "The purpose of our work --" the very last sentence says, "The purpose of our work was to provide an opinion about the suitability of the design and construction." Do you see that?

A **Yes.**

Q Did anybody else from American Engineering Testing assist you in putting together this report, any part of the analysis?

A **I did obtain some information from Wing Kong.**

Q Could you spell that, please?

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Westfield Insurance Company,

Plaintiff,

vs. Civil File No. 00-CV-987(PAM/JGL)

Weis Builders, Inc.; Healey Ramme Co., sued as Healey Ramme Company; CNA Insurance Companies, sued as CNA Insurance Company; Promenade Village Townhomes, L.L.C.; Valley Forge Insurance Company, one of the CNA Insurance Companies,

Defendants,

and

Weis Builders, Inc.,

Third-Party Plaintiff,

vs.

Waterproofing By Experts, Inc.; BRW Elness Architects, Inc., n/k/a Elness Swenson Graham Architects, Inc.; Promenade Village Townhomes; Valley Forge Insurance Company; Colloid Environmental Technologies Company; and J-Berd Mechanical Contractors, Inc.,

Third-Party Defendants,

and

Colloid Environmental Technologies Company,

Fourth-Party Plaintiff,

vs.

Chris Craft Industrial Products, Inc.; and Mikesh, Inc.,

Fourth-Party Defendants.

---



The Deposition of ROBERT J. KUDDER, S.E., Ph.D., taken pursuant to Notice of Taking Deposition, taken before Barbara F. Schwegman, a Notary Public in and for the County of Washington, State of Minnesota, taken on the 14th day of October, 2003, at 8500 Normandale Lake Boulevard, Teal Room, Minneapolis, Minnesota, commencing at approximately 9:15 a.m.

APPEARANCES:

ANDREA E. REISBORD, ESQUIRE, of the Law Firm of COUSINEAU, McGUIRE, ANDERSON, CHARTERED, 600 Travelers Express Tower, 1550 Utica Avenue South, Minneapolis, Minnesota, 55416-5318, appeared for and on behalf of Plaintiff, Westfield Insurance Company.

CHAD J. STEPAN, ESQUIRE, of the Law Firm of MEAGHER & GEER, PLLP, 4200 Multifoods Tower, 33 South Sixth Street, Minneapolis, Minnesota, 55402-3788, appeared for and on behalf of Defendant and Third-Party Plaintiff, Weis Builders, Inc.

STEVEN E. RAU, ESQUIRE, of the Law Firm of FLYNN, GASKINS & BENNETT, LLP, 333 South Seventh Street, Suite 2900, Minneapolis, Minnesota, 55402, appeared for and on behalf of Defendants, Promenade Village Townhomes, LLC and Healey Ramme Company.

LEO I. BRISBOIS, ESQUIRE, of the Law Firm of STICH, ANGELL & KREIDLER, P.A., The Crossings, Suite 120, 250 Second Avenue South, Minneapolis, Minnesota, 55401, appeared for and on behalf of Defendant, Valley Forge Insurance Company.

EXHIBIT B



APPEARANCES:

MARK S. BROWN, ESQUIRE, of the Law Firm of MURNANE, CONLIN, WHITE & BRANDT, P.A., 444 cedar Street, Suite 1800, Saint Paul, Minnesota, 55101, appeared for and on behalf of Third-Party Defendants, Waterproofing By Experts, Inc.

WILLIAM D. HULL, ESQUIRE, of the Law Firm of COLEMAN, HULL & VAN VLIET, 8500 Normandale Lake Boulevard, Suite 2110, Minneapolis, Minnesota, 55437, appeared for and on behalf of Third-Party Defendant, BRW Elness Architects, Inc., n/k/a Elness Swenson Graham Architects, Inc.

ROLF E. SONNESYN, ESQUIRE and CHANDELLE L. HEYER, ESQUIRE, of the Law Firm of TOMSCHE, SONNESYN & TOMSCHE, P.A., 610 Ottawa Avenue North, Minneapolis, Minnesota, 55422, appeared for and on behalf of Third-Party Defendant, J-Berd Mechanical Contractors, Inc.

PATRICK D. REILLY, ESQUIRE, of the Law Firm of ERSTAD & RIEMER, P.A., 200 Riverview Office Tower, 8009 34th Avenue South, Minneapolis, Minnesota, 55425, appeared for and on behalf of Third-Party Defendant and Fourth-Party Plaintiff, Colloid Environmental Technologies Company.

G. JOHN VEITH, ESQUIRE, of the Law Firm of BROWN & CARLSON, P.A., 5411 Circle Down Avenue, Suite 100, Minneapolis, Minnesota, 55416, appeared for and on behalf of Fourth-Party Defendant, Chris Craft Industrial Products, Inc.

CAMERON BOYD, ESQUIRE, of the law firm of LINDQUIST & VENNUM, PLLP, 4200 IDS Center, 80 South Eighth Street, Minneapolis, Minnesota, 55402-2274, appeared for and on behalf of Fourth-Party Defendant, Mikesh, Inc.

*The Original is in the possession of Attorney William D. Hull.*



INDEX


| | Page |
|---|---|
| ROBERT J. KUDDER, S.E., Ph.D. | |
| Cross-examination by Mr. Hull | 5 |
| Cross-examination by Mr. Stepan | 113 |
| Cross-examination by Mr. Rau | 169 |
| Cross-examination by Mr. Sonnesyn | 191 |
| Cross-examination by Mr. Boyd | 219 |
| Recross-examination by Mr. Hull | 223 |


EXHIBITS


| | |
|---|---|
| Exhibit 829, 8-15-03, Evaluation of Courtyard Waterproofing | 12 |
| Exhibit 830, The Construction Specifier | 106 |
| Exhibit 831, 8-27-02, P30A, Photograph of rolled up drainage board | 207 |
| Exhibit 832, 8-27-02, Photograph 14A | 209 |
| Exhibit 833, 8-27-02, Photograph 15A | 209 |
| Exhibit 834, 8-27-02, Photograph 16A | 209 |
| Exhibit 835, 8-27-02, Photograph 17A | 209 |

Page 113

MR. BROWN: I'm just telling you. He's just going to be treated the same as every other expert.
MR. STEPAN: I understand. I also think that the court said it was a day and a half for each expert if need be. We can discuss that if it's necessary I guess.

