**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

**CIVIL FILE NO.: 00-CV-987 JNE/JSM**

---

Westfield Insurance Company,

Plaintiff,

vs.

Weis Builders, Inc.; Healey Ramme Co., sued as Healey Ramme Company; CNA Insurance Companies, sued as CNA Insurance Company; Promenade Village Townhomes, L.L.C.; Valley Forge Insurance Company, one of the CNA Insurance Companies,

Defendants,

and

Weis Builders, Inc.,

Counter-Claimant,

vs.

Westfield Insurance Company,

Counter-Defendant,

and

Weis Builders, Inc.,

Third-Party Plaintiff,

vs.

Promenade Village Townhomes, L.L.C. and Valley Forge Insurance Company,

Third-Party Defendants,

**CETCO'S TRIAL BRIEF**

and

Weis Builders, Inc.,

Cross-Claimant,

vs.

Promenade Village Townhomes and
Valley Forge Insurance Company,

Cross-Defendants,

and

Promenade Village Townhomes, L.L.C.,

Cross-Claimant,

vs.

Weis Builders, Inc.,

Cross-Defendant,

and

Weis Builders, Inc.,

Third-Party Plaintiff,

vs.

Waterproofing By Experts, Inc.; BRW
Elness Architects, Inc., n/k/a Elness
Swenson Graham Architects, Inc., and
Colloid Environmental Technologies
Company,

Third-Party Defendants,

and

Colloid Environmental Technologies Company,

Fourth-Party Plaintiff,

vs.

Chris Craft Industrial Products, Inc.,

Fourth-Party Defendant.

and

J-Berd Mechanical Contractors, Inc.,

Third-Party Defendant and
Fourth-Party Plaintiff,

vs.

Mikesh, Inc.,

Fourth-Party Defendant.

---

## INTRODUCTION

This lawsuit involves allegations of water intrusion at a rental town home complex, Promenade Oaks Town homes (hereinafter "Promenade"), located in Eagan, Minnesota. Originally postured as a declaratory judgment action between the general contractor and its insurers, the case has grown to include claims by numerous contractors and subcontractors involved in the project. The bulk of the allegations focus on poor design of the project, although secondary allegations of defective products have also arisen. Third Party Defendant and Fourth Party Plaintiff Colloid Environmental Technologies Company (hereinafter "CETCO") submits this trial brief for purposes of identifying important issues that are likely to arise during trial and to state CETCO's position with respect to those issues.

## BACKGROUND

The Promenade Oaks Townhomes complex consists of several buildings containing numerous town home-style rental units. Parking garages for Promenade residents are located beneath a portion of the rental units. Also above the parking garages are soil-filled and grass-covered courtyards. The courtyards provide access to private entries to each town home unit, and contain sidewalks, grass, landscaping, steps, and small overhangs supported by posts protecting each individual entry from rain or snow. These courtyards (of which there are six total) are one of the primary focal points of this litigation.

Due to the fact that each courtyard is located to some degree above the parking garages as well as some rental units, the courtyards need to be waterproof. Since the courtyards are outside and not sheltered by a roof or any other structure, they are subject to the elements. The unique characteristic of these courtyards is that unlike typical grounds at a residential home or other apartment complex, moisture entering the courtyard by rain, snow, irrigation or any other means cannot naturally drain through the soils and back into underground watertables. Here, because parking garages and living spaces are located underneath and adjacent to the courtyards, moisture entering the courtyard must be prevented from making its way though the underlying concrete decking and into the garages or living spaces.

In addition to the courtyards, between buildings 1 and 2 and between buildings 5 and 6 are so-called links. These links are raised cement decks which are higher that the courtyards abutting them. These links did not include CETCO waterproofing materials in their construction. These links are over garage areas. In these areas leaks have been and continue, apparently, to be found. Many of the links attested to by witnesses are under or adjacent to these links.

