**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Westfield Insurance Company,

Plaintiff,

vs.

Weis Builders, Inc.; Healey Ramme Co., sued as Healey Ramme Company; CNA Insurance Companies, sued as CNA Insurance Company; Promenade Village Townhomes, L.L.C.; Valley Forge Insurance Company, one of the CNA Insurance Companies,

Defendants,

and

Weis Builders, Inc.,

Counter-Claimant,

vs.

Westfield Insurance Company,

Counter-Defendant,

and

Weis Builders, Inc.,

Third-Party Plaintiff,

vs.

Promenade Village Townhomes, L.L.C. and Valley Forge Insurance Company,

Third-Party Defendants,

Civil File No.: 00-CV-987 JNE/JSM

**COLLOID ENVIRONMENTAL TECHNOLOGIES COMPANY'S MEMORANDUM IN SUPPORT OF ITS MOTIONS IN LIMINE**

***Oral Argument Requested***

and

Weis Builders, Inc.,

Cross-Claimant,

vs.

Promenade Village Townhomes and
Valley Forge Insurance Company,

Cross-Defendants,

and

Promenade Village Townhomes, L.L.C.,

Cross-Claimant,

vs.

Weis Builders, Inc.,

Cross-Defendant,

and

Weis Builders, Inc.,

Third-Party Plaintiff,

vs.

Waterproofing By Experts, Inc.; BRW
Elness Architects, Inc., n/k/a Elness
Swenson Graham Architects, Inc., and
Colloid Environmental Technologies
Company,

Third-Party Defendants,

and

Colloid Environmental Technologies Company,

Fourth-Party Plaintiff,

vs.

Chris Craft Industrial Products, Inc.,

Fourth-Party Defendant.

---

## INTRODUCTION

Colloid Environmental Technologies Company ("CETCO") submits this memorandum in support of its motions in limine. First, no expert opinions alleging a defect in CETCO's product are sufficiently reliable so as to meet Federal evidentiary standards for admissibility of expert testimony. Second, evidence of water intrusion problems at other sites should be excluded because there is no link between water intrusion at other sites and Promenade. CETCO requests that the evidence identified below be excluded.

## I. CAMPBELL'S OPINIONS ALLEGING A DEFECT IN CETCO'S PRODUCT SHOULD BE EXCLUDED.

### A. Federal Evidentiary Standards

At the outset, preliminary questions concerning the qualifications of a witness or the admissibility of evidence are to be determined by the court. Fed. R. Evid. 104(a). A proponent of expert testimony must establish that the admissibility requirements of reliability and relevance are met. *See Bourjaily v. United States*, 483 U.S. 171 (1987); *Daubert v. Merrell Dow Pharm.*, 509 U.S.579, 592 (1993).

Furthermore, Rule 702 of the Federal Rules of Evidence allows a witness qualified as an expert to testify only under the following circumstances: "(1) the testimony is based upon

sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Fed. R. Evid. 702. Rule 702 was amended following *Daubert* and the cases applying it, including *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147-48 (1999). *See* Advisory Committee Notes, 2000 Amendments. In *Daubert*, the U.S. Supreme Court outlines the duties of trial court judges with respect to performing a gatekeeping function. The purpose of the gatekeeping function is to exclude unreliable expert testimony. The Court in *Kumho Tire* clarified that this gatekeeper function applies to all expert testimony, not just testimony based in science.

In *Daubert*, the Supreme Court identified non-exclusive criteria for trial courts to use in determining the admissibility of expert testimony under Rules 702 and 104 of the Federal Rules of Evidence: (1) whether the expert's technique or theory can be or has been tested; (2) whether the technique or theory has been subjected to peer review and publication; (3) the known or potential rate of error of the technique or theory when applied; (4) the existence and maintenance of standards and controls; and (5) whether the technique or theory has been generally accepted in the scientific community. 509 U.S. at 593-94. The district court must customize this list to fit the facts of each particular case. *Jaurequi v. Carter Mfg., Inc.*, 173 F.3d 1076, 1983 (8th Cir. 1999).

