**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Westfield Insurance Company,

Plaintiff,

vs.

Weis Builders, Inc., Promenade Village Townhomes, L.L.C., Healey Ramme Company, and Valley Forge Insurance Company, one of the CNA Companies,

Defendants, and

Weis Builders, Inc.,

Third Party Plaintiff,

vs.

Waterproofing By Experts, Inc., BRW Elness Architects, Inc., n/k/a Elness Swenson Graham Architects, Inc., Colloid Environmental Technologies Company, and J-Berd Mechanical Contractors, Inc.,

Third Party Defendants,

and

Colloid Environmental Technologies Company,

Third Party Defendant and
Fourth Party Plaintiff,

v.

Chris Craft Industrial Products, Inc.,

Fourth Party Defendant.

Civil File No. 00-CV-987 JEL/JSM

**THIRD PARTY DEFENDANT J-BERD MECHANICAL CONTRACTORS, INC.'S TRIAL BRIEF**

---

## INTRODUCTION

Third-Party Defendant J-Berd Mechanical Contractors, Inc. ("J-Berd") submits the following memorandum of law as its trial brief in this action.

## FACTS

In October 1996, Weis Builders, Inc. ("Weis") entered a Standard Subcontract Agreement with J-Berd Mechanical Contractors, Inc. ("J-Berd") for J-Berd to perform work on the plumbing, heating, and fire protection systems for the Project, including installation of a courtyard plaza drain system to carry the precipitation received from the courtyards to the outside storm system. *See* Heyer Aff. in Support of J-Berd's Motion for Summary Judgment dated 11/17/04, Ex. I.[1]

J-Berd installed the drain base at the plaza deck level and then glued PVC piping that was extended up to grade level into the middle of the drain's basin. *See* Heyer Aff. dated 11/17/04, Ex. M, at 99-101. The drain's base of the drain rests in a hole drilled into the pre-cast deck level, with a portion of the drain extending below the pre-cast deck level to attach storm piping. Id. at 99-101. The drain had a clamping ring resting around the drain base flush with the plaza deck. Id. The drain's configuration also allows for piping to be attached to it on the top, thus the top of the drain base has a rim or flange that extends approximately two inches above the plaza deck level. Id. at 99-101.

After J-Berd installed the drains at the pre-cast plank level and extended the pipe up from the drain, waterproofing subcontractor Waterproofing By Experts ("WBE") installed the waterproofing system. Id. at 76-78; Ex. P, Thoreen Dep., at 229; Ex. H, at 104.

---

[1] These pleadings are already on file with the court and thus are not being resubmitted herein to avoid unnecessary duplication of the record.

Various contribution and indemnity claims have been brought against J-Berd relating to the plaza drain system in this action, including allegations such as breach of contract, strict liability, breach of warranty, and negligence.

In response to questioning regarding J-Berd's compliance with the work that they contracted to perform for Weis on the Project, Weis' project manager Prashant "Peter" Desai responded that "J-Berd did what they said they were going to do." Id. at Ex. H, at 695-696. According to Mr. Desai, any water standing that may occur at the surface of the grade in the courtyard or at the pre-cast plank level, is a "separate issue than how the drains have performed." Id. at 194. Mr. Desai was designated as Weis' corporate representative pursuant to a Rule 30(b)(6) corporate representative deposition noted by Promenade during this litigation. *See* Heyer Aff. dated 11/17/04, Ex. S. During the Rule 30(b)(6) deposition, Mr. Desai testified that none of the responses to questioning posed to him in his individual capacity by J-Berd counsel earlier that day would change as corporate representative for Weis. *See* Heyer Aff. dated 11/17/04, Ex. T, Desai 30(b)(6) Dep., at 59-60.

