**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Westfield Insurance Company,

Civil File No. OO-CV-987 JEL/JGL

Plaintiff

vs.

Weis Builders, Inc., Promenade Village Townhomes, LLC, Healey Ramme Company, and Valley Forge Insurance Company, one of the CNA Companies,

Defendants, and
Third Party Plaintiff

vs.

Waterproofing By Experts, Inc., BRW Elness Architects, Inc., n/k/a Elness Swenson Graham Architects, Inc., Colloid Environmental Technologies Company, and J-Berd Mechanical Contractors, Inc.,

Third Party Defendants,

and

Colloid Environmental Technologies Company,

Third Party Defendant and
Fourth Party Plaintiff,

vs.

Chris Craft Industrial Products, Inc.,

Fourth Party Defendant.

**Attached hereto is Exhibit G – a true and correct copy of excerpts from Messerich deposition.**

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Westfield Insurance Company,

Plaintiff,

vs. Civil File No. 00-CV-987-PAM/JGL

Weis Builders, Inc.,
Promenade Village Townhomes, L.L.C.,
Healy Ramme Company, and
Valley Forge Insurance Company,
one of the CAN Companies,

Defendants,

and

Weis Builders, Inc.,

Third-Party Plaintiff,

vs.

Waterproofing By Experts, Inc., and
BRW Elness Architects, Inc., n/k/a
Elness Swenson Graham Architects, Inc.,
and Colloid Environmental Technologies
Company,

Third-Party Defendants.

---

The Deposition of STEPHEN GERARD MESSERICH, taken pursuant to Notice of Taking Deposition, taken before Barbara F. Schwegman, a Notary Public in and for the County of Washington, State of Minnesota, taken on the 2nd day of May, 2002, at 8500 Normandale Lake Boulevard, Suite 2110, Minneapolis, Minnesota, commencing at approximately 9:08 a.m.



APPEARANCES:

MARK A. GWIN, ESQUIRE, of the Law Firm of COUSINEAU, McGUIRE, ANDERSON, CHARTERED, 600 Travelers Express Tower, 1550 Utica Avenue South, Minneapolis, Minnesota, 55416-5318, appeared for and on behalf of Plaintiff, Westfield Insurance Company.

DEBRA L. WEISS, ESQUIRE, of the Law Firm of MEAGHER & GEER, PLLP, 4200 Multifoods Tower, 33 South Sixth Street, Minneapolis, Minnesota, 55402-3788, appeared for and on behalf of Defendant and Third-Party Plaintiff, Weis Builders, Inc.

STEVE GASKINS, ESQUIRE, of the Law Firm of FLYNN, GASKINS & BENNETT, LLP, 333 South Seventh Street, Suite 2900, Minneapolis, Minnesota, 55402, appeared for and on behalf of Defendants, Promenade Village Townhomes, LLC and Healy Ramme Company.

LEO I. BRISBOIS, ESQUIRE, of the Law Firm of STICH, ANGELL & KREIDLER, P.A., The Crossings, Suite 120, 250 Second Avenue South, Minneapolis, Minnesota, 55401, appeared for and on behalf of Defendant, Valley Forge Insurance Company.

MARK S. BROWN, ESQUIRE, of the Law Firm of MURNANE, CONLIN, WHITE & BRANDT, P.A., 444 Cedar Street, Suite 1800, Saint Paul, Minnesota, 55101, appeared for and on behalf of Third-Party Defendants, Waterproofing By Experts, Inc.

WILLIAM D. HULL, ESQUIRE, of the Law Firm of COLEMAN, HULL & VAN VLIET, 8500 Normandale Lake Boulevard, Suite 2110, Minneapolis, Minnesota, 55437, appeared for and on behalf of Third-Party Defendant, BRW Elness Architects, Inc., n/k/a Elness Swenson Graham Architects, Inc.



APPEARANCES:

PATRICK D. REILLY, ESQUIRE, of the Law Firm of ERSTAD & RIEMER, P.A., 200 Riverview Office Tower, 8009 34th Avenue South, Minneapolis, Minnesota, 55425, appeared for and on behalf of Third-Party Defendant, Colloid Environmental Technologies Company.

*The Original is in the possession of Attorney William D. Hull.*

INDEX


| | Page |
|---|---|
| STEPHEN GERARD MESSERICH | |
| Cross-examination by Mr. Hull | 4 |
| Cross-examination by Mr. Gwin | 122 |
| Cross-examination by Mr. Reilly | 134 |
| Cross-examination by Mr. Brisbois | 160 |
| Cross-examination by Mr. Gaskins | 163 |
| Recross-examination by Mr. Hull | 225 |
| Recross-examination by Mr. Gaskins | 244 |


