**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

| | |
|---|---|
| Westfield Insurance Company,<br><br>Plaintiff,<br><br>v.<br><br>Weis Builders, Inc.; Healey Ramme Co., sued as Healey Ramme Company; CNA Insurance Companies, sued as CNA Insurance Company; Promenade Village Townhomes, L.L.C.; Valley Forge Insurance Company, one of the CNA Insurance Companies,<br><br>Defendants,<br>and<br><br>Weis Builders, Inc.,<br><br>Counter-Claimant,<br><br>v.<br><br>Westfield Insurance Company,<br><br>Counter-Defendant,<br><br>and<br><br>Weis Builders, Inc.,<br><br>Third-Party Plaintiff,<br><br>v.<br><br>Promenade Village Townhomes, L.L.C. and Valley Forge Insurance Company,<br><br>Third-Party Defendants,<br><br>and | Court File No. 00-CV-987 JEL/JSM<br><br>**DEFENDANT PROMENADE VILLAGE TOWNHOMES, L.L.C.'S MEMORANDUM OF LAW IN SUPPORT OF MOTION IN LIMINE** |

| | |
|---|---|
| Weis Builders, Inc., | ) |
| | ) |
| Cross-Claimant, | ) |
| | ) |
| v. | ) |
| | ) |
| Promenade Village Townhomes and Valley Forge Insurance Company, | ) ) |
| | ) |
| Cross-Defendants, | ) |
| | ) |
| and | ) |
| | ) |
| Promenade Village Townhomes, L.L.C., | ) |
| | ) |
| Cross-Claimant, | ) |
| | ) |
| v. | ) |
| | ) |
| Weis Builders, Inc., | ) |
| | ) |
| Cross-Defendant, | ) |
| | ) |
| and | ) |
| | ) |
| Weis Builders, Inc., | ) |
| | ) |
| Third-Party Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| Waterproofing by Experts, Inc.; BRW Elness Architects, Inc., n/k/a Elness Swenson Graham Architects, Inc., and Colloid Environmental Technologies Company, | ) ) ) ) ) |
| | ) |
| Third-Party Defendants, | ) |
| | ) |
| and | ) |
| | ) |
| Colloid Environmental Technologies Company, | ) ) |
| | ) |
| Fourth-Party Plaintiff, | ) |
| | ) |

| | |
|---|---|
| and | ) |
| | ) |
| Chris Craft Industrial Products, Inc., | ) |
| | ) |
| Fourth-Party Defendant. | ) |
| | ) |
| and | ) |
| | ) |
| J-Berd Mechanical Contractors, Inc., | ) |
| | ) |
| Third-Party Defendant and Fourth-Party Plaintiff, | ) ) |
| | ) |
| v. | ) |
| | ) |
| Mikesh, Inc., | ) |
| | ) |
| Fourth Party Defendant. | ) |

---

**INTRODUCTION**

Pursuant to Local Rule 39.1(b)(1)(E), Promenade Village Townhomes, L.L.C. ("Promenade") seeks a ruling from the Court in advance of trial that Promenade's introduction of evidence of repair cost estimates for repairs not undertaken will not preclude it from asking for damages representing the diminution in value of the property.

This case involves damage to property. Ultimately, the damage Promenade suffered created financial distress for the townhome complex and forced its sale. Thus, under these circumstances Promenade did not, nor will it ever incur the cost of restoring or fully repairing the property. The actual damages suffered were, therefore, the diminution in the property's value together with the economic waste or lost use. The Minnesota jury instructions, however, necessitate Promenade's request for this Court's *in limine* ruling.

The comments to Minnesota CIVJIG 92.10 provide as follows:

> If claimant in his case-in-chief has introduced only evidence of the difference in value, and by cross-examination has testified as to repair costs, or if

> the opposing party has introduced evidence of repair costs, the testimony as to repair costs is admissible solely as impeachment evidence to test the credibility of the opinion evidence given by claimant on direct examination. …
>
> If claimant, as part of his own proof and not on cross-examination, introduces evidence of the difference in value before and after the harm and also evidence of the cost of repair, the judge should give that part of CIVJIG 92.10 (Part B) that will give the lower damage recovery."

4A Minnesota Jury Instructions Guides § 92.10 (4th Ed.), at 347.

