**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Westfield Insurance Company,

Civil File No. OO-CV-987 JEL/JGL

Plaintiff

vs.

Weis Builders, Inc., Promenade Village Townhomes, LLC, Healey Ramme Company, and Valley Forge Insurance Company, one of the CNA Companies,

Defendants, and

Weis Builders, Inc.,

Third Party Plaintiff,

vs.

Waterproofing By Experts, Inc., BRW Elness Architects, Inc., n/k/a Elness Swenson Graham Architects, Inc., Colloid Environmental Technologies Company, and J-Berd Mechanical Contractors, Inc.,

Third Party Defendants,

and

Colloid Environmental Technologies Company,

Third Party Defendant and
Fourth Party Plaintiff,

vs.

Chris Craft Industrial Products, Inc.,

Fourth Party Defendant.

**THIRD PARTY DEFENDANT WATERPROOFING BY EXPERTS' MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO EXCLUDE CERTAIN EXPERT TESTIMONY**

---

Waterproofing By Experts, Inc. ("WBE") brings this motion pursuant to Federal Rule of Evidence 702 and the holding in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and its progeny to bar certain testimony of third-party defendants Elness Swenson Graham Architects, Inc.'s ("ESG") and J-Berd's experts Richard Stehly and Wiliam Arockiasamy. Specifically, WBE seeks exclusion of any testimony by Stehly that the Swelltite membrane is inappropriate for use on the Promenade project, and that the liquid-applied flashing applied by WBE at the vertical termination of the membrane in the courtyards was improper. WBE further seeks an order barring any party from eliciting testimony from Arockiasamy that the drains in the plazas work, thus the leaks must have resulted from the waterproofing.

**LEGAL STANDARDS**

Fed. R. Evid. 702 provides that an expert may testify if "scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." Under Rule 702, "the district court must look to both the relevancy and the reliability of the testimony." *Blue Dane Simmental Corp. v. Am. Simmental Ass'n*, 178 F.3d 1035, 1040 (8th Cir.1999). Fed. R. Evid. 703 provides that "the facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing" and those facts and data must be "of a type reasonably relied upon by experts in the particular field." Therefore, "Rule 702 focuses on an expert's methodology" while "Rule 703 focuses on the data underlying the expert's opinion." *In re Paoli R.R. Yard PCB Litigation*, 35 F.3d 717 (3rd Cir. 1994), *cert denied*, 413 U.S. 1190 (1995).

Under *Daubert*, the district court performs a gatekeeping function by making a "preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts at issue." 509 U.S. at 592-93. The district court's gatekeeping function is not limited to purely "scientific" testimony, but applies to technical expert testimony as well. *Kuhmo Tire Company, Ltd. v. Carmichael*, 526 U.S. 137, 144 (1999); *Jaurequi v. Carter Mfg. Co., Inc.*, 173 F.3d 1076, 1081 (8th Cir. 1999).

*Daubert* provided some nonexclusive factors for the district court to consider:

> "(1) whether the theory or technique 'can be (and has been) tested';
> (2) 'whether the theory or technique has been subjected to peer review and publication';
> (3) 'the known or potential rate of error'; and
> (4) whether the theory has been generally accepted."

*Peitzmeier v. Hennessy Indus., Inc.*, 97 F.3d 293, 297 (8th Cir.1996) (citing *Daubert*, 509 U.S. at 593-94).

Courts have expanded upon the flexible inquiry provided under *Daubert* to include "whether the proposed expert ruled out other alternative explanations; and whether the proposed expert sufficiently connected the proposed testimony with the facts of the case." *Lauzon v. Senco Products, Inc.*, 270 F.3d 681, 687 (8th Cir. 2001). Experts must arrive at "their conclusions using scientific methods and procedures, and that those conclusions were not mere subjective beliefs or unsupported speculation." *Claar v. Burlington Northern Railroad Co.*, 29 F.3d 499, 502 (9th Cir.1994). Furthermore, when an "expert opinion has not considered all of the relevant facts, an objection to its admission is appropriate." *Concord Boat Corporation v. Brunswick Corporation*, 207 F.3d 1039, 1056 (8th Cir. 2000) *rehearing denied* (June 13, 2000).

**Richard D. Stehly**

**I. Mr. Stehly's opinions concerning the Swelltite and the water soluble film lack foundation, will not assist the trier of fact, and are irrelevant in any event because he his opinions do not "fit" the evidence in the case.**

Mr. Stehly opines the bentonite portion of the Swelltite 3000 is inappropriate for the application and did not function correctly. His conclusions in that regard do not pass the test of admissibility imposed by Rule 702.

