UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Westfield Insurance Company,

Plaintiff,

vs.

Weis Builders, Inc., Healey Ramme Co., sued as Healey Ramme Company, CNA Insurance Companies, sued as CNA Insurance Company, Promenade Village Townhomes, L.L.C., and Valley Forge Insurance Company, one of the CNA Companies,

Defendants,

and

Weis Builders, Inc.,

Third Party Plaintiff,

vs.

Waterproofing By Experts, Inc., and BRW Elness Architects, Inc., n/k/a Elness Swenson Graham Architects, Inc., Colloid Environmental Technologies Co., and J-Berd Mechanical Contractors, Inc.,

Third Party Defendants,

and

Colloid Environmental Technologies Co.,

Third-Party Defendant and Fourth-Party Plaintiff,

v.

Chris Craft Industrial Products, Inc.,

Fourth-Party Defendant,

Civil File No. 00-CV-987 JNE/JSM

**WEIS BUILDERS' MEMORANDUM OF LAW IN OPPOSITION TO CHRIS CRAFT'S MOTIONS IN LIMINE**

and

J-Berd Mechanical Contractors, Inc.,

Fourth-Party Plaintiff,

v.

Mikesh, Inc.,

Fourth-Party Defendant.

---

Chris Craft's motions in limine should be denied. There is reliable evidence that the water soluble film was defective and Mr. Campbell, Mr. Koziol, Mr. Chauvin and Mr. Camaya, among others, are entitled to testify regarding the defects. Further, the evidence related to other projects where Chris Craft's water soluble film was defective concern circumstances that are substantially similar to the circumstances at issue here and therefore the evidence is relevant, admissible and should be allowed.[1]

## I. Campbell's opinions regarding the water soluble film are reliable and should be allowed.

Chris Craft overstates the rigidity of the requirements for allowing expert testimony in this matter. The commentary to rule 702 states that "The intent of the Rule is to liberalize the admissibility standards for expert testimony." *Fed. R. Evid. 702, commentary*. The *Daubert* court explained that rigid requirements for expert testimony are at odds with the "liberal thrust" of the Federal Rules and their "general approach of relaxing the traditional barriers to 'opinion` testimony." *Daubert*, 509 U.S. at 588. Experts are permitted wide latitude to offer opinions,

---

1 Much of the background and supporting information for this memo was previously provided to the court in Weis' memo in opposition to Chris Craft's motion for summary judgment. Therefore, Weis incorporates the facts and arguments from that memo and will not repeat them here.

including those not based on firsthand knowledge or observation. *Daubert*, 509 U.S. at 592; see also *Bass v. Spitz*, 522 F.Supp. 1343 (ED Mich. 1981)(holding that experts may offer opinions based in part from factual assumptions not derived from their expertise) and *Spearman Indus. v. St. Paul Fire & Marine Ins. Co.*, 128 F.Supp.2d 1148 (ND Ill 2001)(holding that expert will be allowed to testify regarding his opinions about cause of roof damage where he has formed opinions based on his experience with roofs in general and his inspection of the roof in question because rejection of expert testimony is the exception rather than the rule and cross examination, presentation of contrary evidence and careful instruction are the traditional and more appropriate means of attacking shaky but admissible evidence). The expert does not need to have encyclopedic knowledge of the subject matter. *Ellis v. K-Lan Co.*, 695 F.2d 157 (5th Cir. 1983). The "trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system." *United States v. 14.38 Acres of Land Situated in Leflore County Mississippi*, 80 F.3d 1074, 1078 (5th Cir. 1996). Indeed, the court in *Daubert* affirmed that the appropriate way to deal with expert evidence is through cross examination; "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 595.

Further, the *Daubert* court concluded that "the Rules of Evidence – especially Rule 702 – do assign to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert*, 509 U.S. at 597. And, proponents of the expert testimony do not have to demonstrate to the judge by a preponderance of the evidence that the assessment of the expert are correct, they only have to show by a preponderance of the

evidence that their opinions are reliable and reliability is a lower requirement than the merits standard of correctness. *In re Paoli*, 35 F.3d at 714.

