UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Westfield Insurance Company,<br><br>Plaintiff,<br>vs.<br><br>Weis Builders, Inc., Healey Ramme Co., sued as Healey Ramme Company, CNA Insurance Companies, sued as CNA Insurance Company, Promenade Village Townhomes, L.L.C., and Valley Forge Insurance Company, one of the CNA Companies,<br><br>Defendants,<br>and<br><br>Weis Builders, Inc.,<br><br>Third Party Plaintiff,<br>vs.<br><br>Waterproofing By Experts, Inc., and BRW Elness Architects, Inc., n/k/a Elness Swenson Graham Architects, Inc., Colloid Environmental Technologies Co., and J-Berd Mechanical Contractors, Inc.,<br><br>Third Party Defendants,<br><br>and<br><br>Colloid Environmental Technologies Co.,<br><br>Third-Party Defendant and Fourth-Party Plaintiff,<br>v.<br><br>Chris Craft Industrial Products, Inc.,<br><br>Fourth-Party Defendant, | Civil File No. 00-CV-987 JNE/JSM<br><br>**WEIS BUILDERS' MEMORANDUM OF LAW IN OPPOSITION TO J-BERD'S MOTIONS IN LIMINE** |

and

J-Berd Mechanical Contractors, Inc.,

Fourth-Party Plaintiff,

v.

Mikesh, Inc.,

Fourth-Party Defendant.

---

Weis does not dispute J-Berd's position that there is not always two inches of standing water on the deck. However, the evidence is clear that the drain configuration causes the water that does remain on the deck. Therefore, J-Berd's motion to exclude evidence showing that the drain configuration causes the water to stand on the deck should be denied.

With regard to J-Berd's motion to exclude certain opinions of Schuh, the motion should be denied. Schuh is qualified to opine regarding the subject matter at issue and the opinions that J-Berd wants to exclude are reliable and relevant to the case.

**I. J-Berd acknowledges that the drain it selected causes water to stand on the deck. Therefore, there is no basis to a motion seeking to exclude evidence showing that the drain causes the water to remain on the deck.**[1]

According to Mr. Filek and Mr. Blaskowski of J-Berd, Mr. Blaskowski was in charge of finding the replacement drain to be installed in the deck. *Ex. H to Weis' memo opposing J-Berd's motion for SJ, Blaskowski depo, pg. 39, lines 4-6 and Ex. G to Weis' memo opposing J-Berd's motion for SJ, Filek depo, pg. 94, lines 5-8.* Mr. Blaskowski contacted a distributor and asked the distributor to find a drain that worked for this application. *Ex. H to Weis' memo opposing J-*

1 Much of the background and supporting information for this memo was previously provided to the court in Weis' memo in opposition to J-Berd's motion for summary judgment. Therefore, Weis incorporates the facts and arguments

*Berd's motion for SJ, Blaskowski depo, pgs. 29-30.* Mr. Blaskowski explained to the distributor the details relevant to the drain assembly. *Id.* J-Berd also worked with Zurn to try and find a replacement drain. *Ex. G to Weis' memo opposing J-Berd's motion for SJ, Filek depo, pg. 105-06, lines 22-25 and 1.* Ultimately, the distributor recommended to J-Berd the Sioux Chief, Fat Max drain. *Ex. H to Weis memo opposing J-Berd's motion for SJ, Blaskowski depo, pgs 31-32.* Curt Johnson of J-Berd testified that Mr. Blaskowski made the decision to use that drain and that Mr. Blaskowski had the authority to make such a decision. *Ex. I to Weis' memo opposing J-Berd's motion for SJ, Johnson depo, pg. 64, lines 8-14.* Mr. Blaskowski, Mr. Filek and Dave Berdan (J-Berd co-owner) determined that the Fat Max drain would work for the application at issue. *Ex. H to Weis' memo opposing J-Berd's motion for SJ, Blaskowski depo, pgs. 42-43, lines 24-25, 1-8*

