UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Westfield Insurance Company,

Plaintiff,

vs.

Weis Builders, Inc., Healey Ramme Co., sued as Healey Ramme Company, CNA Insurance Companies, sued as CNA Insurance Company, Promenade Village Townhomes, L.L.C., and Valley Forge Insurance Company, one of the CNA Companies,

Defendants,

and

Weis Builders, Inc.,

Third Party Plaintiff,

vs.

Waterproofing By Experts, Inc., and BRW Elness Architects, Inc., n/k/a Elness Swenson Graham Architects, Inc., Colloid Environmental Technologies Co., and J-Berd Mechanical Contractors, Inc.,

Third Party Defendants,

and

Colloid Environmental Technologies Co.,

Third-Party Defendant and Fourth-Party Plaintiff,

v.

Chris Craft Industrial Products, Inc.,

Fourth-Party Defendant,

Civil File No. 00-CV-987 JNE/JSM

**WEIS BUILDERS' MEMORANDUM OF LAW IN OPPOSITION TO WATERPOOFING BY EXPERTS' MOTION IN LIMINE SEEKING THE COURT'S INTERPRETATION OF THE WBE SUBCONTRACT**

and

J-Berd Mechanical Contractors, Inc.,

Fourth-Party Plaintiff,

v.

Mikesh, Inc.,

Fourth-Party Defendant.

---

WBE's attempt to limit its responsibilities under the subcontract is without merit and should be denied. There is conflicting testimony about the meaning of 'design-build' and, therefore, the meaning of that term should be determined by the jury. Further, in agreeing to the subcontract, WBE took on several obligations for this project, including all waterproofing-related duties that Weis took on in its contract with the owner. Also, there are no terms in the Weis/WBE subcontract that limit WBE's liability for damages. Therefore, WBE is not only liable for those damages that it expressly assumed in Exhibit F of the subcontract but also for all other damages that are attributable to WBE through the subcontract and applicable law.

**I. WBE inaccurately describes the scope of its contractual undertaking**.

WBE does not provide the Court with a complete copy of the Weis/WBE subcontract, much less a complete copy of Exhibit F to that agreement. The WBE subcontract with Weis expressly incorporates the Contract Documents, including without limitation, Specification Section 7100 (which includes its subsection 7110) dealing with waterproofing of the entire project <u>and</u> Drawing A5.1. *See Exs. B, WBE/Weis subcontract, and O, Ex. A to WBE/Weis subcontract, to Weis' motion for summary judgment against WBE.* Drawing A5.1 expressly states in regard to the courtyard wall

system: "Waterproofing & insulation system, design & installation by general contractor." *Ex. G, drawing A5.1*

Also, paragraph 11 of the Weis/WBE Subcontract "flows down" all the waterproofing obligations of the general contractor (Weis) to its subcontractor (WBE). Specifically, Paragraph 11 provides that:

> The Subcontractor agrees as follows: To be bound to the Contractor by the terms of the General Contract, to conform to and to comply with the provisions of the General Contract, to furnish such shop drawings or samples as may be required, and to assume toward the Contractor all the obligations and responsibilities that the Contractor assumes in and by the General Contract toward the Owner, insofar as they are applicable to this Subcontract.

*See Ex. B, WBE/Weis subcontract to Weis' motion for summary judgment against WBE.* The Subcontract also defines the General Contract as including the Specifications and Drawings such as Drawing A5.1. *Id.* Therefore, the obligation of Weis stated in Drawing A5.1 flows down to WBE. As a result, WBE contractually agreed to undertake any and all of Weis' responsibility regarding "Waterproofing & insulation system design and installation."

Weis' transfer and delegation of its "design and installation" responsibility explains and informs the language in Exhibit F to the Weis/WBE subcontract. This is why Weis incorporated the specific Drawing and Specification Section at issue. Because Weis intended for WBE to assume whatever waterproofing responsibilities Weis' had, Weis included the following clear statements in the Subcontract:

> "This contract is for a design-build waterproofing system for the plaza areas."
>
> "This subcontractor is completely responsible for providing and maintaining a water-tight system."
>
> "This subcontract includes, but [is] not limited to the following"

> "-includes waterproofing all details (joints, anchors, etc.) per manufacturer recommendations"
>
> "-includes monitoring the backfill operations to insure there is no penetration of system"
>
> "-Includes all deck preparation"
>
> "-Includes all water conditions"
>
> "-Waterproofing by Experts to be responsible for any damages caused to interior of building due to failure of waterproofing system."

*Id.* Most notably, the parties confirmed their understanding that WBE assumed whatever design-build responsibility Weis had to the Owner by *handwriting and initialing* on Exhibit F the following:

> It is noted that this is a design build contract and all incidental[s] for the scope of work are included in this sub-contract. Sub-contractor is to be 100% responsible for design criteria.

*Id.*

The contractual intent between Weis and WBE could not be more clear. WBE has assumed whatever design-build responsibilities that Weis had to the Owner regarding the waterproofing system. Therefore, WBE's motion to limit its duties under the subcontract should be denied.

**A. <u>The subcontract also included, among other things, waterproofing the endwalls and links of the buildings and it does not contain any provisions limiting WBE's liability in this matter</u>.**

The courtyards are basically tubs, meaning that there are typically walls on all four-sides. WBE was responsible for waterproofing the walls on the ends as well as the side walls and deck. That WBE was responsible for this work is shown by the fact that it performed the work during the project and did not ask for additional payment to perform it – i.e., WBE did not view it as extra work. In other words, WBE believed that the work fell under the requirements of the contract.

Similarly, WBE was responsible for waterproofing the link between buildings 1and 2 and the link between buildings 4 and 5. As with the endwalls, WBE performed this work on the project and

did not seek additional payment for the work.

