UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Westfield Insurance Company,

Civil File No. 00-CV-987 JNE/JSM

Plaintiff,

vs.

Weis Builders, Inc., Healey Ramme Co., sued as Healey Ramme Company, CNA Insurance Companies, sued as CNA Insurance Company, Promenade Village Townhomes, L.L.C., and Valley Forge Insurance Company, one of the CNA Companies,

Defendants,

and

Weis Builders, Inc.,

Third Party Plaintiff,

vs.

Waterproofing By Experts, Inc., and BRW Elness Architects, Inc., n/k/a Elness Swenson Graham Architects, Inc., Colloid Environmental Technologies Co., and J-Berd Mechanical Contractors, Inc.,

Third Party Defendants,

and

Colloid Environmental Technologies Co.,

Third-Party Defendant and Fourth-Party Plaintiff,

v.

Chris Craft Industrial Products, Inc.,

Fourth-Party Defendant,

**WEIS BUILDERS' MEMORANDUM OF LAW IN OPPOSITION TO WATERPOOFING BY EXPERTS' MOTION IN LIMINE TO EXCLUDE CERTAIN OPINIONS OF DAVID CAMPBELL**

and

J-Berd Mechanical Contractors, Inc.,

Fourth-Party Plaintiff,

v.

Mikesh, Inc.,

Fourth-Party Defendant.

---

WBE's motion to exclude what WBE refers to as opinions 2 and 4 should be denied. There is reliable evidence that supports the opinions and Mr. Campbell is entitled to present the opinions.

**I. Opinions 2 and 4 are reliable and should be allowed.**

WBE overstates the rigidity of the requirements for allowing expert testimony in this matter. The commentary to rule 702 states that "The intent of the Rule is to liberalize the admissibility standards for expert testimony." *Fed. R. Evid. 702, commentary*. The *Daubert* court explained that rigid requirements for expert testimony are at odds with the "liberal thrust" of the Federal Rules and their "general approach of relaxing the traditional barriers to 'opinion` testimony." *Daubert*, 509 U.S. at 588. Experts are permitted wide latitude to offer opinions, including those not based on firsthand knowledge or observation. *Daubert*, 509 U.S. at 592; see also *Bass v. Spitz*, 522 F.Supp. 1343 (ED Mich. 1981)(holding that experts may offer opinions based in part from factual assumptions not derived from their expertise) and *Spearman Indus. v. St. Paul Fire & Marine Ins. Co.*, 128 F.Supp.2d 1148 (ND Ill 2001)(holding that expert will be allowed to testify regarding his opinions about cause of roof damage where he has formed

opinions based on his experience with roofs in general and his inspection of the roof in question because rejection of expert testimony is the exception rather than the rule and cross examination, presentation of contrary evidence and careful instruction are the traditional and more appropriate means of attacking shaky but admissible evidence). The expert does not need to have encyclopedic knowledge of the subject matter. *Ellis v. K-Lan Co.*, 695 F.2d 157 (5th Cir. 1983). The "trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system." *United States v. 14.38 Acres of Land Situated in Leflore County Mississippi*, 80 F.3d 1074, 1078 (5th Cir. 1996). Indeed, the court in *Daubert* affirmed that the appropriate way to deal with expert evidence is through cross examination; "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 595.

Further, the *Daubert* court concluded that "the Rules of Evidence – especially Rule 702 – do assign to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert*, 509 U.S. at 597. And, proponents of the expert testimony do not have to demonstrate to the judge by a preponderance of the evidence that the assessment of the expert are correct, they only have to show by a preponderance of the evidence that their opinions are reliable and reliability is a lower requirement than the merits standard of correctness. *In re Paoli*, 35 F.3d at 714.

