**EXHIBIT INDEX TO CHAD J. STEPAN'S AFFIDAVIT IN SUPPORT OF WEIS BUILDERS' MEMORANDUM OF LAW IN OPPOSITION TO WATERPROOFING BY EXPERT'S MOTION IN LIMINE TO EXCLUDE CERTAIN OPINIONS OF DAVID CAMPBELL**

A. Excerpts from deposition of Stacy Wayne Byrd taken on January 28 and 29, 2003

B. Excerpts from deposition of David William Campbell taken on October 8, 2003

/1163076

Defendants, )
)
and )
)
Colloid Environmental )
Technologies Company, )
Fourth- )
Party )
Plaintiff, )
)
and )
)
Chris Craft Industrial )
Products, Inc., )
Fourth- )
Party )
Defendant. )



The deposition of STACY WAYNE BYRD, taken in the above-entitled cause before Diane Hromek, Certified Shorthand Reporter in the State of Illinois and Notary Public within the County of DuPage, at 30 South Wacker 2900, Chicago, Illinois 60090, on January 28th and 29th, 2003, starting at 10:00 o'clock a.m., and at 10:00 o'clock a.m., respectively.

EXHIBIT A



PRESENT:

MEAGHER & GEER, PLLP
By: Mr. Chad J. Stepan
33 South Sixth Street, Suite 4200
Minneapolis, MN 55402-3788
Telephone: 612-338-0661
Fax: 612-338-8384
E-Mail: cstepan@meagher.com
Appeared on behalf of the defendant
Weis Builders, Inc., the Counter-Claimant
Weis Builders, Inc., the Cross-Claimant
Weis Builders, Inc., the Cross-Defendant
Weis Builders, Inc., the Third-Party
Plaintiff, Weis Builders, Inc.

FLYNN, GASKINS & BENNETT, L.L.P.
By: Mr. Steve Rau
333 South Seventh Street, 29th Floor
Minneapolis, MN 55402
Telephone: 612-333-9500
Fax: 612-333-9579
Appeared on behalf of the Third-Party
Defendants, Promenade Village
Townhomes, L.L.C. and the Cross-Claimant
Promenade Village Townhomes, L.L.C.

STICH, ANGELL, KREIDLER, BROWNSON & BALLOW
By: Mr. Leo I. Brisbois, Esq.
(Telephonically.)
250 - 2nd Avenue South, Suite 120
Minneapolis, MN 55401
Telephone: 612-333-6251
Fax: 612-333-1940
Appeared on behalf of the Third-Party
Defendant, Valley Forge Insurance Company
and the Cross-Defendants, Valley Forge
Insurance Company
(Appeared telephonically.)

IVERSON REUVERS, LLC
By: Mr. Mark Brown
230 Townline Plaza
8585 West 78th Street
Bloomington, MN 55438
Telephone: 952-548-7207
Fax: 952-946-1501



E-Mail: mbrown@iversonlaw.com
Appeared on behalf of the Third-Party
Defendants, Waterproofing by Experts, Inc.

COLEMAN, HULL & VAN VLIET, PLLP
By: Mr. William D. Hull
8500 Normandale Lake Boulevard, Suite 2110
Minneapolis, MN 55437
Telephone: 952-841-0201
Fax: 952-841-0041
E-Mail: wdhull@chvv.com
Appeared on behalf of the Third-Party
Defendants, Elness Architects, Inc., n/k/a
Elness Swenson Graham Architects, Inc.

ERSTAD & RIEMER, P.A.
By: Mr. Patrick D. Reilly, Esq.
200 Riverview Office Tower
8009-34th Avenue South
Minneapolis, MN 55425
Telephone: 952-896-3700
Fax: 952-896-3717
Appeared on behalf of the Fourth-Party
Plaintiff, Colloid Environmental
Technologies Company.