CROSS-EXAMINATION

BY MR. STEPAN:
Q. Mr. Kudder, my name is Chad Stepan. I'm one of the attorneys for Weis Builders in this matter, and I've got some questions for you as well here today. I may jump around a bit, and I apologize in advance for that. I'm just kind of following up on some of the topics that Mr. Hull asked you about in addition to my own questions. To begin with, this green folder that was produced here during the deposition from your file, you call this your correspondence file?
A. Yes.
Q. I note on your resume that among a number of continuing education seminars you have attended, one involved construction contracts at the University of Wisconsin?
A. Yes, sir.
Q. When was that?
A. I don't recall. Is it on the CV? I mean is

Page 114

the date on the CV?
Q. No.
A. I don't recall specifically.
Q. Any ballpark?
A. Late '80s, mid to late '80s.
Q. You previously worked at Wiss, Janney, Elstner; is that right?
A. Yes, sir.
Q. Do you know -- are you familiar with Rich Koziol?
A. No. He joined after I left.
Q. You're an engineer; is that correct?
A. Correct.
Q. A structural engineer?
A. Yes.
Q. Do you have any training as a civil engineer?
A. Well, the department I graduated from is the department of civil engineering. Structural is a branch of civil.
Q. Do you have any training as a mechanical engineer?
A. No, sir, other than the normal curricula.
Q. Courses you would have taken as part of getting your degree?
A. Yeah.

Page 115

Q. Do you have any training as an architect?
A. No, not guilty.
Q. I know in your CV here there's a number of presentations and publications that you either presented yourself or participated in presenting and creating; is that right?
A. Correct.
Q. Do you hang onto the publications that you produce? Do you have copies of those?
A. Publications, yes.
Q. How about when you give a presentation? Do you ever produce any materials for the presentation that you distribute?
A. Handouts, typically not. It's just the -- what's used as the presentation.
Q. Have you ever been a general contractor?
A. No.
Q. Have you ever been a subcontractor?
A. No.
Q. As part of your analysis on this project, did you determine or were you able to determine the cause of any specific leak on-site?
A. No, sir.
Q. Are you able to look at any evidence of leak staining or efflorescence and trace it back to a particular

Page 116

source?
A. No, sir.
Q. I'm going to have you take a look Exhibit 829, your report. Starting on the first page at the bottom of the page, it's the paragraph that starts with "The Promenade Village Townhomes," and in particular I'm looking at what would be the second to the last sentence in that paragraph saying "The roofs are sloped and shingled and were designed without gutters." Do you see that?
A. Yes. Uh-huh.
Q. What's the significance of there not being gutters, if any?
A. Well, more than just gutters, there's no gutter downspout and independent drainage system for the roofs so that the roof's water load has to be handled by the courtyard drainage system on the courtyard side of the ridge. There's a building on each side of the courtyard, so that's two half roofs that feed into the courtyard and then there's two half roofs that feed away from the courtyard.
Q. And what's the significance of that, in your opinion, as it pertains to the issues we're dealing with here in the courtyards?
A. That water, which is not actually falling on the courtyard, it's falling on the roof, has to be managed

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Westfield Insurance Company,

Plaintiff, Civil File No. 00-CV-987 JEL/JSM

vs.

Weis Builders, Inc.; Healey Ramme Co., sued as Healey Ramme Company; CNA Insurance Companies, sued as CNA Insurance Company; Promenade Village Townhomes, L.L.C.; Valley Forge Insurance Company, one of the CNA Insurance Companies,

Defendants,

and

Weis Builders, Inc.,

Third-Party Plaintiff,

vs.

Waterproofing By Experts, Inc., and BRW Elness Architects, Inc., a/k/a Elness Swenson Graham Architects, Inc., Colloid Environmental Technologies Co., and J-Berd Mechanical Contractors, Inc.,

Third-Party Defendants,

* * * * * *

DEPOSITION OF: SID N. BHATT, P.E.
TAKEN ON: MONDAY, OCTOBER 13, 2003
COMMENCING AT: 9:30 A.M.

* * * * * *

CHARLES G. WILLIAMSON, Court Reporter
4209 113th Street West
Bloomington, MN 55437
Telephone: 952-888-8586
Fax: 952-888-3562



and

Colloid Environmental Technologies Co.,

Fourth-Party Plaintiff,

vs.

Chris Craft Industrial Products, Inc.,

Fourth-Party Defendant,

and

J-Berd Mechanical Contractors, Inc.,

Fourth-Party Plaintiff,

vs.

Mikesh, Inc.,

Fourth-Party Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - -

EXHIBIT C



NOTES

Page Line



APPEARANCES:

PATRICK D. REILLY, Esq., Erstad & Riemer, P.A., 200 Riverside Office Tower, 8009 34th Avenue South, Minneapolis, MN 55425, appeared representing Third-Party Defendant and Fourth-Party Plaintiff Colloid Environmental Technologies Co.

G. JOHN VEITH, Esq., Brown & Carlson, P.A., 5411 Circle Down Avenue, Suite 100, Minneapolis, MN 55416-1311, appeared representing Fourth-Party Defendant Chris Craft Industrial Products, Inc.

CHAD J. STEPAN, Esq., Meagher & Geer, P.L.L.P., 33 South Sixth Street, Suite 4200, Minneapolis, MN 55402-3788, appeared representing Defendant Weis Builders, Inc.

LEO I. BRISBOIS, Esq., Stich, Angell, Kreidler & Dodge, 250 Second Avenue South, Suite 120, Minneapolis, MN 55401, appeared representing Defendant Valley Forge Insurance Company.

MARK S. BROWN, Esq., Iverson Reuvers, LLC, 250 Townline Plaza, 8585 West 78th Street, Bloomington, MN 55438, appeared representing Third-Party Defendant Waterproofing By Experts, Inc.

WILLIAM D. HULL, Esq., Coleman, Hull & Van Vliet, PLLP, 8500 Normandale Lake Boulevard, Suite 2110, Minneapolis, MN 55437, appeared representing Third-Party Defendant Elness Swenson Graham Architects, Inc.

ROLF E. SONNESYN, Esq., Tomsche, Sonnesyn & Tomsche, P.A., 610 Ottawa Avenue North, Minneapolis, MN 55422, appeared representing Third-Party Defendant J-Berd Mechanical Contractors, Inc.