Weis, Waterproofing by Experts, Inc, and ESG designed the waterproofing system installed at this property. In doing so, the specifications called for a product manufactured by CETCO called "Swelltite 3000," which is designed to stop the intrusion of water. Swelltite 3000 contains three different layered components. On the bottom, a water-soluble film exists essentially to prevent the product from sticking to itself when it is rolled. The middle layer is a bentonite/butyl composite, which naturally expands when it comes in contact with water. The top layer is a high density polyethylene material which is another waterproof layer. The three layers work to form a multi-layered waterproof membrane. When the bentonite layer comes in contact with water, it expands. Upon expansion, the product swells to a degree that it seals against anything in contact with it to prevent water intrusion and migration.

The bulk of the allegations in this case center around water leakage at Promenade. It will be demonstrated that the water intrusion issues are the result of poor design of the project rather than defective products. There were changes in the height of perimeter walls, there was a lack of flashing at ground level, earth was raised above the level of vinyl siding, links were not properly waterproofed, knee walls were not properly waterproofed, there were no gutters to divert water from the courtyards, and there was inadequate drainage, both at surface level and at the bottom of the fill. Choices were made by, among others, the architect which compromised the waterproofing efforts of Waterproofing by Experts.

There are allegations that CETCO's product was somehow defective and that those alleged defects caused the water leakage at issue. CETCO's product has not been adequately or scientifically tested by any witness asserting such claims in this case, nor has any expert identified an actual defect in CETCO's product. In fact, the testing that has been done confirms that the waterproofing is working beyond expectations. There will be evidence that, because of

inadequate drain design, there are approximately two inches of water on the waterproofing at all times. There is no evidence of continual leakage. Employees of Promenade have performed unscientific testing (the only testing actually done on the site) that has shown the waterproofing to be working. Instead, allegations of a defect are premised on unfounded assumptions, untested theories, and speculation.

The "expert" retained by Promenade has asserted that the film layer on the Swelltite failed to dissolve resulting in failure of the waterproofing. CETCO strongly denies that there is any such failure. However, the film was manufactured by Cris-Craft and any fault or defect resulting from the film's failure is Chris-Craft's. The use to which their film was to be put was known to them and they confirmed that this use was appropriate.

Promenade will assert that they have suffered two types of damages. These are the loss of revenue during their time of their ownership and the cost of repair coupled with any diminished value. We expect that the evidence will show that Promenade's loss of revenue was minimal. There will be evidence as to repairs that have been accomplished to date. We further expect the evidence to show that those repairs have essentially brought the water problems to a level where they no longer effect the value of the property or the revenue derived therefrom.

We believe several issues will arise during the trial of this matter. We therefore take this opportunity to advise the court of these anticipated issues.

## ARGUMENT

### I. PREMISES VIEW.

Due to the complexity of this case and the unusual nature of the buildings' design, we believe that a viewing of the property by the jury will be of great benefit to the finders of fact. It is difficult to understand from pictures or even a video the nature of the complex. Describing the

courtyards, links, garages, knee walls, etc., without the jury's ability to relate those descriptions to what they have seen, will necessitate additional trial time without any guarantee of a clear understanding of what is being testified to. Therefore, we would request the court to allow a jury viewing of the premises.

## II. THE MEASURE OF DAMAGES IS THE COST OF REPAIR PLUS REMAINING DIFFERENCE IN MARKET VALUE, IF ANY.

Promenade alleges that it is entitled to damages for the cost of repairing its facility following discovery of the water problems, as well as an additional amount for alleged diminution in market value as a result of the leaks. It is anticipated that there will be substantial discussion at trial regarding what damages Promenade is entitled to. While that question will ultimately be answered by the jury, it is important to identify the proper measure of damages prior to trial for several reasons, including proper preparation of the special verdict form and jury instructions.