In determining whether to admit expert testimony, a trial judge must determine whether "an expert's testimony rests on a reliable foundation and is relevant to the task at hand." *Wheeling Pittsburgh Steel Corp. v. Beelman River Terminals, Inc.,* 254 F.3d 706, 714-15 (8th Cir. 2001). "Before accepting the testimony and opinion of an expert witness, the trial court is charged with the 'gatekeeper' function of determining whether the opinion is based upon sound,

reliable theory, or whether it constitutes rank speculation." *Kemp v. Tyson Seafood Group, Inc.,* 2000 WL 1062105, (D. Minn. 2000). "Expert testimony that is speculative is not competent proof and contributes nothing to a legally sufficient evidentiary basis." *Concord Boat Corp. v. Brunswich Corp.,* 207 F.3d 1039, 1057 (8th Cir. 2000). Lastly, "in order to be helpful to the trier of fact, the witness must be qualified as an expert, the expert must have a reasonable factual basis for [his] testimony, the testimony must be based on reliable methods, and the testimony must be relevant to the facts at issue." *Kemp,* at 2.

**B. Campbell's Testimony**

Mr. David Campbell is an engineer retained by Promenade to conduct an analysis of the water intrusion problems at the project. Following his inspection, he makes several unsupported allegations of a defect in the waterproofing membrane manufactured by CETCO. Campbell's allegations are as follows:

> The product literature for the Volclay Swelltite 3000 waterproofing membrane that was installed states that the water-soluble film component of the membrane is supposed to dissolve in the presence of water, thereby allowing the bentonite/butyl component to come into direct contact with and seal against adjacent surfaces. However, we recovered samples of the now 4-year-old membrane with the water-soluble film still intact and not yet dissolved. This means that water is free to enter the seam, because the undissolved film is keeping the bentonite/butyl component from sealing against the HDPE [high density polyethelyne] component of the adjacent membrane. This also means that, once through the seam, the water is also free to migrate under the membrane. Again, this is because the undissolved film is separating the bentonite/butyl component from the precast concrete. This is evidenced by the fact that we found water below the membrane at four DTO [destructive test opening] locations. Once water is permitted to migrate under the membrane, it is only a matter of time until in finds a convenient point of entry through the structure, such as a keyway joint, expansion joint, construction joint, or stress crack.

(Exh. B, Campbell report at 6).

Campbell has very little familiarity with bentonite waterproofing products, such as the Swelltite product used at the Promenade project. (Exh. A, Campbell Depo. at 46-47.) Furthermore, Campbell has never observed a seam in the waterproofing membrane at issue. (Exh. A, Campbell Depo. at 59-60.) In addition to not observing the allegedly defective component of the membrane, he conducted no testing to determine whether the seams leaked. (Exh. A, Campbell Depo. at 60) He also failed to test his theory that water can migrate between the membrane and concrete substrate. (Exh. A, Campbell Depo. at 57). Nor does Campbell make efforts to eliminate other potential sources of leaks prior to alleging that the waterproofing membrane is defective. (Exh. A, Campbell Depo. at 65-66.)

Pared down to its simplest form, Campbell alleges that water is able to pass through the seam between two pieces of overlapped membrane and migrate underneath the waterproofing on the concrete decking of the courtyards. As will be demonstrated below, Campbell's opinions are flawed because they are based on 1) his admitted unfamiliarity with the product in question, 2) incomplete testing and observation of the areas he claims to be defective, and 3) a failure to recognize the undisputed fact that water leakage could just as easily result from other problematic areas within the project other than the waterproofing membrane. For these reasons, Campbell's testimony does not satisfy the applicable federal evidentiary standards, and the Court, acting as a gatekeeper, should exclude all parts of Campbell's opinions alleging a defect in the membrane.

**C. Campbell's Opinions Lack a Reasonable Factual Basis and Are Not Based on Reliable Methods.**

First, Campbell has minimal experience or familiarity with the Swelltite 3000 product used in the waterproofing system at Promenade. Campbell has dealt with Swelltite on only one prior occasion, and was unable to recall the circumstances of the application in that instance. (Exh. A., Campbell depo at 46-47.) Other than the instant case and his one prior experience with the product, he has no first hand experience or knowledge as to its construction or application. (*Id.*) Campbell's minimal familiarity with the product is a factor to consider in determining whether his opinions possess the requisite degree of reliability required under *Daubert* and *Kumho*.

Second, although Campbell alleges that water migrates through the seams of the Swelltite, he never actually observed a seam anywhere in the Promenade project. (Exh. A, Campbell Depo. at 59-60) Furthermore, he never conducted tests of any kind on whether the seams in fact leaked as he alleges in his report. (Exh. A, Campbell Depo at 60.) Without actually viewing or testing the areas of Swelltite that he claims to be defective, Campbell's opinions are necessarily based on speculation, or, at best, circumstantial evidence that simply *implies* that the product leaked.