With regard to the design and installation of the plaza drain system, various proposed liability experts report that the drain that J-Berd installed, due to the fact that the top rim of the drain extends two inches above the plaza deck, this configuration contributes to the potential for up to approximately two inches of water to stand on the plaza deck before such water will start to drain.[2] *See, e.g.*, Heyer Aff. dated 11/17/04, Ex. U, Campbell Rep., at 5; Ex. V, Wiss Janney Rep., at 8; Ex. W, Kudder Rep., at 8-9; Ex. X, Stehly Rep., at 1, 2, 4. Some experts take issue with the design calculations made to determine the sizing of plaza drains. *See* Heyer Aff. dated 11/17/04, Ex. Y, at 21; Ex. W, at 4; *compare with* Heyer Aff. dated 11/17/04, Ex. DD,

[2] J-Berd assumes in this brief that all of these proposed experts have the requisite qualifications to render such observations and opinions, but does not intend to concede or waive its right to challenge such expertise at a later date.

Arockiasamy Rep. and Ex. U, at 9. Given the allegations regarding the design of the plaza drain system, J-Berd initiated a fourth-party complaint against the mechanical engineer responsible for the mechanical systems design for the project, including determining the number and placement of drains in the courtyard area.

**NEGLIGENCE CLAIM**

Under Minnesota law, in order to establish causation, the plaintiff must establish that it is more likely than not that an act or omission was a substantial factor in bringing about the result. Hott v. Hennepin County, 260 F.3d 901, 909 (8th Cir. 2001). Stated another way:

> It is incumbent on the plaintiff in a negligence action to introduce evidence that would afford a reasonable basis for the conclusion that the defendant's alleged negligence [directly] caused the plaintiff's injury. (citation omitted). The plaintiff must show **more than a mere possibility** that the injury resulted from the defendant's act. (citations omitted). A causal connection between the alleged negligence and the **injury must be established beyond the point of speculation or conjecture**. (citations omitted).
>
> Abbett v. County of St. Louis, 474 N.W.2d 431, 434 (Minn. Ct. App. 1991)(emphasis added); *see also* Altrichter v. Shell Oil Co., 161 F.Supp. 46, 49 (D. Minn. 1958); Kaiser-Bauer v. Mullan, 609 N.W.2d 905, 911 (Minn. Ct. App. 2000)(an inference of causation may not be based on conjecture, speculation, or mere possibility); Smith v. Runk, 425 N.W.2d 299, 301 (Minn. Ct. App. 1988)(if causation theory no more plausible than another theory, plaintiff has not established prima facie case of negligence); Kludzinski v. Great Northern Ry. Co., 130 Minn. 222, 224, 153 N.W. 529 (1915); Nguyen v. Control Data Corp., 401 N.W.2d 101, 105 (Minn. Ct. App. 1987).

Testimony that does nothing more than show a mere possibility, suspicion, or conjecture that a causal connection exists, without any foundation to exclude any other possible causes, is not proper foundation to establish causation. *See* Bernloehr v. Central Livestock Order Buying Co., 208 N.W.2d 753, 755 (Minn. 1973)(citation omitted); *see also* Elias v. City of St. Paul, 350 N.W.2d 442, 444 (Minn. Ct. App. 1984). The burden of proving causation in a strict liability and breach of warranty claims is the same as that in a negligence claim. *See, e.g,* Worden v. Gangelhoff, 241 N.W.2d 650, 651 (Minn. 1976).

J-Berd maintains that the evidence in this case does not support a finding that J-Berd's work on the plaza drain system caused the alleged water leaks.

Mikesh, Inc. brought a motion for summary judgment in November 2003 and argued that that the evidence in this action did not sufficiently support the allegations of negligent mechanical design work for the Project's plaza drain system. The court granted Mikesh's summary judgment in July 2004 and found as a matter of law that there was nothing in the record to create a material fact issue regarding the calculation of the number and placement of drains for the plaza drain system:

> ***Mikesh points out that no expert in this case has opined that Mikesh's recommendations regarding placement and number of drains are a cause of the water problems***….
> ***
> ***J-Berd asks the Court to deny Mikesh's motion in the event that the Court finds a genuine issue of material fact "with regard to the causal relation of the design of the drain system and [Mikesh's] work on this Project and the alleged damages in this action."*** J-Berd acknowledges, however, that no expert has attributed the cause of the alleged water leaks to either the design or the installation of the plaza drain system.
> ***
> ***S.N. Bhatt, the only expert who is a mechanical engineer, concluded that Mikesh's methods used for calculating the number of drains and located of drains were proper.*** Because ***there is nothing in the record to create a genuine issue of material fact with respect to whether Mikesh breached its duty of care to J-Berd***, the Court grants Mikesh's motion and dismisses with prejudice J-Berd's claim of negligence against Mikesh.