EXHIBITS


| | |
|---|---|
| Exhibit 196, Photocopies of photographs of door sill | 67 |
| Exhibit 197, 7-14-97, Fax to Frank Varak and deck detail | 86 |
| Exhibit 198, 8-11-97, Letter to Peter Desai | 87 |
| Exhibit 199, 4-29-98, Letter to Peter Desai | 89 |
| Exhibit 200, 1-8-98, Fax to Frank Varak | 93 |
| Exhibit 201, 1-28-98, Letter to Peter Desai | 95 |
| Exhibit 202, Photocopies of photographs of knee wall | 100 |
| Exhibit 203, 8-4-99, Fax to Joel Penzick | 102 |
| Exhibit 204, 5-31-00, Fax to Joel Penzick | 107 |
| Exhibit 205, Photocopies of photographs of plaza area | 112 |
| Exhibit 206, Photocopies of photographs of entry door | 113 |
| Exhibit 207, Photocopies of photographs of membrane onto brick ledge | 115 |
| Exhibit 208, Photocopies of photographs of plaza | 230 |




STEPHEN GERARD MESSERICH,
the Witness in the above-entitled
matter, after having been first duly
sworn, deposes and says as follows:

CROSS-EXAMINATION

BY MR. HULL:

Q. Would you please state your full name and spell your last name.

A. Stephen Gerard Messerich, M-E-S-S-E-R-I-C-H.

Q. Where do you live?

A. 28680 Old Town Road in Chisago City, Minnesota.

Q. Do you own that property?

A. Yes.

Q. Have you ever had your deposition taken before?

A. Yes.

Q. I just want you to make sure if you don't understand a question, that you ask me to clarify it. Will you do that?

A. Sure.

Q. What did you do to prepare for your deposition today?

A. Reviewed contracts, blueprints.

at Exhibits 41, 42, and 43 which are estimates for the Promenade project prepared by your company. Let's talk about Exhibit 41 first. Were you involved at all in the preparation of that proposal?
A. Yes.
Q. Tell me what role you played in that.
A. I played the role of estimator.
Q. Are there any other estimators at your company?
A. No, not for commercial.
Q. What did you have to work with as you prepared that bid?
A. I had a set of blueprints and of course a myriad of materials available to me of what I could choose from.
Q. What do you mean by materials you could choose from?
A. I believe I was told or asked to submit a quote for the material that I thought would best suit the project.
Q. So when you say you had access to a lot of materials, you're talking about materials about various different types of products?
A. Different products, different manufacturers.
Q. What specific to this project did you have



besides the plans?
A. That I believe was it.
Q. Did you have a project manual, a set of specifications?
A. There was a one-sheet specification, I believe, for a Section 7100, but that, if memory serves me right, was not utilized for this particular bid. It was utilized for a previous bid for the foundation walls only. I believe initially when this project was bid, it was a totality of the courtyard waterproofing and the foundation waterproofing, and somewhere in the bidding process of the initial -- the initial project, which would have been the foundation walls, I was told that the courtyards would be bid at a later date.
Q. Did you bid the foundation walls?
A. Yes.
Q. Did you do the foundation walls?
A. Yes.
Q. Is Exhibit 41 limited to the courtyard areas?
A. Yes.
Q. Tell me about the product that you have selected in Exhibit 41 for the courtyard waterproofing?
A. The sheet membrane material?
Q. Yeah.
A. It's an asphaltic sheet membrane, basically



60 mils thick and it's self-adhering, which means it comes in rolls, has a backing paper that you pull the backing paper off and apply the material onto a concrete surface and it adheres to it.
Q. At the time you prepared Exhibit 41, you felt that that was the most appropriate product for this application; is that right?
A. Well, the appropriate application and the dollar figure which always enters into a project.
Q. Had you had any conversations with Weis Builders prior to submitting this bid?
A. I'm sure I had, yes.
Q. I'm trying to figure out what you knew besides what you could gather from the plans about this project when you prepared your first bid which is Exhibit 41.
A. I knew that the project obviously was proceeding, that there was courtyards that needed waterproofing, and that the owner was looking for a product and for a price.
Q. Were you given any budget?
A. No.
Q. Had you had any experience with waterproofing courtyards like the ones at the Promenade?
A. At that time I don't believe we had a typical application for this particular courtyard. We had



waterproofed several other structures, flat courtyards, but not with the buildings on both sides.
Q. The product you had selected in Exhibit 41 was not ultimately used on this project?
A. That's correct.
Q. And why is that?
A. The -- it was -- I believe it was either this Tim Runner or Peter or someone within Weis that I was, you know, communicating with wanted a product that had a warranty behind it, and this particular process, the Miradri 861, has a product warranty only, and they wanted something with a ten-year or better product and labor warranty.
Q. Take a look at Exhibit 42, if you would, next. Exhibit 42 appears to be another bid prepared by Waterproofing By Experts for the Promenade; is that correct?
A. That's correct.
Q. And did you also prepare that bid?
A. Yes.
Q. This bid identifies another product; is that right?
A. Well, there's two. There's one for the vertical and then one for the courtyard, but the courtyard, yes, is a different product.