In this case, Promenade is requesting this Court's *in limine* ruling to allow introduction of evidence of one or more estimated repair cost estimates during its case-in-chief without having those estimates limit Promenade's ability to ask for an award of the actual diminution in value.

Introduction of the repair cost estimates is essential for Promenade's case-in-chief for three reasons. First, the repair cost estimates are not actual costs of repair and do not represent the actual damage Promenade suffered. Promenade's actual damages are the diminution in value realized at the time of the sale of the property plus economic waste or lost use and out-of-pocket costs. Second, and relatedly, the continuing water leakage problems and the financial stress that those leaks put on the Promenade partnership, together with the high cost of repair, forced Promenade to sell the property. Finally, Weis Builders asserts that Promenade failed to mitigate its damages in connection with Promenade's breach of contract and warranty claims. Expert and other evidence will show that the cost of the repair for the water problem ranged between three and five million dollars. Thus, Promenade could not mitigate its damages reasonably and is entitled to establish that fact in its case-in-chief.

**<u>ARGUMENT</u>**

**A. PROMENADE IS ENTITLED TO INTRODUCE EVIDENCE CONCERNING THE ESTIMATED COST OF REPAIR WITHOUT BEING LIMITED TO THE DAMAGES IT SEEKS.**

In order to fully and fairly present its liability and damages case, Promenade must be allowed to present evidence of estimated costs to repair the water leak problems at the project. The exorbitant cost of repair demonstrates that Promenade could not mitigate its damages reasonably and ultimately was forced to sell the property. Comments to the Minnesota jury instructions for property damage state that the introduction of cost of repair evidence during a plaintiff's case-in-chief requires the trial court to instruct the jury that the plaintiff is only entitled to the lower of the two alternative forms of compensation. *But see Computer Tool and Eng'g, Inc. v. Northern States Power Co.*, 453 N.W.2d 569 (Minn. Ct. App. 1990) (both types of evidence introduced at trial; verdict using higher diminution in value damages affirmed). Such a ruling in this case would be fundamentally unfair and would prevent Promenade from showing the impracticality of mitigating its damages such that it was forced to sell the property. Nothing in the jury instruction comments, nor the case law on which those comments are based, addresses directly the issue of the admissibility of evidence of estimates of what costs to repair would be.

Promenade intends to establish that it did mitigate its damages during Promenade's case-in-chief. Critical to this point is the notion that the obligation to mitigate contemplates reasonableness. The only way Promenade had to mitigate its loss by repair would have been to dig up the plazas and start all over. The cost of that enterprise would have been unreasonable. The disruption that repair would cause further demonstrates the unreasonableness of any assertion that Promenade should dig up the plazas and start over because that course of action would only further increase Promenade's economic waste or loss of use damages. The alleged mitigation wouldn't really mitigate. Thus, in order to show that it acted reasonably, Promenade must show that the self-help remedy that would mitigate the damage of Weis' breach of contract was unreasonable.

In addition, because of the problems that the leaks created for the project financially, Promenade had to sell the project. Cost of repair, then, is relevant to show the economic necessity to sell the property, and is not relevant as a measure of the actual damage Promenade suffered.

In a case of less than total destruction of property, as here, a plaintiff suing for damages has an election to choose damages for costs of repair or diminution in value. *O'Connor v. Schwartz*, 229 N.W.2d 511, 513 (Minn. 1975) (citing *Hart v. North Side Firestone Dealer, Inc.*, 235 Minn. 96, 49 N.W.2d 587 (1951), and *Bartl v. City of New Ulm*, 245 Minn. 148, 72 N.W.2d 303 (1955), and incorporating Restatement of Torts § 928); *Computer Tool & Eng'g, Inc. v. Northern States Power Co.*, 453 N.W.2d 569, 575 (Minn. Ct. App. 1990); *see also* 4A Minnesota Jury Instruction Guides § 92.10 (4th Ed.), at 348.

*Computer Tool* stands for the proposition that when damaged property is sold, the proper measure of damages, regardless of the introduction of evidence showing the cost of repair, is diminution in value. 453 N.W.2d at 575. This case shows that the purpose of the election rule is **not** to preclude a party from seeking damages to which it is rightfully entitled, but merely to "prevent double redress for a single wrong." *Westbrook State Bank v. Aetna Cas. & Sur. Co.*, 437 N.W.2d 738, 741 (Minn. Ct. App. 1989).