Mr. Stehly is unfamiliar with and did not educate himself as to the composition of Swelltite 3000 or the water soluble film. Nor did he test those materials or their application specific to the project (Exhibit A, Affidavit of Brown, Stehly depo. At 33-34). Nevertheless, he rendered the opinion that bentonite, in general, is an inappropriate material for the application at the Promenade project *Id.* at 38.

However, when pressed, it is clear his criticism is not at all with the Swelltite system itself, but rather generally with bentonite. Specifically, he contends bentonite is subject to damage and movement if not protected. *Id.* He agrees, though, that a butyl or HDPE material – precisely the composition of the protective outer layer of the membrane - covering the bentonite component adequately addresses that concern. *Id.* at 39. He was simply not armed with sufficient inforation to say how the membrane was configured or applied on the project. *Id.* at 43.

Moreover, Stehly acknowledged the bentonite material he disfavors is merely a secondary layer of waterproofing which will not be implicated, and thus is not a cause for concern, as long as the seams are taped with impermeable tape and securely sealed. *Id.* at 44-46. He had no independent knowledge the seams were not in fact sealed just that way. *Id.*

Mr. Stehly has no knowledge and has made no review of the composition or efficacy of the water soluble film either:

140:25 Were you provided with any product
141: 1 literature relating to that film?
2 A No.
3 Q Were you provided with any technical data relating to the
4 film?
5 A No.
6 Q Have you done any checking on your own to obtain
7 information like that?
8 A No.

(*Id.* at 140-41)

In addition he made no independent determination whether film remained on portions of activated membrane, whether or not the film dissolved as intended, or whether seams between Swelltite panels did or did not seal. This despite his admission they could al be subjected to the "scientific method" of testing, whereby a hypothesis is tested to see if the conclusions are consistent (Stehly depo. At 73-75). He could have subjected each of the subject materials and conditions to such testing, but did not. Instead, he relied exclusively on Promenade's expert David Campbell's report:

34: 8 Q Did you do any testing yourself of any Swelltite film,
9 protective sheet or bentonite materials?
10 A No.
*****************************************************************

72:17 Q And that information that you've included in your report
18 is solely as a result, is it not, of Mr. Campbell's,
19 Inspec's report?
20 A Yes.
21 Q And you have no idea whether his conclusions are correct
22 or not; is that true?
23 A I assume they are. I mean I'm relying on them.
24 Q You're relying on them?
25 A Yes.
73: 1 Q But as far as the testing or the methodology he does to
2 come to that conclusion, you're not aware of that?
3 A No.

(Stehly depo., 34, 72-73).

In short, Stehly has no independent basis for his criticism of the Swelltite product. He simply does not favor bentonite. The facts of the case, however, as acknowledged by

Stehly, refute the criticism. Stehly's opinion regarding the Swelltite 3000 membrane lacks foundation and should not be elicited at trial. He further admitted being unable to identify one leak resulting from a defect in the design, manufacture, or installation of the Swelltite system. *Id.* at 75. His opinion is therefore also irrelevant, since he is unable to offer an opinion the membrane or how it was installed caused or contributed to leaks.

**II. Mr. Stehly's opinion regarding the liquid-applied flashing should be excluded because he did not consider all relevant facts and possible alternative sources for water penetration.**

Mr. Stehly criticizes the flashing at the vertical termination of the Swelltite membrane (Stehly depo. At 49-50). Specifically, he concludes it should have been terminated six to twelve inches above grade, and protected in some fashion. *Id.* In other words, he surmises the flashing was applied too low, when in fact the grade ended up too high, a fact unknown to him. His opinion in this regard is somewhat curious, since he did have a general awareness the grade had been changed during construction such that it terminated several inches higher than where it was depicted in the design drawings. *Id.* at 50, 53.

Nevertheless, he was not aware why the grade was changed, or that it the structural engineer had created a sketch detailing the change from bottom to top bearing trusses that included waterproofing and flashing detail of the sort Stehly would recommend and that would have addressed not only his flashing concerns, but prevented water from entering the buildings through unprotected walls above the Swelltite membrane. He was similarly unaware WBE had recommended the installation of a counterflashing material before beginning its work which went unheeded. *Id.* at 55, 124-135.