In addition, while *Daubert* sets forth criteria that the courts can use to determine whether expert testimony is reliable, the criteria are not exclusive nor strictly enforced; "Of course, the *Daubert* reliability factors should only be relied on to the extent that they are relevant…and the district court must customize its inquiry to fit the facts of each particular case." *Jaurequi v. Carter Manufacturing Co., Inc.*, 173 F.3d 1076, 1083 (8th Cir. 1999). Among the other factors that can be considered are whether the experts are proposing to testify about matters growing naturally and directly out of research they have conducted independent of the litigation, the independence of the investigator and his staff, and the presence of methods and practices contrary to "good science." *Black v. Rhone-Poulenc, Inc.*, 19 F.Supp. 2d 592, 597 (D. WV. 1998) and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 43 F.3d 1311 (9th Cir.), cert. Denied 516 U.S. 869 (1995). If the expert testifies based on research independent of the litigation, this "provides important, objective proof that the research comports with the dictates of good science." *Benedi v. McNeil-P.P.C., Inc.*, 66 F.3d 1378 (4th Cir. 1995)(holding that if the methodology is good enough for the real world it is good enough for a trial). Also, the focus is on the principles and methodology, not on the conclusions generated. *Daubert*, 509 U.S. at 595. If the Daubert framework were extended outside the realm of scientific testimony, "many types of relevant and reliable expert testimony – that derived substantially from practical experience – would be excluded." *United States v.* Jones, 107 F.3d 1147 (6th Cir. 1997). The courts have also held that experts can draw conclusions from observations based on extensive and specialized experience. *Kumho Tire Co.*, 119 S.Ct. at 1178.; *see also Hartzler v. Wiley*, 277 F.Supp.2d 1114 (DC Kan

2003)(holding that witness was properly qualified as expert in action against builder and builder's company relating to construction of home because witness had three decades of experience as construction manager, had published articles on construction industry and had given presentations on construction industry).

In the end, to assist the trier of fact, which is the requirement of rule 702, the witness must be qualified, have a reasonable factual basis for the testimony, the testimony must be based on reliable methods and the testimony must be relevant to the facts at issue. *Kemp, at 2.* An expert's opinion must be excluded "only if it 'is so fundamentally unsupported that it can offer no assistance to the jury." *Archer Daniels Midland Co. v. Aon Risk Services, Inc.*, 356 F.3d 850, 858 (8th Cir. 2004) citation omitted. Under this criteria, Mr. Campbell's opinions regarding the water soluble film should be allowed.

Mr. Campbell is qualified to opine regarding the performance of the water soluble film at Promenade. He has many years of experience investigating, researching, writing and teaching about water leaks and waterproofing. He is currently the head of the waterproofing department at Inspec. *Ex. I to Weis' memo in opposition to CETCO's motions in limine, Campbell depo, pg. 7.* In that position, Mr. Campbell designs waterproofing projects from start to finish and investigates leaks. *Id. at. pg. 22.* Currently, about 40 percent of his work involves investigation of below ground water infiltration. *Id.* Prior to this project, he investigated a couple of dozen below grade waterproofing projects where the waterproofing was installed on a precast deck. *Id. at pg. 31.*

Prior to working at Inspec, he worked for 11 years at Brent Anderson Associates (a waterproofing and roofing contracting company). *Id. at pgs. 10, 15-16.* At Brent Anderson, he performed waterproofing consulting and he investigated waterproofing leaks. *Id. at 17-19.*

During that time he investigated Swelltite products. *Id. at pg. 19-20.* Also, in 1997 he joined the American Society for Testing and Materials and he has published materials and given presentations regarding investigation of plaza water infiltration, waterproofing and subsurface water management, waterproofing techniques and products. *Id. at 11-12 and Ex. J to Weis' memo in opposition to CETCO's motions in limine, Campbell CV.* Prior to this case, he had never served as an expert witness.