The Fat Max drain has a socket that is one to two inches deep and that socket, which is the joint where the vertical riser connects to the drain (*Ex. G to Weis' memo opposing J-Berd's motion for SJ, Filek depo, pgs. 217-18, lines 22-25, 1-8*), per plumbing code, must be a solid joint. *Id. at pg. 174, lines 9-13.* As a result, the perforations placed in the vertical riser that connected to the Fat Max could not penetrate the socket and one to two inches of water would be left undrained on the deck. *Id. at lines 9-18.* J-Berd did not know whether the holes in the precast deck could be drilled to allow the Fat Max to be recessed into the deck so that the perforations would be flush with the top of the deck. *Ex. G to Weis' memo opposing J-Berd's motion for SJ, Filek depo, pg. 236, lines 7-18.* J-Berd decided not to do such work because it did not know whether it could be done and it made the assumption that the waterproofer would not

---

from that memo and will not repeat them here

be able to install the waterproofing at the drain if the holes were modified. *Id. at pgs. 236, lines 14-18.* J-Berd did not consult with anyone to determine whether the waterproofing could be installed if the drains were recessed into the deck. *Id. at lines 19-24.* Mr. Filek also testified that, despite instruction from Weis to the subcontractors that the subcontractors coordinate with each other on a daily basis, J-Berd did not communicate with the waterproofer regarding the installation of the drains or the installation of the waterproofing at the drains. *Id. at pgs. 312-314, lines 25, 1-25, 1-2.*

Mr. Filek testified that during the installation of the drain system, J-Berd knew that the bottom two inches of water could not be drained from the courtyards. *Ex. G to Weis' memo opposing J-Berd's motion for SJ, Filek depo, pgs. 103-04, lines 22-25, 1-3.*

J-Berd acknowledges that the drain configuration allows water to stand on the deck. That the drains do not get rid of the water is supported by the observations made at the site during repairs and investigation of the courtyards. *See J-Berd's memo, pgs. 5-8.* Consequently, there is no basis for excluding any evidence indicating that the drain configuration allows water to go undrained because the evidence shows that the drains, because of their configuration, do not drain all the water from the decks and J-Berd not only acknowledges as much but it expected such conditions to exist

---

**II. The evidence shows that J-Berd's work resulted in leaks and other damages at the site. Therefore, the opinions of Schuh that are at issue in this motion are relevant and should be allowed.**

Promenade is seeking damages for, among other things, leaks and heaving sidewalks and concrete. Mr. Schuh testified that the water standing on the deck caused the sidewalks and

concrete in the plazas to heave. *See Weis' memo opposing J-Berd's motion for SJ, pgs. 16-22.* Since the two-inches of water resulted in the sidewalks heaving and cracking and J-Berd's work caused the two inches of water, J-Berd is liable for alleged damages and Schuh's opinions regarding the drain system are relevant to this case.

Further, the testimony is unanimous that it is not good practice to allow two inches of water to remain on the waterproofing and precast decks. *See Weis' memo opposing J-Berd's motion for SJ, pgs. 16-22.* J-Berd's own expert, Sid Bhatt, questioned the ability of the waterproofing to withstand the standing water. Mr. Campbell reported that the standing water could result in failures of the waterproofing, water infiltration, structural problems and premature degradation of materials. Mr. Koziol also testified that the water could result in freezing problems and saturation of soil.

Also, Promenade claims that leaks occurred at the buildings because water entered from the surface level. Mr. Schuh testified that the design of the drain system allows water to pond in the courtyards adjacent to the buildings. Mr. Koziol reported the same. In light of the ponding and the alleged leaks at the surface level, it is only reasonable to conclude that the presence of the ponding water contributed to the alleged leaks. *See Weis' memo opposing J-Berd's motion for SJ, pgs. 16-22.* Since the drain system caused and/or contributed to the alleged leaks, Mr. Schuh's testimony regarding the drain system is relevant.

In addition, even though repairs to other areas have significantly eliminated leaks while there have not been repairs to the drains, the testimony is that leaks continue to exist. The ponding water, the inability to drain all of the water, the repairs elsewhere and the continuing

leaks indicate that the drain assembly and drains caused alleged damages. Again, Mr. Schuh's opinions are relevant and should not be excluded.