Also, WBE's attempt to limit its liability to damages to the interior of the buildings is not persuasive. To begin with, Exhibit F specifically established that WBE is liable for damages and costs to repair the waterproofing and that it was responsible for providing a warranty from the manufacturer for each building. Exhibit F plainly promises that WBE "is completely responsible for providing and maintaining a water-tight system." Further, the contract does not contain any language limiting WBE's liability and Exhibit F expansively provides that the subcontract "includes *but [is] not limited* to" many listed obligations. In short, there is no language in the subcontract limiting WBE's liability; instead, WBE expressly assumes broad liability in the subcontract. Therefore, WBE is responsible for damages that result from its negligence, breach of contract, breach of express and implied warranties, and any other wrongful conduct that it performed in relation to the project. Moreover, WBE is liable to Weis under WBE's duties to defend and indemnify Weis, as set forth in the court's summary judgment order.

WBE's attempt to limit its contractual obligations is without merit and unsupported by the Weis/WBE subcontract. WBE's motion seeking its proposed interpretation of the contract should be denied.

## II. WBE claims that the term "design-build" is undefined and should be interpreted to have the most limited and circumscribed meaning possible.

WBE's argument is a non sequitur. If the term 'design-build' is undefined, or the definition not agreed to by the parties, then oral testimony is needed to explain what the parties intended by the term. WBE contends that any definition of 'design-build' other than its very limited one is

"unreasonable" and, therefore, wrong as a matter of law. There are several reasons why this line of argument is wrong.

First, there is no case law to support WBE's contention that any other definition than the one it proposes is unreasonable and, therefore, wrong as a matter of law. Second, the handwritten changes made and initialed on Exhibit F prove the subcontract was freely negotiated between the parties, so any ambiguity should not be interpreted against Weis. Third, the many contractual terms quoted above contradict WBE's assertion that it was merely responsible for selecting the product to be installed. For example, WBE was to pay attention to and be responsible for backfilling and all joint flashings. These are just a couple of the several design issues being contested in this case. Moreover, the list of responsibilities set forth in Exhibit F of the subcontract was not an exclusive list of obligations, it only provided examples of WBE's broader liability that included, but was not limited to, the listed obligations. More broadly, WBE promised to be "completely responsible for providing . . . a water-tight system," to be "100% responsible for design criteria" and to include "all incidental[s] . . . under this sub-contract." These broad obligations contradict WBE's limited definition of its duties.

Therefore, what the "reasonable" understanding of the 'design-build' is, at the very least, contested, and it is up to the jury to determine the parties intent. *FMC Corp. v. Northern Pump Co.*, 668 F. Supp. 1285, 1291-92 (D. Minn. 1987).

The testimony provided during the case also requires that the jury define "design-build" in the WBE/Weis subcontract. The definition of design-build has been debated throughout this case. Steve Messerich of WBE and Peter Desai of Weis, the two individuals who signed the subcontract on behalf of WBE and Weis, respectively, testified to different definitions of design-build. Mr. Messerich

believes that design-build means that Weis was going to retain a designer and that WBE satisfied its responsibilities under the design-build provision by installing the submitted waterproofing system per the manufacturer's specifications. *Ex. A, Messerich depo, pgs. 279-284.* Mr. Desai, on the other hand, testified that design build required WBE to design the waterproofing system, including hiring its own designers if necessary. *Ex. B, Desai depo, pgs. 129-130, 361-363.* In addition, Curt Johnson of J-Berd, who also took on a design-build portion of the project, testified that design-build meant that his company, the subcontractor, was going to hire an engineer to do the design and then it would perform the work *Ex. C, Johnson depo, pgs. 19-20.* Further, representatives of ESG testified that there are a number of different definitions of design-build. *Ex. D, Timm depo, pg. 41; and Ex. E, Vellet depo, pgs. 56-57.* And, just about everyone who has been deposed in this matter, parties and experts alike, have been questioned regarding the definition of design-build. *Ex F, Camaya depo, pg. 238-39, Chauvin depo, pgs. 184-85, and Weigand depo, pgs. 60-61.* WBE even had one of its experts, Bob Kudder, try and define it for this case. Therefore, since the definition of design-build is not spelled out in the WBE/Weis subcontract and WBE and Weis do not agree on the definition, it is improper for the court to decide this contested fact issue on what, in effect, is an abbreviated and untimely summary judgment motion. The term is ambiguous and should be decided by the jury.

In any event, whatever the term 'design-build' means, it has the same meaning in the Promenade/Weis contract as it does in the Weis/WBE subcontract. If WBE proves to a jury that its interpretation of the term is correct, then Weis' 'design-build' duty to the Owner is similarly limited.

**CONCLUSION**

WBE's motion in limine seeking interpretation of the Weis/WBE subcontract should be denied. WBE does not present the entire contract for review and fails to account for the many

obligations that it accepted when it entered into the subcontract. Further, WBE concedes that the term 'design-build' is undefined and the evidence shows that the definition of the term has been disputed throughout. Therefore, the jury should determine the definition.

Weis respectfully requests that the Court deny WBE's motion in limine.

Dated: September 17, 2004

s/ Chad J. Stepan
Michael D. Hutchens # 167812
Chad J. Stepan. #0279535
Meagher & Geer, P.L.L.P.
4200 Multifoods Tower
33 South Sixth Street
Minneapolis, MN 55402
(612) 338-0661

and

Dean B. Thomson, #141045
Jocelyn L. Knoll, #22988X
Fabyanske Westra & Hart, P.A.
800 LaSalle Avenue, Suite 1900
Minneapolis, MN 55402

***Attorneys for Defendant and Third-Party Plaintiff Weis Builders, Inc.***

/1164308