In addition, while *Daubert* sets forth criteria that the courts can use to determine whether expert testimony is reliable, the criteria are not exclusive nor strictly enforced; "Of course, the *Daubert* reliability factors should only be relied on to the extent that they are relevant…and the

district court must customize its inquiry to fit the facts of each particular case." *Jaurequi v. Carter Manufacturing Co., Inc.*, 173 F.3d 1076, 1083 (8th Cir. 1999). Among the other factors that can be considered are whether the experts are proposing to testify about matters growing naturally and directly out of research they have conducted independent of the litigation, the independence of the investigator and his staff, and the presence of methods and practices contrary to "good science." *Black v. Rhone-Poulenc, Inc.*, 19 F.Supp. 2d 592, 597 (D. WV. 1998) and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 43 F.3d 1311 (9th Cir.), cert. Denied 516 U.S. 869 (1995). If the expert testifies based on research independent of the litigation, this "provides important, objective proof that the research comports with the dictates of good science." *Benedi v. McNeil-P.P.C., Inc.*, 66 F.3d 1378 (4th Cir. 1995)(holding that if the methodology is good enough for the real world it is good enough for a trial). Also, the focus is on the principles and methodology, not on the conclusions generated. *Daubert*, 509 U.S. at 595. If the Daubert framework were extended outside the realm of scientific testimony, "many types of relevant and reliable expert testimony – that derived substantially from practical experience – would be excluded." *United States v. Jones*, 107 F.3d 1147 (6th Cir. 1997). The courts have also held that experts can draw conclusions from observations based on extensive and specialized experience. *Kumho Tire Co.*, 119 S.Ct. at 1178.; *see also Hartzler v. Wiley*, 277 F.Supp.2d 1114 (DC Kan 2003)(holding that witness was properly qualified as expert in action against builder and builder's company relating to construction of home because witness had three decades of experience as construction manager, had published articles on construction industry and had given presentations on construction industry).

In the end, to assist the trier of fact, which is the requirement of rule 702, the witness must

be qualified, have a reasonable factual basis for the testimony, the testimony must be based on reliable methods and the testimony must be relevant to the facts at issue. *Kemp, at 2.* An expert's opinion must be excluded "only if it 'is so fundamentally unsupported that it can offer no assistance to the jury." *Archer Daniels Midland Co. v. Aon Risk Services, Inc.*, 356 F.3d 850, 858 (8th Cir. 2004) citation omitted. Under this criteria, Mr. Campbell's opinions 2 and 4 should be allowed.

Mr. Campbell is qualified to opine regarding the performance of the waterproofing at Promenade. He has many years of experience investigating, researching, writing and teaching about water leaks and waterproofing. He is currently the head of the waterproofing department at Inspec. *Ex. I to Weis memo opposing CETCO's motions in limine, Campbell depo, pg. 7.* In that position, Mr. Campbell designs waterproofing projects from start to finish and investigates leaks. *Id. at. pg. 22.* Currently, about 40 percent of his work involves investigation of below ground water infiltration. *Id.* Prior to this project, he investigated a couple of dozen below grade waterproofing projects where the waterproofing was installed on a precast deck. *Id. at pg. 31.*

Prior to working at Inspec, he worked for 11 years at Brent Anderson Associates (a waterproofing and roofing contracting company). *Id. at pgs. 10, 15-16.* At Brent Anderson, he performed waterproofing consulting and he investigated waterproofing leaks. *Id. at 17-19.* During that time he investigated Swelltite products. *Id. at pg. 19-20.* Also, in 1997 he joined the American Society for Testing and Materials and he has published materials and given presentations regarding investigation of plaza water infiltration, waterproofing and subsurface water management, waterproofing techniques and products. *Id. at 11-12.* Prior to this case, he had never served as an expert witness.

Campbell also has a reasonable basis for his opinions and his methods are reliable. To begin with, Campbell's prior experience investigating, researching, teaching and writing about waterproofing systems and leak investigation provide him a reliable basis from which to operate. This basis is bolstered by the investigation he performed on this project. He made twenty test openings on site and evaluated the conditions exposed in each. According to Mr. Campbell, he conducted an investigation at Promenade that was the same type of investigation he would perform in any similar situation. *Ex. I to Weis memo opposing CETCO's motions in limine, Campbell depo, pg. 34.* He added that "There's nothing more I could've done that would have resulted in a more complete assessment of the infiltration situation." *Id.*

**A. Opinion 2**

During his investigation, Mr. Campbell discovered, at four of the test openings, that the water soluble film did not dissolve when it came into contact with water. Since the water soluble film is marketed as a product that will dissolve when it comes into contact with water, the fact that it did not dissolve at four separate locations provides reasonable grounds for Campbell to opine that the film is defective.