BROWN & CARLSON, PA
By: Mr. G. John Veith
5th Circle Down Ave., Suite 100
Minneapolis, MN 55416
Telephone: 763-591-9950
Fax: 763-591-9202
Appeared on behalf of Chris Craft Industrial
Products, Inc., and MonoSol

TOMSCHE, SONNESYN & TOMSCHE, P.A.
By: Chandelle L. Heyer
610 Ottawa Avenue North
Minneapolis, MN 55422
Telephone: 763-521-4499
Fax: 763-521-4488
E-Mail: Cheyer@tstlaw.com
Appeared on behalf of J-Berd Mechanical.

wall being placed prior to the waterproofing.
Q. Could you turn to page 12.
A. Sure.
Q. See Section 13, "Topping Weight"?
A. Yes.
Q. Are the requirements, Topping Weight Requirements, changed over time for Swelltite 3000?
A. Yes.
Q. Why is that?
A. To allow for higher degree of safety factor on confinement of the waterproofing.
Q. This 1994, mid 90's manual we are looking at, has the topping weight with Swelltite 3000 changed since this?
A. Yes, I believe so.
Wait, wait a minute.
I believe so, Chad.
Q. Was it increased, the topping weight?
A. Yes.
Q. To create a better confinement?
A. Correct.
Q. And what prompted that? Were there reports from projects that topping weight wasn't enough or there were problems with the



waterproofing not doing its job and it is determined that because there wasn't enough topping weight --
A. You want to ask one question, please?
Q. Sure.
What prompted the change to add more topping weight?
A. To build up a better or safer, you know, safety factor, to make sure that you have proper ballast on the material.
Q. Why? Is there something in particular that prompted that?
A. Just conservativism.
Q. Is there any projects out there with, where the waterproofing wasn't operating as it was supposed to, it was determined that more topping weight was necessary to -- to get it the waterproofing to act as it is supposed to?
A. There might have been one or two but, for the most part, no, that was not the determination of why it was changed.
Q. How did it come up -- that more weight was necessary? Did somebody decide well, should we just add more weight to make it even better or --



A. That was a simple decision just to a conservative safety factor.
Q. Who made the decision?
A. I was part of it. Probably the primary person that did it.
Q. Who else was involved?
A. Probably Steve Silva.
MR. REILLY: Don't guess.
THE WITNESS: Okay.
MR. REILLY: If you don't know, don't guess.
THE WITNESS: All right.
BY MR. STEPAN:
Q. So there may have been a project or two where it was determined that the topping weight wasn't enough and do you recall what projects those were?
A. Let me restate or just define that for you.
It wasn't determined that the topping -- it was never determined that that was the case, it could have been suspect, but never determined that, so --
Q. What projects?
A. I don't know.



Q. Any of the ones we talked about this morning?
A. Don't know, plus those projects this morning I didn't recognize most of those, so I am saying I don't know.
Q. In Section 14 "Flood Testing"?
A. Yes.
Q. It says, "Flood testing of Swelltite membranes is not required nor recommended." Do you see that?
A. Correct.
Q. Why is that?
A. Because it's a bentonite waterproofing system.
Q. So why would you flood test it?
A. You do not typically want to pre-hydrate the bentonite prior to its being contained to perform as a waterproofing membrane.
Q. Because it's not -- because there is not the adequate topping weight on top of it. It functions better when it's got the proper containment?
A. Correct.
Q. If you flooded before there is

containment, then you get what is known as free swell, is that right?

A. Yeah, you can describe it as free swell.

Q. Does it -- if it were -- if free swell occurred, does that inhibit the long-term effectiveness of the waterproofing?

A. It could diminish the performance of the product -- if it has premature hydration.

Q. How? Why?

A. Because now you have expanded the bentonite in an unconfined condition.

Q. And so why does that, why would that impact its ability to act as a waterproofing?

A. Because you now you have taken its performance feature or its potential for expansion to seal and diminish it.

The future potential to swell and seal, because it's already acted, somewhat.