STEVEN E. RAU, Esq., Flynn, Gaskins & Bennett, LLP, 2900 Metropolitan Centre, 333 South Seventh Street, Minneapolis, MN 55402-2440, appeared representing Defendant Promenade Village Townhomes, LLC.

ANDREA E. REISBORD, Esq., Cousineau, McGuire & Anderson, 600 Travelers Express Tower, 1550 Utica Avenue South, Minneapolis, MN 55416-5318, appeared representing Westfield Insurance Company.

JONATHAN M. BYE, Esq., Lindquist & Vennum, 4200 IDS Center, 80 South Eighth Street, Minneapolis, MN 55402, appeared representing Fourth-Party Defendant Mikesh, Inc.

inches above, that two and a half inches is going to sit
there?
A **Yes, yes. That's generally the case.**
Q Do you know why there were no perforations made any lower?
A **I don't know.**
Q Does it have anything to do with the type of drain that
was used, do you know?
A **I do not know.**
Q You didn't analyze that?
A **No.**
Q Did you notice on the mechanical plans that the locations
for courtyard drains were called out?
A **My recollection is that there were some handwritten notes**
**or features marked on the mechanical prints with respect**
**to the drain piping, and yes, that there were locations**
**of the drains marked on those mechanical prints.**
Q And it's my understanding that there's circles and it says
P-D for plaza drain; is that right?
A **Yes. I remember that.**
Q Would you expect the contractors installing the drains to
follow those plans so that where there's a circle with a
P-D on the plan, that that's where they're going to
install the drain in the field?
A **The subcontractor would follow those requirements unless**
**there were some other arrangements that necessitated**



**their doing something different.**
Q What do you mean by that?
A **In a construction project, particularly one of the size**
**of the Promenade, there will be continuous construction**
**management and there will be meetings of the various**
**contractors and subcontractors involved and so there are**
**usually things that go on in those meetings, so things**
**are not always as shown on blueprints, and therefore I**
**say that the subcontractor would generally follow what is**
**on the prints, but that is not necessarily the final**
**arrangement.**
Q So absent something coming up in a meeting where the
subcontractor is directed to change a location or because
there's some other piping or something going to interfere
or something like that or a location has to be changed,
absent something like that, you would expect the
subcontractor to follow what was in the plan; correct?
A **Precisely, yes. That is one example of the need to**
**change something. There could be other examples, but**
**that is a good example.**
Q Would you expect the mechanical engineer in a project like
this to know how the drain system he's designing is going
to fit in with the rest of the work on the project?
A **It depends upon the scope of the work that the mechanical**
**engineer was asked to perform. So it's too general a**



**question for me to answer.**
Q Did you do anything to analyze what the scope of work was
for the mechanical engineer on this project?
A **I did not. Did you ask for the mechanical engineer or**
**the mechanical contractor?**
Q I'm sorry. I'll start over. My intent was the mechanical
engineer. Would you expect on a project like this that
the mechanical engineer would need to know how his design
was going to coordinate with the other work being
performed in the project?
MR. BYE: Objection, vague, no foundation.
THE WITNESS: It will depend upon what the
particular assignment for the mechanical engineer is. Of
course, the mechanical engineer would work in conjunction
with other parts of the project, in a properly managed
project. But this is again a general question. I cannot
answer that.
Q (By Mr. Stepan.) Did you do anything to analyze what the
scope of work was for the mechanical engineer on this
project?
MR. BYE: Which mechanical engineer?
MR. STEPAN: That would be Mikesh, the
mechanical engineer for the project.
MR. BYE: Not Steen, the mechanical
engineer for the project?



Q (By Mr. Stepan.) We're talking about Mikesh here. Is
that your understanding of who the mechanical engineer
was?
A **For the part of the system that I was analyzing, yes.**
Q You were talking about the courtyards?
A **Yes. And my answer is no, I did not, other than -- I did**
**note one thing, though. I did notice that Mikesh relied**
**on the plumbing code to arrive at the size and the number**
**of the drain openings in the courtyard and that initially**
**there was some issue about whether or not that was the**
**proper method or whether the City of Eagan requirements**
**superseded or had a stricter requirement, and that is**
**something that I was asked about earlier today and I have**
**given the answers.**
Q In your work as a mechanical engineer, do you ever design
projects, new projects as opposed to remedial projects?
A **I have not.**
Q Have you ever designed remedial projects?
A **No.**
Q Were you hired to analyze the general contractor's work on
this project?
A **No.**
Q Have you ever been a general contractor yourself?
A **No.**
Q I'm going to have you take a look at Exhibit 827, your

1

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Westfield Insurance Company,

Plaintiff, Civil File No. 00-CV-987 JEL/JSM

vs.

Weis Builders, Inc.; Healey Ramme Co., sued as Healey Ramme Company; CNA Insurance Companies, sued as CNA Insurance Company; Promenade Village Townhomes, L.L.C.; Valley Forge Insurance Company, one of the CNA Insurance Companies,

Defendants,

and

Weis Builders, Inc.,

Third-Party Plaintiff,

vs.

Waterproofing By Experts, Inc., and BRW Elness Architects, Inc., a/k/a Elness Swenson Graham Architects, Inc., Colloid Environmental Technologies Co., and J-Berd Mechanical Contractors, Inc.,

Third-Party Defendants,

* * * * * *

DEPOSITION OF: WILLIAM D. AROCKIASAMY, P.E.
TAKEN ON: TUESDAY, OCTOBER 7, 2003
COMMENCING AT: 9:40 A.M.

* * * * * *

CHARLES G. WILLIAMSON, Court Reporter
4209 113th Street West
Bloomington, MN 55437
Telephone: 952-888-8586
Fax: 952-888-3562

2

and

Colloid Environmental Technologies Co.,

Fourth-Party Plaintiff,

vs.

Chris Craft Industrial Products, Inc.,

Fourth-Party Defendant,

and

J-Berd Mechanical Contractors, Inc.,

Fourth-Party Plaintiff,

vs.

Mikesh, Inc.,

Fourth-Party Defendant.

---

EXHIBIT D

3

NOTES

Page Line

4

APPEARANCES:

PATRICK D. REILLY, Esq., Erstad & Riemer, P.A., 200 Riverside Office Tower, 8009 34th Avenue South, Minneapolis, MN 55425, appeared representing Third-Party Defendant and Fourth-Party Plaintiff Colloid Environmental Technologies Co.