The proper measure of damages in a case involving damage to property is "the diminution in value resulting from the injury, or the cost of restoration, whichever is less." *Lawin v. Long Prairie*, 355 N.W.2d 764, 767 (Minn. App. 1984). However, "when the repairs have not fully restored the building, the owner is entitled to the remaining diminution in value so long as the total damages awarded do not exceed the difference in the value before or after, or the cost of restoring the building to substantially its former condition, whichever is less." *Rinkel v. Lee's Plumbing & Heating Co.*, 99 N.W.2d 779, 783 (Minn. 1959). This measure of damages is consistent with Section 928 of the Restatement Second of Torts. Section 928 provides:

> When one is entitled to a judgment for harm to chattels not amounting to a total destruction in value, the damages include compensation for:

(a) the difference between the value of the chattel before the harm and value after the harm or, at his election in an appropriate case, the reasonable cost of repair or restoration, with due allowance for any difference between the original value and the value after repairs.

Rest. 2d of Torts § 923.

"Compensation is what the law aims to give in such cases." *Lawin*, 355 N.W.2d at 767. Compensation is the principal purpose in awarding damages. Courts will normally not use the diminution in value formula in order to determine the measure of damages concerning temporary or reparable damage to property. *Big Rock Mountain Corp., v. Stearns-Roger Corp.*, 388 F.2d 165, 170 (8th Cir. 1968). "The reason for not using diminution of market value appears to be a concern on the part of courts that this would be overcompensating plaintiff – for the plaintiff should not have the decreased value and then be able to repair the damage at a lesser cost." *Id.*; citing 22 AmJur.2d Damages § 165 (1965). Additionally, it is axiomatic that a plaintiff alleging property damage is not entitled to the cost of repairs and the diminution of value. Instead, to the extent the property can be repaired, the measure of damages is the cost of repairs, plus the remaining difference in market value, if any.

**III. THERE IS NO EXPRESS WARRANTY COVERING CETCO'S PRODUCT.**

Numerous theories of liability have been asserted against CETCO. The theories include negligence, strict liability, breach of implied warranty, and breach of express warranty. Weis Builders, the party that initially sued CETCO, is the only party to date that had alleged a breach of express warranty. Weis' allegations stem from a scenario wherein CETCO and Weis discussed whether an express warranty would be issued by CETCO to Weis. Both the terms and cost of the warranty were discussed. This warranty was essentially "optional" - if Weis wanted it, it needed to pay for it. Following the parties discussion, a warranty document was actually

prepared by CETCO. CETCO was never paid in full so that the warranty was never presented. Since payment was never fully made, CETCO never delivered the warranty to Weis or anyone else. In short, an express warranty was contemplated, but never delivered.

In order to establish a breach of warranty claim, the plaintiff must demonstrate the existence of the warranty claimed to have been breached. The elements for a claim of breach of warranty are (1) the existence of a warranty; (2) breach of the warranty; and (3) causation of damages. *Duxbury v. Spex Feeds, Inc.*, 681 N.W.2d 380, 393 (Minn. App. 2004). Without the existence of a warranty, a breach of warranty claim cannot be maintained.

Weis cannot establish that an express warranty exists with respect to the waterproofing membrane manufactured by CETCO. Without the existence of a warranty, a claim for breach fails. Accordingly, when Weis has completed presenting its evidence on its third-party claims against CETCO, CETCO will move for a directed verdict, asking the Court to dismiss any claims against CETCO alleging breach of express warranty.

**IV. FAULT OF THE ARCHITECT IS TO BE IMPUTED TO PROMENADE.**

The architect, ESG was retained by Promenade to provide designs for this project. They were also directed by Promenade to be present at the site of construction. ESG had its employee, John Feges, present on an almost daily basis to coordinate, inform, and oversee the activities of the various contractors. Mr. Feges, although he has no architectural training, was tasked with providing direction to the contractors when questions arose. He did so on numerous occasions. He communicated the wishes of the Promenade and made sure that those wishes were carried out. He expected that the contractors would carry out his directions and they did.