If Campbell had actually viewed a seam, he would have discovered that all seam areas on the membrane were covered with an impermeable seam tape. Seam tape is waterproof. Recognizing that the membrane must be applied in pieces rather then in one enormous sheet, seams are inevitable. To add additional protection to eliminate the possibility of leakage in this

area, impermeable seam tape was applied to the seams which created a unified waterproof membrane of multiple layers.

The fact that Campbell never observed a seam and has never tested any of the seams to see if they leak violates one of the most fundamental requirements of *Daubert* and its progeny. The Federal Rules of Evidence require that an expert's testimony be based upon sufficient facts, and that the testimony is the product of reliable principles and methods. Fed. R. Evid. 702. Campbell's opinions clearly fall short of these requirements. The rules require an opinion to be based on sufficient facts. Campbell's opinions are based on none. To render an opinion of a defect without ever observing the allegedly defective portion of the product is specious at best and certainly does not rise to the level of reliability required by *Daubert*.

Campbell further evidences his lack of testing by failing to support his allegation that once water enters a seam in the membrane, it is free to migrate between the membrane and concrete substrate. There is no evidence supporting this theory and Campbell admits he never conducted any testing in this regard:

> Q. Have you done any testing whatsoever to determine what is the effect of - on water migration of the film failing to dissolve?
>
> A. No, I've run no test.

(Exh. A, Campbell Depo. at 57).

Moreover, even if Campbell's opinions were based on sufficient facts, his methodology (or lack thereof) in reaching his conclusion is grossly flawed. More to the point, he has no methodology for reaching his conclusion. The inquiry required under *Daubert* is an analysis of

the testing methodology employed by an expert to reach a conclusion. Campbell's opinions do not even rise to that level - he has no methodology to analyze.

Campbell did not follow the traditional scientific method of forming a hypothesis, testing it, accounting for any contradictory results, and forming an opinion. Campbell hypothesized that the membrane is leaking at the seams and that water could then migrate. He never tested his theory, however. Furthermore, based on his investigation, he was entirely precluded from testing his theory due to the fact that he never actually observed a seam at any time, which represents the specific area of the membrane which he believes leaks. Absent a testing of any of his hypotheses, including that the seams are a source of leaks, his opinions are nothing more than the "rank speculation" expressly precluded under the evidentiary standards. *Kemp,* 2000 WL 1062105; *see also Weisgram v. Marley Co.*, 169 F.3d 514, 519-520 (8th Cir. 1999)(Trial court excluded expert testimony when expert "did no testing to bolster this theory and admitted that he know of no tests that anyone had conducted to support a similar theory. . . ). Since Campbell admits he has never seen nor tested the areas he claims to be defective, his opinions clearly lack the careful scientific investigation and examination required by *Daubert.*

Finally, Campbell is unable to eliminate potential sources or causes of water infiltration *other than* alleged defects in the waterproofing membrane. Campbell freely admits that if water were allowed to circumvent the entire waterproofing system, and leaks occurred as a result of such an occurrence, that said leakage would not be due to a defect in the waterproofing membrane. (Exh. A., Campbell Depo. at 65.) For instance, if water is free to enter through building walls or vinyl siding, leaks would likely occur due to the fact that water was allowed to circumvent the waterproofing system. (Exh. A, Campbell Depo. at 65-66.) Campbell did no

testing to determine whether the water intrusion may be caused by leakage through building walls or through vinyl siding. (Exh. A, Campbell Depo at 65-66.) The failure to consider and exclude other possible sources of a defect can be sufficient grounds to exclude the testimony of an expert. *See Erpelding v. Skipperliner Industries, Inc.*, 2002 LEXIS 16990 (D. Minn. 2002)(Trial court excluded testimony of two expert witnesses in part because they failed to account for other potential causes of the alleged damages).

Campbell's failure to eliminate other potential sources of leaks is highlighted by the fact that the cause of any particular leak cannot be pinpointed. During his investigation, Campbell identified 8 different active leaks within the Promenade project. (Exh. A, Campbell Depo. at 48.) Of the 8 he discovered, however, he could only identify the location of 4 of them. (Exh. A, Campbell Depo. at 48-49.) Of the 4 leaks where he could identify a location, he remained unable to identify the source of any water that was penetrating the area:

> Q. As you sit here today, do you know - do you have an opinion whether - where the source of four leaks that you were able to identify their location, where the source of the water is coming from?
> A. No. . . .
> Q. And as I understand from your prior testimony, you're unable to testify where any particular leak came from?
> A. Correct.