*See* Honorable Joan N. Ericksen's Order dated July 1, 2004, at 22 (emphasis added).

Given the court's holding, J-Berd maintains that the number and placement of the plaza drains is no longer an issue that can be raised by any of the parties to this action at trial. *See* Unigroup, Inc. v. Winokur, 45 F.3d 1208, 1211 (8th Cir. 1994)(law of the case doctrine "prevents the relitigation of settled issues in action, thus protecting the expectations of the parties, ensuring uniformity of decisions, and promoting judicial efficiency").

**STRICT LIABILITY CLAIM**

References to a strict liability claim can be found in the cross-claims of other third-party defendants. Under the doctrine of strict liability, one who creates a danger of harm to another by engaging in an abnormally dangerous activity should be held absolutely accountable for any resulting injuries. *See* Seim v. Garavalia, 306 N.W.2d 806, 810 (Minn. 1981). In addition, under the Restatement (Second) of Torts Section 402A (1965), a producer or distributor of products can be found strictly liable if, due to an unreasonably dangerous defect in design or manufacture, injury is caused to another. Id.

J-Berd is not aware of any cases that hold that design or installation of drains is "unreasonably dangerous" or that such work constitutes "engaging in an abnormally dangerous activity." Accordingly, there is no basis for holding J-Berd strictly liable in this action and thus it is appropriate to dismiss Colloid's cross-claim for failure to state a claim upon which relief can be granted. *See* Fed.R.Civ.P. 12.

**WARRANTY CLAIM**

References to a claimed breach of warranty can also be found in the cross-claims of other third-party defendants. The only party that J-Berd contracted with to perform work on this Property was Weis. Thus, no other party to this action has standing to allege that J-Berd provided any sort of warranty to it regarding J-Berd's work.

The doctrine of implied warranty of fitness for the purpose may be extended to construction contracts if: (1) the contractor holds himself out, expressly or by implication, as competent to undertake the contract; and the owner (2) has no particular expertise in the kind of work contemplated; (3) furnishes no plans, design, specifications, details or blueprints; and (4) tacitly or specifically indicates his reliance on the experience and skill of the contractor, after

making known to him the specific purposes for which the building is intended. *See, e.g.*, Robertson Lumber Co. v. Stephen Farmers Coop. Elevator Co., 274 Minn. 17, 24, 143 N.W.2d 622, 626 (1966). If an owner furnishes plans and specifications to a contractor to follow in a construction job, he impliedly warrants that such specifications and plans are sufficient for the purposes implicit therein. McCree & Co. v. State of Minnesota, 91 N.W.2d 713, 724 (Minn. 1958); *see also* D.H. Blattner & Sons, Inc. v. Firemen's Insurance Co., 535 N.W.2d 671, 676 (Minn. Ct. App. 1995). The existence of an implied warranty is a question of law. Dworsky v. Vermes Credit Jewelry, Inc., 69 N.W.2d 118, 122 (Minn. 1955).

The deposition and expert testimony that has developed in this action establishes that the plaza drain system installed at the Property was indeed fit for its intended purpose. The plaza drain system was installed in accordance with all Project drawings and specifications provided to J-Berd by Weis and Steen Engineering. Mr. Desai, Mr. Mikesh, and various J-Berd representatives have all testified that the plaza drain work adhered to the architectural plans, Steen Engineering mechanical specifications, and applicable plumbing code. In addition, there is no evidence to suggest that the drain system work was defective. The only expert who ran calculations of the plaza drain system based on the applicable plumbing code, William Arockiasamy, verified that the design of the plaza drain system was indeed compliant. *See* Heyer Aff. dated 11/17/03, Ex. DD. Accordingly, dismissal of the warranty claim against J-Berd is appropriate.