In this case, no justification exists to limit the damages Promenade seeks simply because evidence of the estimated cost of repair, is to be introduced during Promenade's case-in-chief. During the initial rent-up period, Promenade was successful in renting the project at premium market rates. Following the numerous leak problems and during the repair construction, the project experienced higher turnover and vacancy rates, and was unable to raise rents at the same rate as the market. In turn, Promenade became financially unable to repair the project or to

continue to make mortgage payments, and it sold the project off at a depressed price. Given this scenario, limiting Promenade to a cost of repair measure of damages would severely under-compensate Promenade for its loss, yet evidence of the high cost of repair is necessary to establish that the property sale was forced.

*Wentworth v. Air Line Pilots Ass'n*, 336 A.2d 542 (D.C. App. 1975) involved the issue of the correct measure of damages when a damaged building was sold prior to repair. There the plaintiff sold the building and then brought suit. The plaintiff only introduced evidence of the cost of repair. 336 A.2d at 543. The trial court held that the estimated cost of repair was not an appropriate measure of damages. *Id.* Maryland's general rule of the measure of damages to real property was identical to that in Minnesota and as outlined MINN CIVJIG 92.10 (4th ed. 1999). *Id.* The trial court's decision that the proper measure of damages was diminution in value was affirmed.

The *Wentworth* opinion summarized its holding as follows:

> [W]e hold that subsequent to sale of property allegedly damaged, the owner of the property at the time it is damaged who sells the property without having restored it **cannot measure the loss by what it would cost to restore the property** … ; **rather, the measure is one of diminution in value**."

336 A.2d at 545 (emphasis added).

The case of *R.E.T. Corp. v. Frank Paxton Co., Inc.*, 329 N.W.2d 416 (Iowa 1983) also is instructive because of its factual similarities to this case. In *R.E.T. Corp.*, an apartment complex was built using the wrong type of insulation. 329 N.W.2d at 418. As a result, apartments were cold and tenants experienced high heating bills. *Id.* While the problem was being diagnosed, which took several years, the owners were forced to give tenants reductions and offered special rates to induce rentals. *Id.* The vacancy rate also increased and the owners were not able to bring in enough revenue to cover their costs. *Id.* The owners were forced to sell the property at

a substantial discount and sued the construction company for breach of contract, negligence, and breach of warranty. *Id.*

At trial, the owners were awarded damages for repair costs that they had expended prior to sale, lost rents, and, because the repairs that were done did not completely cure the damage, the diminution of market value. The contractor appealed the damage award and asserted that it was excessive. The Iowa Supreme Court upheld this award of damages, observing that:

> [t]he purpose of a damage suit is compensation; the goal is to place the injured party in as favorable position as though no wrong had occurred. Damages are limited to the actual loss. In defective construction cases, damages may include diminution in value, cost of construction, and completion in accordance with the contract, or loss of rentals.

*Id.* at 421 (citations omitted).

In sum, Promenade respectfully requests that the Court rule *in limine* to allow it to introduce evidence during its case-in-chief concerning diminution in value and estimated cost of repair and not thereafter to be precluded from seeking diminution in value damages because the repair cost estimates are less than the diminution of value damages. All of this evidence together supports Promenade's case for full compensation and any alternative measure is likely to result in under-compensation of Promenade for the injuries that it has suffered.

## CONCLUSION

Promenade has demonstrated that it is entitled to have diminution of value damages, among its other categories of damages, considered by the jury in this case. For all of the above reasons, Promenade's motion *in limine* should be granted and the Court should allow introduction of cost of repair evidence during Promenade's case-in-chief, without limiting Promenade's election to seek as damages the diminution in the value of the property.

Dated: September 3, 2004

**FLYNN, GASKINS & BENNETT, L.L.P.**

*s/Steven E. Rau*___________________
Steve W. Gaskins, #147643
Steven E. Rau, #147990
333 South Seventh Street
Suite 2900
Minneapolis, MN 55402
612-333-9500 Telephone
612-333-9579 Facsimile
***Attorneys for Defendant Promenade Village Townhomes, L.L.C.***