Nor did Mr. Stehly investigate or consider the impact on leak issues of the change to the link between buildings 1 and 2 (Stehly depo. at 71, 91). He did concede water could enter the buildings through various openings in the concrete link structures due to detailing defects that could explain signs of water intrusion. He also acknowledged other conditions unrelated to the courtyards in general and below-grade waterproofing in particular could account for water intrusion. *Id.* at 67-70. He did not investigate those conditions, however. *Id.* at 71. Mr. Stehly's failure to consider these critical facts means that there is "simply too great an analytical gap between the data and the opinion proffered" for his opinion to be admissible. *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

Moreover, Stehly's opinion regarding the flashing issue is irrelevant. He is unable to render an opinion connecting any leaks to any particular cause or condition. *Id.* at 64. He further admitted being unable to identify one leak resulting from a defect in the design, manufacture, or installation of the Swelltite system. *Id.* at 75. Stehly's opinion will only serve to confuse the jury and force it to speculate if admitted. Fed.R.Civ.P. 401, 403. For these reasons it should not be allowed.

**<u>William D. Arockiasamy</u>**

Mr. Arockiasamy was retained by J-Berd to "provide an opinion as to the adequacy of the drain assembly and drain system." (Exhibit B, affidavit of Brown, Arokiasamy deposition at 23). Mr. Arockiasamy was not hired to and undertook no investigation to determine the adequacy of the waterproofing system. *Id. at* 41, 61. Specifically, he did not conduct any investigation as to whether the Swelltite 3000 membrane and its component parts were installed in accordance with CETCO

specifications and installation instructions. *Id.* at 99. Mr. Arockiasamy conducted no testing of any aspect of the courtyards and he was not present at any time when the excavations in the courtyard were made. *Id.* at 25.

Despite the limited scope of his investigation, Mr. Arockiasamy attempts to proffer opinions as to the alleged functionality of the waterproofing system.

Q Okay. Did you do any studies to determine whether this waterproofing system was either being penetrated or circumvented?
A No, I did not.
Q So you don't have an opinion as you sit here today what is causing the leaks in the waterproofing system?
A If the drain system did not leak, then the waterproofing system allowed water to leak, whether it is all the things that you mentioned.

**********************************************************************************************

Q What was the other part based on?
A Other part is that there was adequacy of the drain system and that there wasn't any indication that the drain system in itself caused the leakage, so it's a logical inference that something else came through for the water to flow.

(*Id.* at 40, 61-62).

Mr. Arockiasamy makes the "logical inference" that because the drain system did cause the leaks, the waterproofing system must have. The Federal Rules of Evidence do not require "a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)(citing *Turpin v. Merrell Dow Pharmaceuticals, Inc.*, 959 F.2d 1349, 1360 (C.A.6), cert. denied, 506 U.S. 826, 113 S.Ct. 84, 121 L.Ed.2d 47 (1992)).

In making the "inference" that the waterproofing system failed, Mr. Arockiasamy failed to consider numerous other possible causes for the leaks at the Promenade. These causes include but are not limited to the link between building 1 and 2, the change to a wooden truss below grade, the architects decision to raise the grade of the soil 8 inches, or the use wooden posts attached directly to the precast deck. Mr. Arockiasamy did not

consider all of the relevant facts before making his inference that the waterproofing system failed. "Expert testimony that is speculative is not competent proof." *Concord Boat Corp.*, 207 F.3d at 1057. Mr. Arockiasamy's opinions regarding the waterproofing system are pure speculation and not competent evidence of any alleged failure of the waterproofing system.

Mr. Arockiasamy has insufficient foundation to proffer any opinions as to the installation of the Swelltite 3000 and its component parts because he conducted no testing and did not engage in any sort of investigation into the waterproofing system. His opinions about the waterproofing system were not reached through the use of "scientific methods and procedures," rather he made assumptions based on his own inferences. *Claar*, 29 F.3d at 502. Expert testimony based on inferences rather then scientific methods and procedures does not assist the trier of fact and is inadmissible under Fed. R. Evid. 702.

## CONCLUSION

For the above mentioned reasons, WBE respectfully requests an order from the court prohibiting any party from eliciting any opinion from Richard Stehly criticizing the Swelltite 3000 membrane or water soluble film or the liquid-applied flashing material or application, or from Mr. Arockiasamy that the source of the leaks was the Swelltite system.

Dated: September 3, 2004.

IVERSON REUVERS, LLC.

By_s/ Mark Brown_______

Mark S. Brown, #226774
Attorneys for Waterproofing By Experts
9321 Ensign Ave. South
Bloomington, MN 55438
(952) 548-7200