Campbell also has a reasonable basis for his opinions and his methods are reliable. To begin with, Campbell's prior experience investigating, researching, teaching and writing about waterproofing systems and leak investigation provide him a reliable basis from which to operate. This basis is bolstered by the investigation he performed on this project. He made twenty test openings on site and evaluated the conditions exposed in each. According to Mr. Campbell, he conducted an investigation at Promenade that was the same type of investigation he would perform in any similar situation. *Ex. I to Weis' memo in opposition to CETCO's motions in limine, Campbell depo, pg. 34.* He added that "There's nothing more I could've done that would have resulted in a more complete assessment of the infiltration situation." *Id.*

In addition, during his investigation, he discovered, at four of the openings, that the water soluble film did not dissolve when it came into contact with water. Since the water soluble film is marketed as a product that will dissolve when it comes into contact with water, the fact that it did not dissolve at four separate locations provides reasonable grounds for Campbell to opine that the film is defective. While Chris Craft now argues that there is no evidence that enough water came into contact with the film, there is no indication anywhere that a specific amount of water must reach the film before it dissolves. The product literature states that the film dissolves on contact

with water. It did not do so here, and therefore, it is defective.

There is no case law or evidence to suggest that Campbell's observation of the failed film is an inadequate method on which to base expert testimony. Mr. Campbell investigated the site and discovered problems with the product at issue. There was no need to test because the test had already been done. The film was exposed to water and it did not dissolve.

Mr. Campbell's opinions regarding the film relate to this matter as the failure of the film led to water leaks. Mr. Campbell observed water on the concrete deck at the locations where the film did not dissolve. CETCO represents that the film must dissolve so that the bentonite can prevent water from moving laterally under the waterproofing and CETCO acknowledges that water moves along and through the decks at Promenade (*see CETCO memo for SJ, pg. 24*). Therefore, because water is present on the deck and the bentonite is not able to reach it because the film did not dissolve, the failure of the film to dissolve allows water to move along and through the deck. Consequently, the water will eventually pass through the porous deck or move to a place where it can exit the deck, i.e. a keyway joint, and enter a garage. It is undisputed that there were leaks in the garages. Hence, the failure of the film caused leaks at the site and the evidence relates to the facts at issue.

Chris Craft may be critical of Campbell's opinion that the water will move laterally. However, the evidence and basic engineering principles indicate that it will. The water is going to try and find its way to the lowest point. Therefore, it is going to move until it reaches that location. Since the film did not dissolve (and it was specifically intended to stop lateral movement of the water) and water was discovered below the film on the concrete planks, it is only reasonable to conclude that the water will move laterally searching for an exit point. The

evidence of leaks throughout the garages shows that the water did just that. It is not necessary to test this theory. It is based on general principles and the evidence shows that it occurred

Simply because Mr. Campbell was not an expert on Chris Craft's film prior to this matter does not prevent him from investigating and making an expert opinion regarding the conditions he observed. He is knowledgeable in waterproofing and leak investigation. With that background he is capable of learning about the products at issue and opining on them.

It was not necessary for Campbell to rule out all other problems to state that the film was defective. He observed, first hand, that the film did not dissolve. The evidence is clear that the water soluble film did not do its job. Further, regardless of where the water infiltration started, it was the job of the waterproofing to keep it out of the building. The bentonite is supposed to prevent water that gets past the waterproofing from entering the building. It did not do that. There was water underneath the waterproofing that the bentonite could not reach because the film did not dissolve.

Chris Craft argues that the presence of two inches of water throughout the site indicates that the seams and system are operating. However, it is established that there is not always two inches of water. *See Ex. T to Weis memo in opposition to CETCO's motion for SJ, Vanderberg depo, pg. 61.* Since the water is not going to drain through the drains – they will automatically keep two inches of water from draining because of the location of the drain holes – the discovery of dry areas of the deck indicates that water infiltrated through the waterproofing and the film was not doing its job.