Mr. Schuh's opinions regarding the drain system will not confuse the jury or be unfairly prejudicial to J-Berd. While this case is complicated, Mr. Schuh offers opinions regarding the courtyards and the impact that the drain system has on the courtyards. In other words, he opines regarding causation and the source of damages. According to J-Berd, that is the "heart of the case" and therefore, by J-Berd's own terms, Schuh's opinions are relevant and necessary to explain the case. Therefore, the opinions should not be excluded.

**III. The opinions from Schuh that are at issue in J-Berd's motion are reliable and should be allowed.**

J-Berd overstates the rigidity of the requirements for allowing expert testimony in this matter. The commentary to rule 702 states that "The intent of the Rule is to liberalize the admissibility standards for expert testimony." *Fed. R. Evid. 702, commentary*. The *Daubert* court explained that rigid requirements for expert testimony are at odds with the "liberal thrust" of the Federal Rules and their "general approach of relaxing the traditional barriers to 'opinion' testimony." *Daubert*, 509 U.S. at 588. Experts are permitted wide latitude to offer opinions, including those not based on firsthand knowledge or observation. *Daubert*, 509 U.S. at 592; see also *Bass v. Spitz*, 522 F.Supp. 1343 (ED Mich. 1981)(holding that experts may offer opinions based in part from factual assumptions not derived from their expertise) and *Spearman Indus. v. St. Paul Fire & Marine Ins. Co.*, 128 F.Supp.2d 1148 (ND Ill 2001)(holding that expert will be allowed to testify regarding his opinions about cause of roof damage where he has formed opinions based on his experience with roofs in general and his inspection of the roof in question

because rejection of expert testimony is the exception rather than the rule and cross examination, presentation of contrary evidence and careful instruction are the traditional and more appropriate means of attacking shaky but admissible evidence). The expert does not need to have encyclopedic knowledge of the subject matter. *Ellis v. K-Lan Co.*, 695 F.2d 157 (5th Cir. 1983). The "trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system." *United States v. 14.38 Acres of Land Situated in Leflore County Mississippi*, 80 F.3d 1074, 1078 (5th Cir. 1996). Indeed, the court in *Daubert* affirmed that the appropriate way to deal with expert evidence is through cross examination; "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 595.

Further, the *Daubert* court concluded that "the Rules of Evidence – especially Rule 702 – do assign to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert*, 509 U.S. at 597. And, proponents of the expert testimony do not have to demonstrate to the judge by a preponderance of the evidence that the assessment of the expert are correct, they only have to show by a preponderance of the evidence that their opinions are reliable and reliability is a lower requirement than the merits standard of correctness. *In re Paoli*, 35 F.3d at 714.

In addition, while *Daubert* sets forth criteria that the courts can use to determine whether expert testimony is reliable, the criteria are not exclusive nor strictly enforced; "Of course, the *Daubert* reliability factors should only be relied on to the extent that they are relevant…and the district court must customize its inquiry to fit the facts of each particular case." *Jaurequi v.*

*Carter Manufacturing Co., Inc.*, 173 F.3d 1076, 1083 (8th Cir. 1999). Among the other factors that can be considered are whether the experts are proposing to testify about matters growing naturally and directly out of research they have conducted independent of the litigation, the independence of the investigator and his staff, and the presence of methods and practices contrary to "good science." *Black v. Rhone-Poulenc, Inc.*, 19 F.Supp. 2d 592, 597 (D. WV. 1998) and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 43 F.3d 1311 (9th Cir.), cert. Denied 516 U.S. 869 (1995). If the expert testifies based on research independent of the litigation, this "provides important, objective proof that the research comports with the dictates of good science." *Benedi v. McNeil-P.P.C., Inc.*, 66 F.3d 1378 (4th Cir. 1995)(holding that if the methodology is good enough for the real world it is good enough for a trial). Also, the focus is on the principles and methodology, not on the conclusions generated. *Daubert*, 509 U.S. at 595. If the Daubert framework were extended outside the realm of scientific testimony, "many types of relevant and reliable expert testimony – that derived substantially from practical experience – would be excluded." *United States v. Jones*, 107 F.3d 1147 (6th Cir. 1997). The courts have also held that experts can draw conclusions from observations based on extensive and specialized experience. *Kumho Tire Co.*, 119 S.Ct. at 1178.; *see also Hartzler v. Wiley*, 277 F.Supp.2d 1114 (DC Kan 2003)(holding that witness was properly qualified as expert in action against builder and builder's company relating to construction of home because witness had three decades of experience as construction manager, had published articles on construction industry and had given presentations on construction industry).