There is no case law or evidence to suggest that Campbell's observation of the failed film is an inadequate method on which to base expert testimony. Mr. Campbell investigated the site and discovered problems with the product at issue. There was no need to test because the test had already been done. The film was exposed to water and it did not dissolve.

Mr. Campbell's opinions regarding the film relate to this matter as the failure of the film led to water leaks. Mr. Campbell observed water on the concrete deck at the locations where the film did not dissolve. CETCO represents that the film must dissolve so that the bentonite can

prevent water from moving laterally under the waterproofing and CETCO acknowledges that water moves along and through the decks at Promenade (*see CETCO memo for SJ, pg. 24*). Therefore, because water is present on the deck and the bentonite is not able to reach it because the film did not dissolve, the failure of the film to dissolve allows water to move along and through the deck. Consequently, the water will eventually pass through the porous deck or move to a place where it can exit the deck, i.e. a keyway joint, and enter a garage. It is undisputed that there were leaks in the garages. Hence, the failure of the film caused leaks at the site and the evidence relates to the facts at issue.

WBE suggests that because Campbell observed that the film did not dissolve, the jury could do the same and therefore it is no necessary for Mr. Campbell's evidence to be introduced because it will not assist the jury. This argument ignores the fact that Campbell observed the conditions in which the sample existed and his experience regarding leak and waterproofing investigations allows him to opine about the impact of the failed film.

Simply because he was not an expert on CETCO products or water soluble film prior to this matter does not prevent him from investigating and making an expert opinion regarding the conditions he observed. He is knowledgeable in waterproofing and leak investigation. With that background he is capable of learning about the products at issue and opining on them.

It was not necessary for Campbell to rule out all other problems to state that the film did not dissolve. He observed, first hand that the film did not dissolve. The evidence is clear that the water soluble film did not do its job. Further, regardless of where the water infiltration started, it was the job of the waterproofing to keep water out of the building. The bentonite is supposed to prevent water that gets past the waterproofing from entering the building. It did not do that.

There was water underneath the waterproofing that the bentonite could not reach because the film did not dissolve.

WBE's attacks regarding the amount of water that came into contact with the film, what the samples look like now and Campbell's assessment of the samples are for cross examination. There is nothing inadequate about Campbell's investigation of the waterproofing or his observation that the film did not dissolve. Indeed, Campbell testified that it was evident that the film did not dissolve:

Mr. Hull: How could you tell that the film was on there and undissolved?

Mr. Campbell: Visual observation. It was quite apparent.

*Ex. B , Campbell depo, vol. II pg. 7.* WBE may not agree with Campbell's conclusions, and it can attack Campbell on his conclusions at trial, but that does not mean that the evidence should be excluded.

Further, Campbell has more experience with waterproofing and leaks than the layperson, whether Campbell has specific knowledge regarding the characteristics of the film or not. Campbell is able to take what he observed at the site and apply his background and expertise to the conditions and reach conclusions that a layperson could not. Therefore, Campbell's opinions regarding the water soluble film should be allowed. His method for investigating the film was reliable, and his opinions relate to the facts in the case.

Introducing Campbell's opinions regarding the film will not require the jury to rely on conjecture. Campbell will likely testify regarding his own observations and the opinions he created from those observations, his experience with waterproofing and his experience with leak investigations. If the jury does not believe Campbell's opinions after he is subject to examination

and the jurors have an opportunity to observe the physical evidence, the jury can choose to ignore Campbell's position. Even if the jury chooses not to believe Campbell, that does not mean that his opinions should be excluded from the case.

WBE is also critical of Campbell's opinion that the water will move laterally. However, the evidence and basic engineering principles indicate that it will. The water is going to try and find its way to the lowest point. Therefore, it is going to move until it reaches that location. Since the film did not dissolve (and it was specifically intended to stop lateral movement of the water) and water was discovered below the film on the concrete planks, it is only reasonable to opine that the water will move laterally searching for an exit point. The evidence of leaks throughout the garages shows that the water did just that. It is not necessary to test this theory. It is based on general principles and the evidence suggests that it occurred.

The standard for exclusion of expert testimony is reliability and the focus of a motion to exclude is the methodology of the expert. Campbell's opinions regarding the film and its failure to dissolve are reliable as they are the product of years of experience in leak and waterproofing investigation and an analysis of the conditions at the site. And, the methodology was adequate – he personally observed the conditions at issue.