Q. So it's not its ability -- let's see if I can clarify for myself.

A. Okay.

Q. Its ability to free swell and expand if water comes in contact with it, it is still



going to activate and conceal the water that is right there, but its ability to expand to, you know, reach a crack or reach water that is beyond the initial contact is going to be limited?

A. You would, yes, you would decrease or limit the product's expansion and basically scenario like you just stated.

Q. The last sentence of that says, of that section says, "Consult manufacturer for special installation instructions."

A. Yes.

Q. Is that a reference to anything specific or what are the "special installation instructions"?

A. The "special installation instructions" would most probably be, instruct you not to flood test project.

Q. Have you ever received calls from applicators saying the owner or someone on the project wants to flood test it?

A. Yes.

Q. "Can we do it?"

Do you tell them not to?

A. Yes.



Q. Have you ever had a project where you have flood -- you know it's been flood tested?

A. I think they flood tested one or two before.

Q. Do you know if there has ever been problems with, down the road with those projects?

A. No.

Q. Do you recall which projects they were?

A. No.

Q. Can you flip over to the next --

A. Okay.

Q. -- group of literature? It's the one titled, "Spec Data" in the upper right-hand corner?

A. Okay.

Q. Is this another separate set of installation literature?

A. Yes.

Q. How many pages does this one run? Does it go all the way back through the one with the Details on it?

A. Four pages.

Q. Four pages.

Do you know when -- what time



frame plus the front page September 1994, that is when this was created?

A. Yeah, that is when it would have been printed.

Q. Would you consider this to be marketing literature? Is this more of a, along the lines of the actual manual we just looked at?

A. This is more of a -- actually what this is is there is a different specification out there that has a format that you plug your products into, which is up here on the top right-hand side.

Q. Where, under the "Spec Data" label?

A. Right, the Construction Specifications Institute.

It's right there.

Q. So these are submitted to that institute for your people who may have CETCO products to install?

A. You submit your, oh you submit your information in their format so --

Q. Who gets something like this spec data document?

A. Whoever, whoever would ask for one.

Q. Does it go out with the product?

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Westfield Insurance Company,

Plaintiff,

vs. Civil File No. 00-CV-987(PAM/JGL)

Weis Builders, Inc.; Healey Ramme Co., sued as Healey Ramme Company; CNA Insurance Companies, sued as CNA Insurance Company; Promenade Village Townhomes, L.L.C.; Valley Forge Insurance Company, one of the CNA Insurance Companies,

Defendants,

and

Weis Builders, Inc.,

Third-Party Plaintiff,

vs.

Waterproofing By Experts, Inc.; BRW Elness Architects, Inc., n/k/a Elness Swenson Graham Architects, Inc.; Promenade Village Townhomes; Valley Forge Insurance Company; Colloid Environmental Technologies Company; and J-Berd Mechanical Contractors, Inc.,

Third-Party Defendants,

and

Colloid Environmental Technologies Company,

Fourth-Party Plaintiff,

vs.

Chris Craft Industrial Products, Inc.; and Mikesh, Inc.,

Fourth-Party Defendants.

---



VOLUME II

The Deposition of DAVID WILLIAM CAMPBELL, taken pursuant to Notice of Taking Deposition, taken before Barbara F. Schwegman, a Notary Public in and for the County of Washington, State of Minnesota, taken on the 8th day of October, 2003, at 8500 Normandale Lake Boulevard, Suite 2110 Minneapolis, Minnesota, commencing at approximately 9:00 a.m.

APPEARANCES:

ANDREA E. REISBORD, ESQUIRE, of the Law Firm of COUSINEAU, McGUIRE, ANDERSON, CHARTERED, 600 Travelers Express Tower, 1550 Utica Avenue South, Minneapolis, Minnesota, 55416-5318, appeared for and on behalf of Plaintiff, Westfield Insurance Company.