G. JOHN VEITH, Esq., Brown & Carlson, P.A., 5411 Circle Down Avenue, Suite 100, Minneapolis, MN 55416-1311, appeared representing Fourth-Party Defendant Chris Craft Industrial Products, Inc.

CHAD J. STEPAN, Esq., Meagher & Geer, P.L.L.P., 33 South Sixth Street, Suite 4200, Minneapolis, MN 55402-3788, appeared representing Defendant Weis Builders, Inc.

LEO I. BRISBOIS, Esq., Stich, Angell, Kreidler & Dodge, 250 Second Avenue South, Suite 120, Minneapolis, MN 55401, appeared representing Defendant Valley Forge Insurance Company.

MARK S. BROWN, Esq., Iverson Reuvers, LLC, 250 Townline Plaza, 8585 West 78th Street, Bloomington, MN 55438, appeared representing Third-Party Defendant Waterproofing By Experts, Inc.

WILLIAM D. HULL, Esq., Coleman, Hull & Van Vliet, PLLP, 8500 Normandale Lake Boulevard, Suite 2110, Minneapolis, MN 55437, appeared representing Third-Party Defendant Elness Swenson Graham Architects, Inc.

ROLF E. SONNESYN, Esq., Tomsche, Sonnesyn & Tomsche, P.A., 610 Ottawa Avenue North, Minneapolis, MN 55422, appeared representing Third-Party Defendant J-Berd Mechanical Contractors, Inc.

STEVEN E. RAU, Esq., Flynn, Gaskins & Bennett, LLP, 2900 Metropolitan Centre, 333 South Seventh Street, Minneapolis, MN 55402-2440, appeared representing Defendant Promenade Village Townhomes, LLC.

ANDREA E. REISBORD, Esq., Cousineau, McGuire & Anderson, 600 Travelers Express Tower, 1550 Utica Avenue South, Minneapolis, MN 55416-5318, appeared representing Westfield Insurance Company.

JONATHAN M. BYE, Esq., Lindquist & Vennum, 4200 IDS Center, 80 South Eighth Street, Minneapolis, MN 55402, appeared representing Fourth-Party Defendant Mikesh, Inc.

engineer.
Q And you indicated that Mr. Boyum was sent back out to the site on October 3rd to figure out if there was a discrepancy between the Larson plans and the Mikesh plans and what was on site; is that right?
A **That is correct.**
Q Was there any other reason why he went back out there on October 3rd?
A **No. That was the reason.**
Q And you indicated that you were not hired, or you stated earlier that you were not hired to analyze the adequacy of the waterproofing system; is that right?
A **That is correct.**
Q Do you have any plans down the road to offer any opinion regarding the adequacy of the waterproofing system?
A **Not at this point.**
Q In Exhibit 806, which you were asked about earlier, you state at opinion number 3 that leakage of water occurred due to the failure of the waterproofing system; is that right?
A **That is correct.**
Q Is that based upon what you read in the reports that are set forth on page 1 of your report?
A **Part of it was based on the reports I read.**
Q What was the other part based on?



A **Other part is that there was adequacy of the drain system and that there wasn't any indication that the drain system in itself caused the leakage, so it's a logical inference that something else came through for the water to flow.**
Q And when you put together the report that is Exhibit 806, you said you had not been out to the site; is that right?
A **That is correct.**
Q So what do you base your conclusion -- on what do you base your conclusion that the drain system didn't contribute to the leakage?
A **That was the purpose of the drain system, to hold the waters, intercept and prevent the water from leaking into the building, and the drain system was to receive and convey the water once the water gets to that point. So if water traveled, find it's way into the building, then it is the intercepting mechanism gave way.**
Q Did you do any testing to determine whether the drain system contributed to the leaks in any way?
A **No, I did not.**
Q And you know that the drain system allowed approximately two and a half inches of water to stand on the deck?
A **Correct.**
MR. SONNESYN: Objection, speculation.
Q (By Mr. Stepan.) Is that right?



A **Understood that.**
Q And the two and a half inches of water on the deck was a result of the type of drain that was selected; isn't that right?
A **I don't know whether I can say it was because of the type of the drain that was selected. It was a result of the assembly and the restrictions of that, that you cannot drill through the flanges or collar of that drain assembly.**
Q When you say drain assembly, what are you referring to?
A **The Fat Max.**
Q So the use of a Fat Max drain assembly on this project resulted in the two and a half inches of water on the deck; is that right?
A **In this particular case, we can say that, but I don't know about other drain assemblies might have similar restriction.**
Q But that's true in this case, the Fat Max caused there to be two and a half inches of water?
A **The connection of the Fat Max to the PVC pipe.**
Q As part of your work on this case, have you had an opportunity to look at any of the literature from the waterproofing manufacturer?
A **I have not had.**
Q Have you seen any installation instructions from the



waterproofing manufacturer on this case?
A **No, I have not.**
Q Have you seen the subcontract that J-Berd Mechanical entered into for this project?
A **I have seen it and browsed through it quickly.**
Q Have you seen any other contract for this project?
A **No, I have not.**
Q Were you hired to analyze the general contractor's role in this project?
A **No.**
Q Did you look at any of the architectural drawings for this project?
A **I was given a set of architectural drawings. I didn't spend a lot of time with it. My intent was to locate mechanical drawings and look at the plaza drain layout.**
Q Would the drainage at this site have been helped if the concrete deck had been sloped to the drains?
A **Not really.**
Q Why is that?
A **The drainage of the site depends on the grade or soil up on the top. Down at the bottom, the sloping of the precast panels or deck, the only thing that could have done is to reduce the amount of water that is held at the bottom.**
Q I'm sorry. Were you finished, or if you have more, go

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

- - - - - - - - - - - - - - - - - - - - - - - -

Westfield Insurance Company,

Plaintiff,

COPY

vs.

Weis Builders, Inc., Promenade Village Townhomes, LCC, Healey Ramme Company, and Valley Forge Insurance Company, one of the CNA companies,

Defendants, and

Weis Builders, Inc.,

Third-Party Plaintiff,

vs.

Waterproofing By Experts, Inc., BRW Elness Architects, Inc., n/k/a Elness Swenson Graham Architects, Inc., Colloid Environmental Technologies Company, and J-Berd Mechanical Contractors, Inc.,

Third-Party Defendants,

and

Colloid Environmental Technologies Company,

Third-Party Defendant,
Fourth-Party Plaintiff,

vs.