Minnesota follows the Restatement and defines agency as "the relationship which results from the manifestation of consent by one person to another that the other shall act on his behalf

and be subject to his control, and consent by the other so to act." *McNeely v Clayton,* 292 F.Supp. 232 (D. Minn. 1968). It is held that the conduct of the principal which, reasonably interpreted, will create a third person to believe that the "agent" is purporting to act for him creates the relationship. *Duluth Herald v. Plymouth Optical,* 286 Minn. 495 (1970). Any fault of the agent, here ESG, must be borne by the principal, Promenade. *Davis v. Merrill Lynch*, 906 F.2d 1206 (8th Cir. 1990).

## V. THE ARCHITECT ASSUMED DUTIES AND HAD A DUTY TO ACT REASONABLY.

It is expected that ESG will assert that Mr. Feges was not required by the contract to perform many of the activities he actually performed at Promenade. ESG will assert that the areas of construction designated "design/build" were not within its area of design responsibility. It is fundamental that a person who takes it upon himself to provide services or to perform an activity must act reasonably and without negligence, even if he acted voluntarily. *Isler v. Burman*, 232 N.W.2d 818 (1975), *Funchess v. Cecil Newman*, 632 N.W.2d 666 (Minn. 2001). Mr. Feges provided guidance to the general contractor and to various sub-contractors throughout the construction phase of the project. He was instructed to so participate not only by his employer but also by Promenade. His directions were assumed to be under the mantle of the architect and thereby have the authority of, and direction from, the owner. The testimony will be that these directions were therefore followed. It appears that Mr. Feges may not have the education or experience to take on the responsibilities that the owner and architect placed upon him. However, once placed in that position, they can not now claim that he was acting outside the scope of their contract.

## VI. WEIS CAN NOT ASSERT A CLAIM AGAINST CETCO FOR WEIS' LIABILITY FOR BREACH OF CONTRACT.

The claim asserted against Weis by Promenade is based in part upon an alleged breach of the contract that existed between those two parties. Weis has no contract with CETCO. Weis has asserted tort claims against CETCO. Since CETCO is neither a party to the contract nor bound by its terms, and its liability, if any, sounds in tort, Weis can not recover damages from CETCO owed by Weis for their breach. It is axiomatic that only parties to contract that are in privity with one another can recover damages pursuant to the contract. *Northern Nat'l Bank v. Northern Minnesota Nat'l Bank*, 70 N.W.2d 118, 123 (Minn. 1955); *Automotive 36, Inc. v. Imyge Motorcars of America* 2003 LEXIS 1339 (Minn. Ct. App. 2003). Conversely, third parties not a party to contract cannot be held liable for contractual damages sustained by a non-breaching party.

Weis' contract with Promenade contains guarantees, warrantees, and other promises that CETCO did not agree to. CETCO is a product manufacturer and is not responsible for promises made by others in contracts. Separating Weis's liability based in tort from that based on contract will allow the finder of fact to indicate the source of Weis's liability. Further, this will place an appropriate limit upon Weis' claim against CETCO.

## CONCLUSION

We expect the evidence will show that the water problems that existed at the Promenade were a result of design decisions made by various persons including the owners/plaintiffs themselves. There will be no credible evidence that any damages were a result of a defect of CETCO's product. The damages will be limited because the repairs have been successful and any remaining problems no longer effected the value or income of the property at the time of its sale.

It is anticipated that the trial of this matter will be lengthy. It will include a substantial number of witnesses and an even greater number of documentary exhibits. Because of the complexity it is reasonable to assume that issues will arise during the trial which are now unforeseen by any of the parties. The issues discussed above are presented with the intent to advise the court of anticipated areas of dispute. We hope this is of some assistance to the court.

**ERSTAD & RIEMER, P.A.**

Dated: September 3, 2004

By: s/ Patrick D. Reilly
Patrick D. Reilly (#90451)
Benjamin B. Bohnsack (#0319399)
Attorneys for Colloid Environmental Technologies Company
200 Riverview Office Tower
8009 - 34th Avenue South
Minneapolis, MN 55425
(952) 896-3700