(Exh. A, Campbell Depo at 50, 53.)

To summarize, Campbell has no familiarity with the product in question, never saw that areas he claims leak, never tested the allegedly defective parts of the membrane, and fails to account for, much less exclude, other potential leak sources in rendering his opinion. These conclusory and unfounded opinions cannot be used to support an allegation of a defect in

CETCO's product, and do not satisfy the requirement of *Daubert and Kumho.* Accordingly, the Court should exclude those portions of Campbell's opinions alleging a defect in the waterproofing membrane.

## II. OTHER EXPERT'S OPINIONS REGARDING A DEFECT IN THE MEMBRANE HAVE NO RELIABLE FOUNDATION AND SHOULD BE EXCLUDED.

### A. Other Experts' Opinions Rely Exclusively on Campbell.

Numerous other experts involved in this case make allegations of a defect in the membrane. Those opinions, however, are based almost exclusively on the flawed findings of Campbell. No expert besides Campbell made any independent observations of alleged defects in the membrane, nor did any expert do any testing in this regard. Since these opinions have do independent support and merely repeat Campbell's findings, they should be excluded.

#### *1. Mr. Richard Stehley*

Starting with Mr. Richard Stehley, retained by Elness Swensen Graham Architects, Inc., he states in his report the following:

> Finally, the bentonite membrane appears not to be functioning properly. The water soluble film on the fact of the membrane was still intact in some places. Therefore, the membrane did not seal at the lapped edges where the film remains.

(Exh. H, Stehley Report at 5.) His opinions regarding the membrane, however, are not founded on anything but hearsay information garnered from Campbell's report and findings:

> Q. And that information that you've included in your report [regarding alleged failures of the waterproofing membrane] is solely as a result, is it not, of Mr. Campbell's, Inspec's report?
>
> A. Yes.

(Exh. G, Stehley Depo at 72.) Furthermore, Stehley concedes that he did not conduct any independent testing or examination of the Swelltite product in order to form a basis for his opinions. (Exh. G, Stehley Depo at 34, 72.)

*2. Mr. Sid Bhatt*

Next, Mr. Sid Bhatt, retained by J-Berd, opines as follows: "[S]ite inspections showed that the waterproofing had leaks, . . . Had the waterproofing functioned properly, the subsurface water would not have leaked into the buildings." (Exh. F, Bhatt Report at 4.) Likewise, Bhatt's opinions with respect to the performance of the membrane are based solely on the flawed conclusions of Campbell:

> Q. And you've formed no opinions of your own regarding the efficacy of the waterproofing membrane?
> A. That is correct.

(Exh. E, Bhatt Depo at 16.)

*3. Mr. Richard Kozial/Mr. Mark Chauvin*

The report prepared jointly by Mr. Richard Kozial and Mr. Mark Chauvin, retained by Weis, alleges the following defects:

> In addition, **based on our review of background information and the observations reported by Inspec,** several problematic details appear to exist in the original design and installation of the courtyard waterproofing system. . . . **According to the investigative work performed by Inspec,** the waterproofing system was improperly installed, damaged, and/or not functioning properly at several locations.

(Exh. I, Kozial/Chauvin Report at 8.) Both Kozial's and Chauvin's allegations of a defect in the Swelltite product are based on Campbell's findings.

When questioned about the above statements contained in the report, Kozial states that those allegations are based on the Inspec report:

Q. And it reads, "According to the investigative work performed by Inspec, the waterproofing system was improperly installed, damaged, and/or not functioning properly at several locations." Do you see that?
A. Yes.
Q. You're basing that on the Inspec report and the Inspec report alone, correct?
A. Correct.

(Exh. J, Kozial Depo. at 77.) Furthermore, Kozial states that he has no independent opinions that water made its way beneath the Swelltite membrane:

A. I have no firsthand evidence from the openings made that shows water beneath the Swelltite membrane.
Q. And you did no testing to see if that was in fact even possible; right?
A. We did not do any testing.

(Exh. J, Kozial Depo. at 85.) Kozial's deposition testimony shows that he has no independent basis for alleging any type of defect in the waterproofing membrane. Likewise, Chauvin has no independent basis for such an opinion, either:

Q. Do you know of anybody ever looking at a seam and finding water penetrating through the seam?
A. I believe Inspec identified seams that were problematic. However, I don't know if they identified seams that had evidence of leakage through them.
Q. Mr. Campbell, I will suggest to you, ask you as a hypothetical, testified that he never examined one seam.
A. Okay.
Q. All right. Other than Mr. Campbell's assertion there might be leaks to seams, are you aware of any other evidence to support that?
A. No.