**CONTRACT CLAIM**

In a breach of contract action, the plaintiff has the burden of proving not only a breach, but also that the damages were caused by the breach. Grenier v. Air Express Intern. Corp., 132 F.Supp.2d 1198 (D. Minn. 2001). In the present action, the issue of whether J-Berd fulfilled the

terms of its contract is undisputed: Weis' corporate representative Peter Desai unequivocally stated that: "J-Berd did what they said they were going to do." *See* Heyer Aff. dated 11/17/03, at Ex. H, at 695-696. Also, as previously noted, a representative of the mechanical engineering consulting firm Steen Engineering as well as a City of Eagan inspector examined the drain system and did not note any deficiencies.

**DAMAGES**

Healey Ramme's vice president of finance Greg Ribich testified that the fair market value of the Promenade Village Townhomes project on December 12, 2003 at the time of the sale of the property would have been $39,800,000 had there been no water leakage problem. *See* Heyer Aff. dated 9/2/04, Ex. A, Ribich Dep. ex. 722. Promenade thus asserts that the difference of value between what they sold it for and what it they believe it to be worth is approximately $14.2 million. They also claim approximately $2.7 million in income loss, which they attribute to lost/reduced rents due to the water leaks. Furthermore, they have claimed that repairs to the property to the tune of approximately $4.3 million are necessary in order to restore the property to its proper condition. *See* Heyer Aff. dated 9/2/04, Ex. A.

Under the federal jury instructions regarding damage to property (§ 129.01), Healey-Ramme can only receive property damages for the following:

> As compensation for damage to…property, plaintiff…is entitled to recover the lesser of two figures arrived at as follows:
>
> One figure is the reasonable expense of necessary repair of the property plus the difference in the fair market value of the property immediately before the occurrence and the fair market value after the property is repaired.
>
> The other figure is the difference between the fair market value of the property immediately before the occurrence and the fair market value of the unrepaired property immediately after the occurrence.
>
> You may award for property damages the lesser of these two figures only.

In addition, federal case law instructs that a plaintiff cannot "recover a profit for his injury," but rather should only be allowed to recover an amount that will put him back to the same position before the alleged injury. Big Rock Mountain Corp. v. Stearns-Roger Corp., 388 F.2d 165, 169 (8th Cir. 1968). The Eighth Circuit case Big Rock Mountain Corp. v. Stearns-Roger Corporation is instructive as to how the measure of damages should be calculated in the present case. In the Big Rock case, the court held that a corporation's measure of damages was not the difference between the realty value before and after an injury, but rather the cost of restoration plus loss of use:

> **The application of the [diminution of value] rule under the facts in this case involved uncertainty, conjecture and speculation. It is necessarily based on the assumption that the [project] would have been successful and profitable** had it not been for the failure of one part….Additionally, **the damage was temporary as certainly the stem was susceptible to restoration or replacement at a fraction of the cost of the damages asserted to have accrued under the before and after rule for measuring damages**.
>
> Big Rock Mountain Corp. v. Stearns-Roger Corp., 388 F.2d at 169 (emphasis added).

Minnesota case law also instructs that if property is not damaged beyond repair and has not yet been repaired, a plaintiff can receive damages for the diminution of value of the property or the cost of repairs, whichever is less. *See, e.g.*, MINN.CIV.JIG 92.10.

J-Berd submits that the evidence in this case does not support a diminution of value of damages, and thus if any damages are to be awarded in this action, they should be measured by the cost of repair plus loss of use.

**JURY VIEW**

Given the complexity of the issues in this case and consistent with federal jury instruction § 102.26, J-Berd respectfully requests that the jury in this case be permitted to view of the

Promenade Oaks Townhomes property. Given the size and complexity of this case, J-Berd believes that a jury view will aid the jury's understanding of the facts and issues in this case.

Dated: September 3, 2004

_/s/ Chandelle L. Heyer_____________

Rolf E. Sonnesyn (#131027)
Chandelle L. Heyer (#286114)
Tomsche, Sonnesyn & Tomsche, P.A.
610 Ottawa Avenue North
Minneapolis, MN 55422
Telephone: (763) 521-4499
Fax: (763) 521-4482

Roger C. Justin (#197270)
RINKE-NOONAN
Suite 700, Wells Fargo Center
P.O. Box 1497
St. Cloud, Minnesota 56302-1497
(320) 251-6700

Attorneys for Third-Party Defendant and Fourth-Party Plaintiff J-Berd Mechanical Contractors, Inc.