Since Campbell is qualified to investigate and opine regarding the waterproofing system and his opinions are based on an experienced and reliable background, reliable methodology, first-

hand observations and straightforward conclusions, there is no basis for the exclusion of his opinions regarding the so-called water soluble film. Chris Craft's motion should be denied.

### A. Campbell's opinions are not unfairly prejudicial and they will not confuse the jury.

Campbell's evidence is reliable and relevant. Simply because it cuts against Chris Craft does not mean that it is unfairly prejudicial. *Wade v. Haynes*, 663 F.2d 778, 783 (8th Cir. 1981). The standard for excluding evidence under Rule 403 is that the probative value is substantially outweighed by the danger of unfair prejudice – i.e., that the evidence will tend to cause the case to be decided on improper grounds. *Ritt v. Dingle*, 2001 U.S. Dist. LEXIS 15220, *31-32 (D. Minn. 2001). The Campbell evidence simply relays what he observed and the opinions that he developed from his observations - the kind of expert opinion evidence that is appropriate at trial and that should be introduced.

Further, Campbell's knowledge regarding waterproofing, leaks and leak investigations will assist the jury with regard to the cause of leaks and how the water infiltrated on site.

## II. Mr. Koziol and Mr. Chauvin also provide reasonable and reliable analysis of the waterproofing system and their opinions should be allowed as well.

There is no basis for excluding the waterproofing-related opinions of Koziol and Chauvin. Their opinions are reliable and based on sound methodology.

Like Campbell, Mr. Koziol is very experienced in water infiltration investigations. Koziol has been with WJE since 1982 and has been involved in more than 300 investigations of water leakage in roofs, plazas, foundations, and masonry walls. *See Ex. K to Weis memo opposing CETCO's motion in limine, Koziol qualifications.* He has been responsible for the solutions and repairs to many of the alleged problems. He also provides consulting to architects on

waterproofing designs. *Id.*

While Mr. Chauvin is not as experienced as Koziol and Campbell, he has his share of experience as well. He has worked at WJE for five years and has performed hundreds of water leak investigations involving waterproofing systems. *See Ex. N to Weis memo opposing CETCO's motion in limine, Chauvin qualifications.*

Further, Mr. Chauvin and Mr. Koziol worked together to investigate the site. They attended the site inspections and analyzed documents related to the site. As a result, Mr. Koziol and Mr. Chauvin are qualified to opine regarding the waterproofing system at issue.

In addition, the methodology that they used is reliable. Mr. Chauvin and Mr. Koziol analyzed a number of the documents regarding the property, they attended two site inspections and Chauvin contacted a number of people throughout the many WJE offices to learn about the Swelltite 3000 products. *See Ex. M to Weis memo opposing CETCO's motions in limine, Chauvin Depo, pgs. 40-64.* During the inspections, Chauvin and Koziol walked the site, went into units and garages, and inspected the exterior of the buildings and a number of test openings. *See Ex. Z to Weis memo opposing CETCO's motion for SJ , WJE report.* The test openings showed the waterproofing and drain systems. As part of their investigation, Mr. Chauvin discovered film that did not dissolve despite the fact that the bentonite it was covering activated. *See Ex. Q to Weis memo opposing CETCO's motions in limine, Site report 4.* This indicate that the film failed because the water that caused the bentonite to activate should have caused the film to dissolve as well. In reaching its findings, WJE relied on the documentation it reviewed, Campbell's and others' reports, the National Roofing Council manual and its observations on site. *See Ex. Z to Weis memo opposing CETCO's motion for SJ , WJE report.* Simply because they

relied in part on Campbell's analysis and other materials in addition to the site investigations does not render their analysis unreliable. To begin with, Campbell's analysis is well-founded. Also, it is common for parties performing investigations such as this to rely on the work that has preceded their own and the courts allow for such analysis. Also, while Campbell's analysis was part of Chauvin's and Koziol's analysis, it was only a part. Chauvin and Koziol also investigated the site, reviewed separate test openings, analyzed documents and utilized their own knowledge and background of waterproofing systems, the products at issue and water leaks.