In the end, to assist the trier of fact, which is the requirement of rule 702, the witness must be qualified, have a reasonable factual basis for the testimony, the testimony must be based on

reliable methods and the testimony must be relevant to the facts at issue. *Kemp, at 2.* An expert's opinion must be excluded "only if it 'is so fundamentally unsupported that it can offer no assistance to the jury." *Archer Daniels Midland Co. v. Aon Risk Services, Inc.*, 356 F.3d 850, 858 (8th Cir. 2004) citation omitted. Under this criteria, the opinions of Mr. Schuh at issue in this motion should be allowed.

J-Berd does not question Mr. Schuh's qualifications. Rather it focuses on his methodology. Schuh has a reasonable basis for his opinions and his methods are reliable. To begin with, Schuh's prior experience provides him a reliable basis from which to operate. He is experienced in drainage evaluations and currently directs drainage studies for Patrick Engineering. *Ex. A, Schuh CV.* This basis is bolstered by the investigation he performed on this project. He made site visits wherein he took measurements of the site, performed geological and hydrological testing, a test opening at a courtyard drain and analyzed materials related to the project. *Ex. B, Patrick Engineering report.* J-Berd does not present any evidence indicating that the approach that Mr. Schuh used was inadequate or contrary to work in his field. It simply argues that it was not sufficient. There is no basis to the argument. Mr. Schuh performed a detailed investigation and there is nothing to indicate that his methodology was in error. Mr. Schuh did not have to run tests of everything he observed. The reliability of his information can be and is established through his background, his investigation of the site and the conditions observed and reported over time at the site.

J-Berd is also critical of the manner in which Mr. Schuh analyzed the data he gathered. Despite its criticisms, however, J-Berd does not present an alternative or more appropriate way to analyze the site. Simply because J-Berd disagrees with the approach or does not like the results

of the analysis does not mean that the methodology is inappropriate. Also, Mr. Schuh testified that his work met the standards in the industry and J-Berd does not have any evidence to suggest otherwise.

J-Berd's attack on Mr. Schuh's opinions regarding heaving of the concrete and sidewalks is also without merit. It is not necessary that an expert witness have first-hand knowledge of the events on which he is reporting. The court's have held that expert opinions are admissible where they are based on the expert's experience and the analysis of materials from others that relate to the issue at hand. Here, the evidence shows that water often stays on the courtyard decks and that cracking and heaving of the sidewalks above occurs. Based on his experience, Mr. Schuh can take that information and opine that the water ponding on the decks caused or contributed to the heaving. He does not have to observe the heaving or perform a test to verify it. His own experience with these types of conditions and the evidence he gathered from the site are sufficient for his opinion to be entered into this case.

**CONCLUSION**

Evidence regarding the drain configuration and the fact that it causes water to go undrained and remain on the deck is reliable and should not be excluded. J-Berd acknowledges that the drain configuration prevents the drains from draining all the water on the decks and J-Berd personnel testified that they expected this condition to exist. Therefore, J-Berd's motion regarding the drain configuration should be denied.

Also, J-Berd does not provide any basis for excluding the specified opinions from Mr. Schuh. He is qualified to make the opinions, his methodology is reliable and the opinions relate to the facts of the case. Therefore, J-Berd's motion regarding certain opinions of Mr. Schuh should

be denied.

Based on the aforementioned, Weis respectfully requests that the court deny J-Berd's motions in limine.

Dated: __September 17, 2004

_____s/ Chad J. Stepan___________
Michael D. Hutchens # 167812
Chad J. Stepan. #0279535
Meagher & Geer, P.L.L.P.
4200 Multifoods Tower
33 South Sixth Street
Minneapolis, MN 55402
(612) 338-0661

and

Dean B. Thomson, #141045
Jocelyn L. Knoll, #22988X
Fabyanske Westra & Hart, P.A.
800 LaSalle Avenue, Suite 1900
Minneapolis, MN 55402

***Attorneys for Defendant and***
***Third-Party Plaintiff Weis Builders, Inc.***

/1164548