Since Campbell is qualified to investigate and opine regarding the waterproofing system and his opinions are based on an experienced and reliable background, reliable methodology, first-hand observations and straightforward conclusions, there is no basis for the exclusion of his opinions regarding the so-called water soluble film. WBE's motion regarding opinion 2 should be denied.

**B. Opinion 4**

Campbell is allowed to testify based on his experience. Prior to his investigation at Promenade, Campbell knew that bentonite waterproofing requires pressure to work. In light of his background, he is able to opine that the conditions existing on site will not give rise to the necessary containment pressure for the waterproofing to perform its job. During his deposition. Mr. Campbell testified to that effect:

> I would have the same concerns even on areas where there's proper lateral containment for the same argument that I gave earlier with regard to the watertightness of the seams being that the film doesn't always dissolve. I would have an added concern about that material on a vertical surface as it approaches within a foot of finish grade because of lack of lateral containment.
>
> (*See Ex. CC to Weis memo in opposition to CETCO's motion for SJ, Campbell depo (2), pg. 30, lines 3-10*)
>
> ***
>
> The bentonite component of the Swelltite, as any bentonite, has to be properly contained to resist its natural tendency to swell for it to develop a watertightness characteristic. The closer you get to finish grade, the less lateral containment pressure is exerted on the material. Finally, when you get to within approximately one foot of finish grade, the amount lateral pressure is so minimal as to make the bentonite component of the Swelltite ineffective as a waterproofing barrier.

*See Ex. GG to Weis memo in opposition to CETCO's motion for SJ, Campbell depo, pg. 12-13, lines 119-25, 1-3.* Mr. Campbell added that it was "obvious" that the containment was well below the 20 ponds that CETCO requires because it was only four inches below the surface. *Id. at pgs. 135-36, lines 16-25, 1-7.*

According to Mr. Campbell the effect of inadequate lateral containment is reduced waterproofing effectiveness:

> The watertightness characteristic of the Swelltite is relying solely then on the high-density polyethylene component. However, the seams of the Swelltite rely on the bentonite to seal so the – since the seams are now not effectively sealed because the bentonite component does not have adequate lateral containment pressure against it close to the surface, the total watertight effectiveness of the Swelltite is greatly reduced.

*Ex. CC to Weis memo in opposition to CETCO's motion for SJ, Campbell depo (2), pg. 13, lines 12-20.*

The evidence supports Mr. Campbell's position. Leaks occurred at the top of the vertical waterproofing. And, Stacy Byrd of CETCO testified that without adequate containment the products' ability to perform its job is limited. *Ex. A, Byrd depo, pgs. 164-166.* The bentonite is not able to expand to the same degree as it does under containment and therefore it cannot seal as effectively or reach all of the water that may be infiltrating. *Id.* Further, in response to a company wide e-mail regarding bentonite waterproofing, Mark Chauvin of WJE received the following comments: one of the most frequent misuses of bentonite is using it in areas where the material is not properly confined. *Ex. O to Weis memo opposing CETCO's motions in limine, WJE e-mails.*

This opinion will assist the jury because it is not likely that the layperson on the jury will have knowledge regarding inadequate containment of bentonite waterproofing products nor the result of leaks at a facility where there is inadequate containment.

## CONCLUSION

WBE's motions related to opinions 2 and 4 should be denied. Campbell's opinions are reliable and based on a solid methodology. Therefore, he is able to offer relevant evidence that is related to the issues at hand, in particular the defective water-soluble film and the lack of lateral containment on site.

Weis Builders respectfully requests that the court deny WBE's motion regarding opinions 2 and 4.

Dated: __September 17, 2004

___s/ Chad J. Stepan___________

Michael D. Hutchens # 167812
Chad J. Stepan. #0279535
Meagher & Geer, P.L.L.P.
4200 Multifoods Tower
33 South Sixth Street
Minneapolis, MN 55402
(612) 338-0661

and

Dean B. Thomson, #141045
Jocelyn L. Knoll, #22988X
Fabyanske Westra & Hart, P.A.
800 LaSalle Avenue, Suite 1900
Minneapolis, MN 55402

***Attorneys for Defendant and***
***Third-Party Plaintiff Weis Builders, Inc.***

/1164641