CHAD J. STEPAN, ESQUIRE, of the Law Firm of MEAGHER & GEER, PLLP, 4200 Multifoods Tower, 33 South Sixth Street, Minneapolis, Minnesota, 55402-3788, appeared for and on behalf of Defendant and Third-Party Plaintiff, Weis Builders, Inc.

STEVEN E. RAU, ESQUIRE, of the Law Firm of FLYNN, GASKINS & BENNETT, LLP, 333 South Seventh Street, Suite 2900, Minneapolis, Minnesota, 55402, appeared for and on behalf of Defendants, Promenade Village Townhomes, LLC and Healey Ramme Company.

LEO I. BRISBOIS, ESQUIRE, of the Law Firm of STICH, ANGELL & KREIDLER, P.A., The Crossings, Suite 120, 250 Second Avenue South, Minneapolis, Minnesota, 55401, appeared for and on behalf of Defendant, Valley Forge



APPEARANCES:

MARK S. BROWN, ESQUIRE, of the Law Firm of MURNANE, CONLIN, WHITE & BRANDT, P.A., 444 Cedar Street, Suite 1800, Saint Paul, Minnesota, 55101, appeared for and on behalf of Third-Party Defendants, Waterproofing By Experts, Inc.

WILLIAM D. HULL, ESQUIRE, of the Law Firm of COLEMAN, HULL & VAN VLIET, 8500 Normandale Lake Boulevard, Suite 2110, Minneapolis, Minnesota, 55437, appeared for and on behalf of Third-Party Defendant, BRW Elness Architects, Inc., n/k/a Elness Swenson Graham Architects, Inc.

CHANDELLE L. HEYER, ESQUIRE, of the Law Firm of TOMSCHE, SONNESYN & TOMSCHE, P.A., 610 Ottawa Avenue North, Minneapolis, Minnesota, 55422, appeared for and on behalf of Third-Party Defendant, J-Berd Mechanical Contractors, Inc.

PATRICK D. REILLY, ESQUIRE, of the Law Firm of ERSTAD & RIEMER, P.A., 200 Riverview Office Tower, 8009 34th Avenue South, Minneapolis, Minnesota, 55425, appeared for and on behalf of Third-Party Defendant and Fourth-Party Plaintiff, Colloid Environmental Technologies Company.

G. JOHN VEITH, ESQUIRE, of the Law Firm of BROWN & CARLSON, P.A., 5411 Circle Down Avenue, Suite 100, Minneapolis, Minnesota, 55416, appeared for and on behalf of Fourth-Party Defendant, Chris Craft Industrial Products, Inc.

CAMERON BOYD, ESQUIRE, of the law firm of LINDQUIST & VENNUM, PLLP, 4200 IDS Center, 80 South Eighth Street, Minneapolis, Minnesota, 55402-2274, appeared for and on behalf of Fourth-Party Defendant, Mikesh, Inc.

*The Original is in the possession of Attorney William D. Hull.*



INDEX


| | Page |
|---|---|
| DAVID WILLIAM CAMPBELL | |
| Cross-examination by Mr. Hull | 5 |
| Cross-examination by Mr. Reilly | 46 |
| Cross-examination by Mr. Stepan | 68 |
| Cross-examination by Mr. Brown | 102 |
| Cross-examination by Ms. Reisbord | 143 |
| Cross-examination by Mr. Brisbois | 147 |
| Cross-examination by Mr. Veith | 148 |
| Recross-examination by Mr. Hull | 153 |
| Recross-examination by Mr. Reilly | 155 |
| Recross-examination by Mr. Stepan | 156 |
| Recross-examination by Mr. Brown | 158 |
| Direct examination by Mr. Rau | 161 |
| Continued Recross-examination by Mr. Brown | 164 |
| Continued Recross-examination by Ms. Reisbord | 165 |