Chris Craft Industrial Products, Inc.,

Fourth-Party Plaintiff,

and

J-Berd Mechanical Contractors, Inc.,

Third-Party Defendant and
Fourth-Party Plaintiff,

vs.

Mikesh, Inc.,

DISK ENCLOSED

Fourth-Party Defendant.

- - - - - - - - - - - - - - - - - - - - - - - -

EXHIBIT E

KINSELLA, HARTIGAN, KELZER

DEPOSITION OF

**JEFFREY SCHUH, P.E.**

15 October 2003

9:00 a.m.

DEPOSITION of JEFFREY SCHUH, P.E., taken pursuant to Notice and agreement of and between counsel, at 8009 34th Avenue South, Suite 200, Minneapolis, Minnesota 55425, at approximately 9:00 o'clock a.m. on October 15, 2003, before Paula E. Berg, Notary Public, County of Hennepin, State of Minnesota, to be used in the above-entitled cause.

APPEARANCES:

On Behalf of the Third-Party Defendant and Fourth Party Plaintiff J-Berd Mechanical:

Rolf Sonnesyn, Esquire
TOMSCHE, SONNESYN & TOMSCHE
610 Ottawa Avenue North
Minneapolis, MN 55422

On Behalf of the Third-Party Plaintiff Weis Builders:

Chad Stepan, Esquire
MEAGHER & GEER
4200 Multifoods Tower
33 South Sixth Street
Minneapolis, Minnesota 55402

2002.

A. I believe there is an interim report, work in progress I believe it was called.

Q. Yes, Preliminary Report I believe it is titled.

A. Okay.

Q. Is that right?

A. Yes.

Q. Was there any additional research or analysis done between that report and the report of August 12, 2003?

A. I think there were changes to that report, to the one in 2003.

Q. Do you happen to know what changes were made?

A. Well, there are some sections that were added, I think standard of care was one. There maybe were a few other sections that were added.

I believe I had some changes made to the precipitation events to comply with, you know, with Eagan. I guess the location of Eagan for, you know, the 2-, 5-, 10-, 100-year storm, but I'd have to go through

analyze the general contractor's work?

A. In what respect?

Q. In any respect.

A. I was looking at the -- just the finished product, what was there.

Q. We talked a little bit about -- well, you talked about when you were out at the site, I think it was yesterday, and you saw some seepage and I was trying to get a -- Mr. Sonnesyn allowed me to break in and ask you a couple of questions and try to get a sense of where that location is. Tell me if this is where you saw the seepage. You're in the garage, right?

A. Right.

Q. And at a -- is it an end wall? You're facing an end wall and on the right-hand side of that end wall there is a hallway?

A. Yes.

Q. And it's above that hallway?

A. Yes.

Q. And when you're looking at that end wall you can see the cores of the prefabs?

A. Yes. And the hallway, from memory

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Westfield Insurance Company,

Plaintiff, Civil File No. 00-CV-987 JEL/JSM

vs.

Weis Builders, Inc.; Healey Ramme Co., sued as Healey Ramme Company; CNA Insurance Companies, sued as CNA Insurance Company; Promenade Village Townhomes, L.L.C.; Valley Forge Insurance Company, one of the CNA Insurance Companies,

Defendants,

and

Weis Builders, Inc.,

Third-Party Plaintiff,

vs.

Waterproofing By Experts, Inc., and BRW Elness Architects, Inc., a/k/a Elness Swenson Graham Architects, Inc., Colloid Environmental Technologies Co., and J-Berd Mechanical Contractors, Inc.,

Third-Party Defendants,

* * * * * *

DEPOSITION OF: DAVID CAMPBELL (VOLUME I)
TAKEN ON: TUESDAY, AUGUST 26, 2003
COMMENCING AT: 9:15 A.M.

* * * * * *

CHARLES G. WILLIAMSON, Court Reporter
4209 113th Street West
Bloomington, MN 55437
Telephone: 952-888-8586
Fax: 952-888-3562



and

Colloid Environmental Technologies Co.,

Fourth-Party Plaintiff,

vs.

Chris Craft Industrial Products, Inc.,

Fourth-Party Defendant,

and

J-Berd Mechanical Contractors, Inc.,

Fourth-Party Plaintiff,

vs.

Mikesh, Inc.,

Fourth-Party Defendant.

---

EXHIBIT F



NOTES

Page Line



APPEARANCES:

PATRICK D. REILLY, Esq., Erstad & Riemer, P.A., 200 Riverside Office Tower, 8009 34th Avenue South, Minneapolis, MN 55425, appeared representing Third-Party Defendant and Fourth-Party Plaintiff Colloid Environmental Technologies Co.

G. JOHN VEITH, Esq., Brown & Carlson, P.A., 5411 Circle Down Avenue, Suite 100, Minneapolis, MN 55416-1311, appeared representing Fourth-Party Defendant Chris Craft Industrial Products, Inc.

CHAD J. STEPAN, Esq., Meagher & Geer, P.L.L.P., 33 South Sixth Street, Suite 4200, Minneapolis, MN 55402-3788, appeared representing Defendant Weis Builders, Inc.

LEO I. BRISBOIS, Esq., Stich, Angell, Kreidler & Dodge, 250 Second Avenue South, Suite 120, Minneapolis, MN 55401, appeared representing Defendant Valley Forge Insurance Company.

MARK S. BROWN, Esq., Iverson Reuvers, LLC, 250 Townline Plaza, 8585 West 78th Street, Bloomington, MN 55438, appeared representing Third-Party Defendant Waterproofing By Experts, Inc.

WILLIAM D. HULL, Esq., Coleman, Hull & Van Vliet, PLLP, 8500 Normandale Lake Boulevard, Suite 2110, Minneapolis, MN 55437, appeared representing Third-Party Defendant Elness Swenson Graham Architects, Inc.

ROLF E. SONNESYN, Esq., and CHANDELLE L. HEYER, Esq., Tomsche, Sonnesyn & Tomsche, P.A., 610 Ottawa Avenue North, Minneapolis, MN 55422, appeared representing Third-Party Defendant J-Berd Mechanical Contractors, Inc.

STEVEN E. RAU, Esq., Flynn, Gaskins & Bennett, LLP, 2900 Metropolitan Centre, 333 South Seventh Street, Minneapolis, MN 55402-2440, appeared representing Defendant Promenade Village Townhomes, LLC.