(Exh. K, Chauvin Depo. at129.)

4. *Mr. William Arockiasamy*

Mr. William Arockiasamy, retained by ESG, makes only the following conclusory allegation regarding a defect in the membrane: "We concur that the leakage occurred due to the lack of an adequate site grading plan and the inadequacy and the failure of the waterproofing system." (Exh. D, Arockiasamy Report at 3.) Here again, the only basis for this opinion is the regurgitation of Campbell's purported findings in his report. Arockiasamy has no independent basis for his opinion:

> Q. Did you do any studies to determine whether this waterproofing system was either being penetrated or circumvented?
> A. No, I did not. . . .
> Q. And you don't have an opinion as to any penetrations that may have been existing in the waterproofing system?
> A. Yes.
> Q. Any you don't have any knowledge yourself of any failure, specific failure of the material used in the waterproofing system?
> A. That's correct. I do not.

(Exh. C, Arockiasamy Depo. at 40, 42.)

5. *Mr. Jon Camaya*

Mr. Camaya alleges in his report that "According to the disclosure report, the [waterproofing membrane] material failed to perform as expected in that the film separator on the bentonite did not dissolve according to its design. This was observed in the destructive test openings and the samples recovered by the owners consultant [Campbell]." (Exh. L, Camaya Report at 4.) Camaya did no independent testing of the membrane, however, nor did he personally observe any of the membrane seams in question.

Q. It says, "According to the disclosure report, the material failed to perform as expected in that the film separator on the bentonite did not dissolve according to its design. This was observed in the destructive test openings and the samples recovered by the owners consultant." The owner's consultant is Dave Campbell, is that right?
A. Yes.
Q. And so are you saying here that it's Dave Campbell that observed this condition?
A. Yes. According to his report, yes.
Q. Because you didn't observe these conditions, right?
A. That's correct.
Q. So you're relying entirely on Mr. Campbell's work?

. . .

The Witness: With respect to that, yes.

(Exh. M, Camaya Depo. at 64-65.)

**B. Other Experts' Opinions Lack Foundation and Reliability, and Are Cumulative.**

As outlined above, the opinions of Campbell should be excluded for lack of any reliable support. All of the remaining experts alleging a defect in CETCO's product admit that they have no independent basis for their conclusions, and that they rely on the opinions of Campbell to make that allegation. It can hardly be stated that opinions of this nature, which amount to nothing more than regurgitation of previously stated opinions, rise to the level of relevant and reliability required by *Daubert* and *Kumho*. These expert opinions do nothing more than play "follow the leader" and are not supported by the "intellectual rigor" required for the admissibility of expert testimony. *Kumho*, 526 U.S. at 152.

These opinions should be excluded on *Daubert* grounds alone. In additional, however, these opinions are unquestionably cumulative and will be of no meaningful assistance to the jury.

Federal Rule of Evidence Rule 403 "expressly permits testimony to be excluded if the district court concludes it would be a 'needless presentation of cumulative evidence.'" *Gibson v. Mohawk Rubber Co.*, 695 F.2d 1093, 1101 (8th Cir. 1982); *quoting* Fed. R. Evid. 403. Where a party intends to call an expert witness whose proffered testimony is not substantially different from testimony already provided by another expert, the trial court may properly exclude such evidence as cumulative. *Molkenbur v. Hart*, 411 N.W.2d 249, 252 (Minn. App. 1987).

The experts identified above offer nothing new to the jury. By their own admission, their opinions are entirely duplicative of Campbell's and are therefore cumulative. Without any testing of the product or any independent basis for their concurrence with Campbell, the Court should exclude those portions of their opinions alleging a defect in the membrane.

## III. EVIDENCE OF WATER INTRUSION AT SITES OTHER THAN PROMENADE SHOULD BE EXCLUDED.

The membrane manufactured by CETCO has been used successfully in many different applications across the nation. The parties to this litigation are aware, however, of instances wherein the membrane was used and water intrusion problems were experienced. There is no proof that any water intrusion problems at other locations are the result of a defective membrane. Instead, these other locations are simply places wherein the membrane was installed and water leaks occurred. Other sites experiencing water intrusion problems are not the subject of this litigation and any reference to them should be excluded for lack of foundation and relevance.

"'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than

it would be without the evidence." Fed. R. Evid. 401. "Evidence which is not relevant is inadmissible." Fed. R. Evid. 402.