There is nothing to show that Chauvin's and Koziol's analysis is based on something other than "good science" and therefore their opinions should be allowed.

The testimony that Chris Craft relies on to state that WJE did nothing on its own is not persuasive. Chauvin and Koziol report that their opinions stem from the review of the background materials, the site investigation and the Campbell report. And, presented as a whole, the WJE report reflects that the statements in the report are the result of Chauvin's and Koziol's analysis of the site. *See Ex. Z to Weis memo opposing CETCO's motion for SJ , WJE report.*

Further, there is no basis to the statement that Mr. Koziol and Mr. Chauvin do not have an independent basis for alleging any type of defect in the film. Mr. Chauvin discovered problems with the film at one of the test openings. *Ex. Q to Weis memo opposing CETCO's motion in limine, Site report 4.* Also, based on WJE's and Mr. Koziol's prior experience with Swelltite 3000, Koziol and Chauvin are knowledgeable of the defects in the product. Chauvin and Koziol have well-founded criticism of the system and the evidence should not be excluded.

**A. Jon Camaya**

The opinions of Jon Camaya regarding the waterproofing and film should also be allowed. GID retained Jon Camaya to investigate the project. Mr. Camaya works for Israel Berger and Associates ("IBA"). IBA provides a number of construction related services concerning waterproofing work. *Ex. P to Weis memo opposing CETCO's motion in limine, Camaya depo, pgs. 200-01.* In particular, IBA works with architects on waterproofing designs and it performs failure investigations. *Id. at pgs. 201-02.* Mr. Camaya monitors the installation of waterproofing materials, assists with the design of waterproofing systems and investigates alleged waterproofing failures. *Id. at pgs. 203-06.* His work includes the investigation of dirt-covered plazas over a useable space where the objective is to keep water out of the space. *Id. at. pg. 204.* Prior to working for IBA, Mr. Camaya performed leak investigations and participated in new designs within the waterproofing division of a company known as Prisco & Edwards (architectural design firm). *Id. at pgs. 211 and 213.* He is also a member of the Roofing Consultants Institute, an organization that promotes the education of architects and engineers and the construction industry regarding roofing and waterproofing. *Id. at pg. 229.* Further, Mr. Camaya reads periodicals regarding waterproofing and IBA maintains a library of information regarding waterproofing product information. *Id. at pgs. 229-32.*

Mr. Camaya's task at Promenade was to verify existing conditions of the below grade waterproofing in the courtyards. *Id. at pg. 235.* He was charged with performing his own investigation and coming up with his own conclusions. *Id. at pgs. 237-38.* Mr. Camaya visited the site and investigated the units, the garages and test openings. *Id. at pg. 31.* In the test openings, Camaya observed a drain, a courtyard post and the waterproofing materials. *Id. at pgs. 35-36.* He also reviewed Campbell's materials and a copy of the drawings. *Id. at pgs. 25-28.*

Like Campbell, Koziol and Chauvin, Camaya's opinions regarding the waterproofing and film are reliable and should be admitted. He is qualified to perform a waterproofing/leak investigation, he investigated the site and is capable of making conclusions based on his observations. While he did not observe defects in the system first-hand, it is appropriate for him to rely on the investigation done before him. Further, in making his conclusions he relied on his own experience regarding bentonite waterproofing systems and leak investigations.

**III. The evidence of defects in Chris Craft's water soluble film at other sites concern substantially similar circumstances to the circumstances at issue here. Therefore, the evidence regarding the other instances of defective film should not be excluded in this matter**.