EXHIBITS

| | |
|---|---|
| Exhibit 808, Campbell General file, handwritten notes | 86 |
| Exhibit 809, 11-1-02, Fax to Robb Van Martin | 88 |
| Exhibit 810, 2-13-02, E-mail to Campbell from Goodwin | 90 |
| Exhibit 811, 9-30-03, E-mail to Campbell from Semke | 141 |

DAVID WILLIAM CAMPBELL,
the Witness in the above-entitled
matter, after having been first duly
sworn, deposes and says as follows:

CROSS-EXAMINATION

BY MR. HULL:

Q. Mr. Campbell, my name is Bill Hull. I represent Elness Swenson and Graham in this case. We have a limited amount of time today, so let's get kind of right to the meat of this. I'd like to have you turn in your report to -- let's start out at diagram C if you would. Partway down there you have a note that starts out with "waterproofing membrane," and the last part of that says "parts of bentonite not in contact with concrete because of undissolved film.". First of all, what is the significance of parts of the bentonite not being in contact with the concrete?

MR. REILLY: Objection; lack of foundation, calls for speculation.

MR. BRISBOIS: Join.

THE WITNESS: Should I answer?

MR. HULL:

Q. Yes. Yes. In fact, let me just tell you: Every question I ask you, there will be objections to.



A. Oh, okay.

Q. Unless your attorney tells you not to answer them, go ahead and answer the question.

MR. RAU: And you'll be able to tell who your answer hurts the most by who objects. That's kind of a standard operating procedure in this case.

BY MR. HULL:

Q. Do you have the question in mind?

A. Yes. The intention of the Swelltite material is to seal against the concrete substrate. The only component of the Swelltite material that seals is the bentonite part of the lower underside of the membrane. However, when there is something -- when there's a material interfering between the bentonite component and the structural deck, it keeps the bentonite from sealing to the concrete and water can then flow underneath the film, between the film and the concrete deck.

Q. And if the bentonite seals to the concrete, what happens to the water flow then?

A. It is supposed to stop water migration underneath the Swelltite material.

Q. And I think you testified last time that you had samples of some of the Swelltite with the undissolved film; is that right?

A. That's correct.



Q. How could you tell that the film was on there and undissolved?

A. Visual observation. It was quite apparent.

Q. Now, have you done any further investigation since your last deposition with respect to this film on the bentonite?

A. I have. I called a Tony Perales. He's with Poggemeyer Design Group. And I called a Dean Rutila who is with the engineering firm of Simpson, Gumpertz & Heger.

Q. What was the purpose of your calls to those individuals?

A. I understand that they were both involved in investigations of similar failures of Swelltite or a similar failure of Swelltite at the Medical College of Ohio.

Q. Give me their names again if you would.

A. Tony Perales, P-E-R-A-L-E-S. I don't know if I'm pronouncing that right.

Q. Okay.

A. And Dean Rutila, R-U-T-I-L-A.

Q. Did you find out from Mr. Perales what expertise he had?

A. No, I didn't.

Q. What did he tell you?

A. He said that he didn't find -- he did in fact



find samples of the Swelltite material, the installed Swelltite material that still had film remaining on them, and in fact he still had some of the film removed from the sample in a test tube of water that still hadn't dissolved to this date.

Q. How long did he have it in a test tube? Did he say?

A. No, he didn't.

Q. And did Mr. Perales tell you anything else?

A. No.

Q. And what about Mr. Rutila?

A. He also -- he concurred with Mr. Perales that there were samples taken that had film remaining on them, and he offered his opinion as to why that might be that the film is not dissolving. He said that typical of polyvinyl acetate, which according to Mr. Rutila is the chemical composition of this film on the Swelltite material, typical of polyvinyl acetate, it can cross-link or vulcanize based on a combination of heat and time, and his explanation of cross-linking or vulcanization with respect to this material is that small molecules link together to form larger molecules and that impedes the material's natural ability to dissolve.

Q. And why did he say that that was occurring?

A. He said since it's a function of heat and