ANDREA E. REISBORD, Esq., Cousineau, McGuire & Anderson, 600 Travelers Express Tower, 1550 Utica Avenue South, Minneapolis, MN 55416-5318, appeared representing Westfield Insurance Company.

CAMERON BOYD, Esq., Lindquist & Vennum, 4200 IDS Center, 80 South Eighth Street, Minneapolis, MN 55402-2274, appeared representing Fourth-Party Defendant Mikesh, Inc.

ALSO PRESENT: Kris Huether, Brown & Carlson.

says?
A **I wrote a quality control manual for conducting water infiltration investigations for internal use in the office at Inspec. I refer to my own manual before I start a project to make sure I follow my own procedure.**
Q A few lines down from that, do you see where it talks about Weis responsible for waterproofing?
A **I just wanted to find out whether Weis Builders was responsible. I don't say design, but I meant design of the waterproofing. Obviously they're responsible for the installation.**
Q So you're asking a question to yourself here?
A **Yes.**
Q What about there's a question where do pc -- two lines down from that, where do pc ends occur, is that correct?
A **Yes.**
Q Did you ever get that question answered?
A **Yes.**
Q What was the answer?
A **They occur over both the CMU foundation walls as well as over the cast in place concrete beams.**
Q Okay. And you learned that from looking at drawings?
A **Yes, right.**
Q A few lines down from that, do you see where there's a Q in the margin and then it reads how can waterproof design



be by G.C. when arch signed spec w/wp?
A **The Q means it's a question I have to ask. I thought it was curious that the written specification called out a waterproofing product and the architectural firm of BRW Elness signed the specification, so they are therefore designing the waterproofing in effect. I found out later no, as a matter of fact, I'm still bewildered by that. But since that has no bearing on my investigation report, it's more of a legal matter. I didn't pursue it.**
Q Was that an unusual situation? Is that why you were referencing it here?
A **Yes.**
Q In your experience, if the architect signs off on the waterproofing specs, does that mean that the architect is therefore designing the waterproofing system?

MR. HULL: Objection, foundation.

THE WITNESS: Should I answer the question?

MR. VEITH: Yes.

THE WITNESS: In the absence of any other agreement otherwise, it would imply the architect is having a hand in the design of the waterproofing, yes.

Q (By Mr. Veith.) Would that be your experience, would that be based on your experience, 16 years in the business of waterproofing investigation?



A **Uh-huh. Definitely.**
Q All right. About four lines down from that you've listed that you want to review requested -- is that contractor info?
A **Yes.**
Q -- forwarded from Flynn Gaskins. What was the contractor info that you had requested?
A **I really don't recall.**
Q So you don't know what contractor info is referring to?
A **I really don't. It might have been construction documents, it might have been a number of things. I really don't remember.**
Q It says analyze rain load and drain capacity two lines down from that?
A **Uh-huh.**
Q Did you analyze the rain load and drain capacity?
A **I did insofar as using a method in the chart we use at Inspec. It's not an all-comprehensive method, but it is an abbreviated method of estimating the appropriateness of a drainage design.**
Q What is a pilaster?
A **A pilaster is a structural element in a wall offering additional lateral support to that wall. For example, if you had a CMU wall and a cast in place pilaster either integral with the wall or interior, slightly interior to**



**the wall, very often that's there to add added lateral support to the wall. It's a rather general term.**
Q All right.
A **Not as specific as the term beam, for example.**
Q Could you go to the third to the last page of the exhibit, and it begins with an underlined word Deficiencies?
A **Uh-huh.**
Q When did you put these notes together; at what point?
A **Probably throughout the whole project. That's usually how I do it.**
Q Would these have been done before you did the destructive test openings?
A **Depending on the entry, some of them might have been, yes. I'd have to read through every one here.**
Q Do these last three pages of this exhibit all refer to what you've titled Deficiencies?
A **Yes.**
Q What is the significance of the check marks on these last three pages?
A **It means either I have incorporated that item in the report or I made the decision not to include it in the report so I don't have to read it again.**
Q How do you know if you made the decision not to include it in the report? Can you tell from looking at this?
A **No, I couldn't.**

COPY

1

UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

CIVIL FILE NO.: 00-CV-987 JEL/JGL

---

Westfield Insurance Company,

Plaintiff,

v.

Weis Builders, Inc.; Healey Ramme Co., sued as Healey Ramme Company; CNA Insurance Companies, sued as CNA Insurance Company; Promenade Village Townhomes, L.L.C.; Valley Forge Insurance Company, one of the CNA Insurance Companies,

Defendants,

and

Weis Builders, Inc.,

Third-Party Plaintiff,

v.

Waterproofing By Experts, Inc., and BRW Elness Architects, Inc., a/k/a Elness Swenson Graham Architects, Inc., Colloid Environmental Technologies, Co., and J-Berd Mechanical Contractors, Inc.,

Third-Party Defendants,

* * * * * *

DEPOSITION OF: JON CAMAYA, VOLUME I OF II
TAKEN ON: THURSDAY, MAY 8, 2003
COMMENCING AT: 10:10 A.M.

* * * * * *

CHARLES G. WILLIAMSON, Court Reporter
4209 113th Street West
Bloomington, MN 55437
Telephone: 952-888-8586

2

and

Colloid Environmental Technologies, Co.,

Fourth-Party Plaintiff,

v.

Chris Craft Industrial Products, Inc.,

Fourth-Party Defendant,

and

J-Berd Mechanical Contractors, Inc.,

Fourth-Party Plaintiff,

v.

Mikesh, Inc.,

Fourth-Party Defendant.

---

EXHIBIT G

3

NOTES

Page Line

4

APPEARANCES:

PATRICK D. REILLY, Esq., Erstad & Riemer, P.A., 200 Riverside Office Tower, 8009 - 34th Avenue South, Minneapolis, MN 55425, appeared representing Third-Party Defendant and Fourth-Party Plaintiff Colloid Environmental Technologies Company.

G. JOHN VEITH, Esq., Brown & Carlson, P.A., 5411 Circle Down Avenue, Suite 100, Minneapolis, MN 55416-1311, appeared representing Fourth-Party Defendant Chris Craft Industrial Products, Inc.

CHAD J. STEPAN, Esq., Meagher & Geer, P.L.L.P., 33 South Sixth Street, Suite 4200, Minneapolis, MN 55402-3788, appeared representing Defendant Weis Builders, Inc.