"Under [Federal Rule of Evidence] 401, evidence of similar occurrences might be relevant to the defendant's notice, magnitude of the danger involved, the defendant's ability to correct a known defect, the lack of safety for intended uses, the standard of care, and causation." *Kehm v. Procter & Gamble Mfg. Co.*, 724 F.2d 613, 625 (8th Cir., 1983). However, "[e]vidence of prior accidents is admissible only if the proponent of the evidence shows that the accidents occurred under circumstances substantially similar to those at issue in the case at bar." *Hale v. Firestone Tire & Rubber Co.*, 756 F.2d 1322, 1332 (8th Cir., 1985). "Even when substantial identity of the circumstances is proven, the admissibility of such evidence lies within the discretion of the district judge, who must weigh the dangers of unfairness, confusion, and undue expenditure of time in the trial of collateral issues, against the factors favoring admissibility." *Hicks v. Six Flags Over Mid-America*, 821 F.2d 1311, 1316 (8th Cir. 1987); *citing McKinnon v. Skil Corp.*, 638 F2d 270, 277 (1st Cir. 1981).

*McKinnon*, cited by the Eighth Circuit Court of Appeals in both *Hale* and *Hicks*, involved a claim against Skil Corporation for an injury alleged to have resulted due to the defective condition of its saw. *McKinnon*, 638 F.2d at 272-73. The plaintiff tried to introduce evidence of Skil's answers to interrogatories whereby it identified a number of other injuries associated with use of the Skil saw. *Id*. at 277. The Court reasoned that the answers did not indicate the cause of the injury nor how the injury occurred and were thereby inadmissible. *Id*. Where the cause and circumstances surrounding prior accident involving a product are not the same as the cause and

circumstances concerned in the instant action, the district court may properly exclude such evidence.

Here, parties alleging that CETCO's product is defective may try to introduce evidence showing that other construction projects utilizing the membrane experience water intrusion problems. This evidence must be excluded because it has not and cannot be shown that the water intrusion problems "occurred under circumstances substantially similar to those at issue in the case at bar." *Hale,* 756 F.2d at 1332. Admitting evidence of problems at other sites would essentially require the proponent of the evidence to prove that the circumstances surrounding other sites are substantially similar to those of the Promenade. Furthermore, it must be shown that the water intrusion problems were the result of a defect in the membrane. Even if both of these elements could be established (they cannot), doing so would amount to a trial within a trial in order to determine whether to admit this type of evidence.

Even if the court finds that the proponents of this evidence have established their burden of proving that the circumstances surrounding the Promenade are substantially similar to those of other sites using the membrane, the evidence should still be excluded. In the unlikely event this burden is satisfied, the Court still has discretion whether to admit this evidence. The Court must "weigh the dangers of unfairness, confusion, and undue expenditure of time in the trial of collateral issues, against the factors favoring admissibility." *Hicks,* 821 F.2d at 1316.

The trial of this matter is complicated enough without bringing in a discussion of water intrusion problems at other sites using CETCO's product. Admitting this evidence will undoubtedly create additional confusion on the part of the jury, who will be presented with evidence regarding water intrusion at multiple sites, asked to determine the cause of the problem,

and then supposedly link the problems at other sites to Promenade. CETCO maintains that no party can adequately establish the requisite similarities between other sites and Promenade, but even if that were done, the evidence should still be excluded for reasons outlined above.

Finally, exclusion of this evidence is consistent with the principles of Rule 403, which allows exclusion of relevant evidence if its admission creates confusion or is unfairly prejudicial. Fed. R. Evid. 403. Not only will the presentation of this evidence be confusion, but it may also be unfairly prejudicial. Proponents of the evidence can make the simple, unfounded assertion that other sites experience leakage too, so the product must be defective. Evidence of an accident or property damage is not evidence of negligence or a defective product. Accordingly, evidence of leakage at sites other than the Promenade should be excluded.

## CONCLUSION

Based on the foregoing, CETCO respectfully request that any expert opinions alleging a defect in the waterproofing membrane be excluded. Additionally, CETCO request that the Court exclude any reference to water intrusion problems and sites other than Promenade.

**ERSTAD & RIEMER, P.A.**

Dated: September 3, 2004

By: s/ Patrick D. Reilly
Patrick D. Reilly (#90451)
Benjamin B. Bohnsack (#0319399)
Attorneys for Colloid Environmental Technologies Company
200 Riverview Office Tower
8009 - 34th Avenue South
Minneapolis, MN 55425
(952) 896-3700