Evidence of prior accidents may be admitted to prove notice on the part of the defendant where the evidence is sufficiently similar in time, place, or circumstances. *First Security Bank v. Union Pacific Railroad Co.*, 152 F.3d 877, 879 (8th Cir. 1998) citation omitted. Under Rule 401, evidence of similar occurrences "might be relevant to the defendant's notice, magnitude of the danger involved, the defendant's ability to correct a known defect, the lack of safety for intended uses, *** the standard of care, and causation." *Kehm v. The Procter & Gamble Man. Co.*, 724 F.2d 613, 625 (8th Cir. 1983).

During the course of discovery, other instances where Chris Craft's film was defective or caused problems came to light and they concerned circumstances substantially similar to those at issue here. In particular, there were allegations of defects in the film at the Medical College of Ohio. The following sets forth the similarities between the circumstances at that project and the Promenade project thereby illustrating that the evidence regarding the Medical College should be included in this case. While there are different conditions at the Medical College than exist at

Promenade, it must be recognized that Chris Craft does not place any limitations on the abilities of its product to function provided that it is used in a way that is acceptable to Chris Craft. In other words, as long as it is used on a project that is of the sort where the product can be used, the ability of the product to operate is not impacted by the project itself. Therefore, while the construction projects are not identical, the general conditions in which the film is used are substantially similar, and the purpose of the film on the projects are the same.

**A. Medical College of Ohio**

At the Medical College, Swelltite 3000 was installed over a sub-basement. *Ex. A to Weis memo opposing CETCO's motion in limine, Carpenter depo, pg. 72.* The Poggemeyer Design Group and Simpson Gumpertz & Heger, Inc., investigated the site and determined that the water-soluble film, which was to "completely dissolve on hydration" did not dissolve in the presence of water and was found in tact. *Ex. F to Weis memo opposing CETCO motion in limine, Medical College materials.* SGH reported that the film became "cross-linked, causing it to not dissolve when wet." *Ex. B to Weis memo opposing CETCO's motions in limine, Medical College materials.* The Medical College even sent to CETCO a piece of the water soluble film from the site and CETCO tested it in water and the film did not dissolve. *Ex. A to Weis memo opposing CETCO motion in limine, Carpenter depo, pg. 73.* According to Patrick Carpenter, the results of the test surprised him because he expected the film to dissolve. *Id.*

Here, the issue regarding the water soluble film is failure to dissolve when it comes into contact with water. The fact that it did not dissolve on another project places Chris Craft on notice that its product is defective and that it should take steps to make sure it will function appropriately. As a result, the evidence of the defective product should be allowed here.

Chris Craft may argue that there is no proof that it manufactured the film used on the Swelltite installed at the Medical College. There is no merit to this position. It is well established that CETCO used Chris Craft's at the time of the Medical College project and years before that project. *See Weis memo opposing Chris Craft's motion for SJ, pgs. 4-6.*

**CONCLUSION**

Chris Craft's motions should be denied. Campbell, Chauvin, Koziol and Camaya are qualified to offer opinions in this case and the opinions are based on good science and are reliable. Further, evidence of another similar incident involving Chris Craft's film should be allowed as the circumstances of that incident are substantially similar to the circumstances at issue here and they show that Chris Craft had notice of the problems with its product.

As a result, Weis Builders respectfully requests that the court deny Chris Craft's motions.

Dated: __September 17, 2004

s/ Chad J. Stepan
Michael D. Hutchens # 167812
Chad J. Stepan. #0279535
Meagher & Geer, P.L.L.P.
4200 Multifoods Tower
33 South Sixth Street
Minneapolis, MN 55402
(612) 338-0661

and

Dean B. Thomson, #141045
Jocelyn L. Knoll, #22988X
Fabyanske Westra & Hart, P.A.
800 LaSalle Avenue, Suite 1900
Minneapolis, MN 55402

***Attorneys for Defendant and***
***Third-Party Plaintiff Weis Builders, Inc.***

/1164514