LEO BRISBOIS, Esq., Stich, Angell & Kreidler, 250 Second Avenue South, Suite 120, Minneapolis, MN 55401, appeared via speakerphone representing Defendant Valley Forge Insurance Company.

MARK S. BROWN, Esq., Iverson Reuvers, LLC, 250 Townline Plaza, 8585 West 78th Street, Bloomington, MN 55438, appeared representing Third-Party Defendant Waterproofing By Experts, Inc.

WILLIAM D. HULL, Esq., Coleman, Hull & Van Vliet, PLLP, 8500 Normandale Lake Boulevard, Suite 2110, Minneapolis, MN 55437, appeared representing Third-Party Defendant Elness Swenson Graham Architects, Inc.

CHANDELLE L. HEYER, Esq., Tomsche, Sonnesyn & Tomsche, P.A., 610 Ottawa Avenue North, Minneapolis, MN 55422, appeared representing Third-Party Defendant and Fourth-Party Plaintiff J-Berd Mechanical Contractors, Inc.

BRIAN BAUMGARTNER, Esq., Baumgartner Law Office, LLP, 3320 West Owasso Boulevard, Shoreview, MN 55126, appeared via speakerphone representing Fourth-Party Defendant Mikesh, Inc.

LORI SEMKE, Esq., Flynn, Gaskins & Bennett, LLP, 2900 Metropolitan Centre, 333 South Seventh Street, Minneapolis, mn 55402-2440, appeared via speakerphone representing Defendant Promenade Village Townhomes, LLC.

ANDREA E. REISBORD, Esq., Cousineau, McGuire & Anderson, 600 Travelers Express Tower, 1550 Utica Avenue South, Minneapolis, MN 55416-5318, appeared via speakerphone representing Westfield Insurance Company.

Q Did any of your work out at the Promenade project involve investigating mold or looking for the possibility of mold?
A **No.**
Q Would you consider that to be something beyond your area of knowledge?
A **Yes. That's something that I would get a separate entity to test for air quality and so on.**
Q Have you ever been a general contractor before?
A **No.**
Q Would it be fair to say that you don't hold yourself out as an expert regarding standards under which a general contractor operates?
MR. HULL: I'll object to the form of the question.
THE WITNESS: Yes, that's fair.
Q (By Mr. Stepan.) Have you ever heard the phrase a hung courtyard before?
A **No.**
Q You mentioned that at the library in your office you have some CETCO literature, is that right?
A **That's correct.**
Q Have you ever looked at that literature?
A **Yes.**
Q Do you recall when?
A **The time of -- I was involved with the other project**



**involved, bentonite waterproofing system.**
Q Which project was that again?
A **The Adams Landing.**
Q Was it CETCO materials on that project?
A **No.**
Q Why did you look to the CETCO literature?
A **I was just grabbing everything that involved bentonite.**
Q And when were you involved with that project, the Adams Landing?
A **Between 1995 and 2000.**
Q Over that whole course of time you worked on that project?
A **Yes. I was involved with that project as well.**
Q Do you recall when during that time frame you looked at the CETCO literature?
A **No, I don't.**
Q Closer to '95 or closer to 2000?
A **Closer to 2000.**
Q Do you recall what comprises the CETCO literature that you have at your office?
MR. REILLY: Objection, calling for speculation.
THE WITNESS: Other than loose brochures, no.
Q (By Mr. Stepan.) Are they installation brochures or just general information about the product?



A **Yes. They were product description sheets, data sheets.**
Q Did they discuss installation as well?
A **I don't recall.**
Q You mentioned that the Promenade person who was out on the site when you were out there doing your inspection told you that there had been repairs done to the posts, is that right?
A **Yes.**
Q What did he say about the repairs to the posts?
A **Other than saying that they were repairs to the posts, he described them as correcting the condition of not having the wooden posts in direct contact with the concrete slab and then he described them as floating.**
Q He described what as floating?
A **The posts. The base of the post was floating on a plate, for lack of a better word, to keep it from direct contact with the membrane.**
Q So was it your understanding that, as originally constructed, the posts actually rested on top of the deck itself?
A **Yes.**
Q And then after repairs, they were now floating on a plate?
A **Right.**
Q Did he say anything else about the repairs, that you recall?



A **No, not to my recollection.**
Q You mention in your report, which is Exhibit 592 -- do you still have that in front of you?
A **No.**
Q Right here. In particular at page 4, roman numeral v, you mention the fact that there were repairs done out at the site. Do you see that?
A **Yes.**
Q Did the individual from Promenade talk to you about these repairs as well? These meaning aside from the posts, did he address the repairs that were done on the vertical wall?
A **No, he did not.**
Q Did anybody tell you anything about the repairs on the vertical walls?
MR. BROWN: Object to the form.
Q (By Mr. Stepan.) Anybody at the site when you were out there?
A **No. No one outside of the gentleman that produced the progress photos.**
MS. SEMKE: Can you repeat that answer?
THE WITNESS: No one outside of the gentleman that produced the progress photos.
MS. SEMKE: Thanks.
Q (By Mr. Stepan.) You mentioned that the gentleman who

COPY



UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

CIVIL FILE NO.: 00-CV-987 JEL/JGL

---

Westfield Insurance Company,

Plaintiff,

v.

Weis Builders, Inc.; Healey Ramme Co., sued as Healey Ramme Company; CNA Insurance Companies, sued as CNA Insurance Company; Promenade Village Townhomes, L.L.C.; Valley Forge Insurance Company, one of the CNA Insurance Companies,

Defendants,

and

Weis Builders, Inc.,

Third-Party Plaintiff,

v.

Waterproofing By Experts, Inc., and BRW Elness Architects, Inc., a/k/a Elness Swenson Graham Architects, Inc., Colloid Environmental Technologies, Co., and J-Berd Mechanical Contractors, Inc.,

Third-Party Defendants,

* * * * * *

DEPOSITION OF: TIMOTHY CHARBONEAU
TAKEN ON: FRIDAY, JUNE 13, 2003
COMMENCING AT: 10:05 A.M.

* * * * * *

CHARLES G. WILLIAMSON, Court Reporter
4209 113th Street West
Bloomington, MN 55437
Telephone: 952-888-8586



and

Colloid Environmental Technologies, Co.,

Fourth-Party Plaintiff,

v.

Chris Craft Industrial Products, Inc.,

Fourth-Party Defendant,

and

J-Berd Mechanical Contractors, Inc.,

Fourth-Party Plaintiff,

v.

Mikesh, Inc.,

Fourth-Party Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - -

EXHIBIT H



NOTES

Page Line



APPEARANCES:

PATRICK D. REILLY, Esq., Erstad & Riemer, P.A., 200 Riverside Office Tower, 8009 - 34th Avenue South, Minneapolis, MN 55425, appeared representing Third-Party Defendant and Fourth-Party Plaintiff Colloid Environmental Technologies Company.

G. JOHN VEITH, Esq., Brown & Carlson, P.A., 5411 Circle Down Avenue, Suite 100, Minneapolis, MN 55416-1311, appeared representing Fourth-Party Defendant Chris Craft Industrial Products, Inc.

CHAD J. STEPAN, Esq., Meagher & Geer, P.L.L.P., 33 South Sixth Street, Suite 4200, Minneapolis, MN 55402-3788, appeared representing Defendant Weis Builders, Inc.

LEO BRISBOIS, Esq., Stich, Angell & Kreidler, 250 Second Avenue South, Suite 120, Minneapolis, MN 55401, appeared via speakerphone representing Defendant Valley Forge Insurance Company.

MARK S. BROWN, Esq., Iverson Reuvers, LLC, 250 Townline Plaza, 8585 West 78th Street, Bloomington, MN 55438, appeared representing Third-Party Defendant Waterproofing By Experts, Inc.

WILLIAM D. HULL, Esq., Coleman, Hull & Van Vliet, PLLP, 8500 Normandale Lake Boulevard, Suite 2110, Minneapolis, MN 55437, appeared representing Third-Party Defendant Elness Swenson Graham Architects, Inc.

CHANDELLE L. HEYER, Esq., Tomsche, Sonnesyn & Tomsche, P.A., 610 Ottawa Avenue North, Minneapolis, MN 55422, appeared via speakerphone representing Third-Party Defendant and Fourth-Party Plaintiff J-Berd Mechanical Contractors, Inc.

CHRISTOPHER MALONE, Esq., Cousineau, McGuire & Anderson, 600 Travelers Express Tower, 1550 Utica Avenue South, Minneapolis, MN 55416-5318, appeared via speakerphone representing Party Plaintiff Westfield Insurance.

THERESA PETERSON, Esq., Fabyanske, Westra & Hart, Suite 1100, 920 Second Av So, Minneapolis, MN 55402, appeared via speakerphone representing Defendant Weis Builders, Inc.

JAMES S. D. EISENHOWER, III, Esq., Eisenhower, Laufer & Tarby, 4041 University Drive, Suite 100, Fairfax, VA 22030, appeared representing Timothy Charboneau.

stoops and stuff.

THE WITNESS: Yes. Under the stoops and everything. So you've got quite a few.

Q (By Mr. Reilly.) It would be more than 120?

A **Right, exactly.**

Q So 125 times whatever that number would be?

A **Whatever the amount is what I came up with.**

Q It could be as many as a couple hundred, I suppose?

A **Yes. It was probably more because you have -- two times 14, 30. Probably more like 400 total.**

Q Okay. The other concrete you talked about was a topping slab, and four inches lightweight concrete with fiber mesh reinforcement, et cetera?

A **Uh-huh.**

Q What was the amount of money you included in this bid for that topping slab?

A **That runs about 350, 375,000.**

Q And once again, would that include the equipment and those sort of extra costs?

A **It would include the concrete and the finishing of that concrete, but the crane would be separate to haul it in, to drop it.**

Q Because you couldn't use a truck; you would have to crane it in, correct?

A **Yes. Everything -- all the work done on that job would**



**be done by crane.**

Q Okay. And that would increase the cost of doing that particular kind of work, the heavier work?

A **Right.**

Q Obviously putting in the waterproofing, for instance, would be done by hand work?

A **Correct.**

Q Looking at this exhibit, Number 5, Waterproof Membrane System, what was the amount of money included in this bid for that?

MR. BROWN: Everything under 5, Bill?

MR. REILLY: Everything -- I'm Pat.

MR. BROWN: I mean Pat.

MR. REILLY: Yes, 5.

THE WITNESS: I think the waterproofing was right at 300,000, 350,000.

MR. BROWN: I'm sorry. Just for clarification, so everything under 5 was 350,000?

THE WITNESS: No. I'm sorry. 350,000 was for the horizontal. The vertical was probably, I'm thinking, another 150,000 for the horizontal -- or horizontal was 350,000 and vertical was 150,000. I'm sorry.

MR. STEPAN: I'm sorry. That's total for all six?



THE WITNESS: Yes.

MR. STEPAN: Okay.

MR. REILLY: That's all the questions I have, sir. Thank you.

MR. HULL: I don't have anything.

MR. VEITH: I don't have anything.

MR. STEPAN: I'm sure I can muster up a few here.

MR. REILLY: You don't have to, Chad.

MR. STEPAN: No, I know.

EXAMINATION

BY MR. STEPAN:

Q My name is Chad Stepan. I represent Weis Builders, the general contractor on the original project. Have you ever worked as a general contractor where you've built a project from the ground up?

A **No.**

Q And you don't hold yourself out as an expert in the standards of care for a general contractor who builds a project from the ground up?

A **No.**

Q You testified you didn't take any pictures while you were out at the site. Did you take any notes?

A **No.**

Q Is that the only time you were at the site?



A **Correct.**

Q The time when the holes were dug?

A **Yes.**

Q You commented that at one of the holes you saw, it was the hole at the corner of one of the stoops where you saw the post going down and you said it was resting on a pad; do you recall that?

A **Yes.**

Q Do you know what the pad was sitting on top of? Was it on top of a waterproofing system or directly on top of the substrate or could you tell?

MR. VEITH: Object, no foundation.

THE WITNESS: I couldn't really tell.

Q (By Mr. Stepan.) You mentioned that the last time you spoke to Mr. Vanderberg, you mentioned to him that you were going to be deposed. Was there anything more said about your deposition when you talked to him?

A **No. Not of any consequence.**

Q Did he say anything about the fact that he was being sought to be deposed?

A **Correct.**

Q What did he say?

A **He said that his -- I think he said his lawyers and his firm were handling it.**

Q Is that the extent of it?