**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Court File No. 00-CV-987 JEL/JSM

Westfield Insurance Company,

Plaintiff,

v.

Weis Builders, Inc.; Healey Ramme Co., sued as Healey Ramme Company; CNA Insurance Companies, sued as CNA Insurance Company; Promenade Village Townhomes, L.L.C.; Valley Forge Insurance Company, one of the CNA Insurance Companies,

Defendants,

and

Weis Builders, Inc.,

Counter-Claimant,

v.

Westfield Insurance Company,

Counter-Defendant,

and

Weis Builders, Inc.,

Third-Party Plaintiff,

v.

Promenade Village Townhomes, L.L.C. and Valley Forge Insurance Company,

Third-Party Defendants,

and

Weis Builders, Inc.,

# DEFENDANT PROMENADE VILLAGE TOWNHOMES, L.L.C.'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT AND THIRD-PARTY PLAINTIFF WEIS BUILDERS, INC.'S MOTIONS IN LIMINE

Cross-Claimant, )
)
v. )
)
Promenade Village Townhomes and Valley )
Forge Insurance Company, )
)
Cross-Defendants, )
)
and )
)
Promenade Village Townhomes, L.L.C., )
)
Cross-Claimant, )
)
v. )
)
Weis Builders, Inc., )
)
Cross-Defendant, )
)
and )
)
Weis Builders, Inc., )
)
Third-Party Plaintiff, )
)
v. )
)
Waterproofing by Experts, Inc.; BRW )
Elness Architects, Inc., n/k/a Elness )
Swenson Graham Architects, Inc., and )
Colloid Environmental Technologies )
Company, )
)
Third-Party Defendants, )
)
and )
)
Colloid Environmental Technologies )
Company, )
)
Fourth-Party Plaintiff, )
)
and )
)
Chris Craft Industrial Products, Inc., )
)

| | |
|---|---|
| Fourth-Party Defendant. | ) |
| | ) |
| and | ) |
| | ) |
| J-Berd Mechanical Contractors, Inc., | ) |
| | ) |
| Third-Party Defendant and Fourth-Party Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| Mikesh, Inc., | ) |
| | ) |
| Fourth Party Defendant. | ) |

---

## INTRODUCTION

This memorandum is submitted on behalf of Promenade Village Townhomes, L.L.C. ("Promenade") and in opposition to Defendant and Third-Party Plaintiff Weis Builders, Inc.'s ("Weis") Motions *In Limine*. Weis moved this Court to exclude testimony from David Campbell and other witnesses regarding Weis' duties, responsibilities and standard of care as a general contractor on the Promenade project. In addition, Weis has moved this Court to preclude the introduction of any evidence of leaks occurring after Weis performed repairs at the Property. Finally, Weis has moved to preclude the testimony of Robert Strachota ("Strachota") alleging that it is irrelevant and not reliable. Each of these motions should be denied.[1]

## ARGUMENT

**I. Campbell is qualified to present evidence and testimony regarding the duties, responsibilities, and standard of care of Weis as the general contractor on the**

[1] Promenade makes no response to Section IV of Weis' Memorandum of Law in Support of its Motions *in Limine* concerning whether Weis had consent to perform remedial work and the application of the professional services exclusion in the Westfield policy.

**Promenade project, particularly those duties, responsibilities, and standards related to the design-build waterproofing of the Promenade plazas.**

Weis' Motion *in Limine* requests a sweeping prohibition of evidence or testimony "regarding the standard of care for general contractors in this matter or regarding what Weis should have done on this project." Weis Memorandum in Support of Motions *in Limine* at p. 7. Weis' motion is overbroad in its scope and inappropriately seeks to exclude testimony from qualified experts and relevant testimony regarding the waterproofing of the Promenade Oaks plaza decks.

Weis argues that David Campbell, Sid Bhatt, Richard Stehley, William Arockiasamy, Robert Kudder, Jeffrey Schuh, Jon Camaya, Tim Charboneau and Scott Vanderburg are not general contractors and, thus, are not qualified to testify as to the duties, responsibilities and standard of care of Weis as a general contractor. Promenade opposes this motion *in limine* on the grounds that 1) David Campbell is qualified by knowledge, skill, experience and training to testify regarding standards of care for general contractors, particularly with respect to Weis' duties and responsibilities related to waterproofing, and 2) that Weis' request for such a broad prohibition would encompass and improperly exclude relevant evidence and testimony about "what Weis should have done on this project" with respect to the waterproofing of the plaza decks.

Expert testimony may be admitted at trial if the witness is "qualified as an expert by knowledge, skill, experience, training, or education," and if the "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. Campbell has considerable experience in the construction industry, particularly in design, including "preliminary and schematic building design, construction document drafting, construction drawing drafting, site observation, [and] model building." *See* David Campbell Depo. (Vol. I), at p. 13, lines 16-18, attached to the Affidavit of Steven E. Rau ("Rau Aff.") as

Exhibit H.[2] He worked for Brent Anderson Associates for 11 years, and during that time gained experience in the construction field and worked in all areas of building design: client contact, marketing, schematic design, design development, construction documents, specification writing and *site observation*, and *construction observation* for a wide variety of building types. *See* Campbell Depo. (Vol. I) at p. 16, lines 15-16, p. 17, lines 12-18, attached to the Rau Aff. as Exhibit H.

"[A]n individual can qualify as an expert where he possesses sufficient knowledge gained from practical experience, even though he may lack academic qualifications in the particular field of expertise." *Fox v. Dannenberg*, 906 F.2d 1253, 1256 (8th Cir. 1990). The knowledge required to render an expert qualified to provide testimony "may be derived from reading alone in some fields, from practice alone in some fields, or as is more commonly the case, from both." McCormick on Evidence, 4th Ed., Vol. 1, pp. 54-55 (1992). Once a witness has been determined competent to testify as an expert, "challenges to the expert's skill or knowledge go to the weight to be accorded the expert testimony rather than to its admissibility." *Fox v. Dannenberg*, 906 F.2d at 1256. Campbell's experience in the construction field qualifies him to testify about standards of care, as he has observed them in this professional experience, applicable to general contractors. Even though Campbell may not have been hired to evaluate Weis' overall performance as a general contractor, he is nonetheless qualified to testify generally about a general contractor's standard of care. *See* Fed. R. Evid. 702, Advisory Committee Notes (A qualified expert may "give a dissertation or exposition of scientific or other principles relevant to the case, leaving the trier of fact to apply them to the facts.").

Even if the Court finds that Campbell is not qualified to testify as to overall duties, responsibilities and standards of care of a general contractor, Campbell is fully qualified to testify as

[2] Campbell has a bachelor of architecture degree and a bachelor of environmental design degree. Campbell Depo. (Vol. I), at p. 8, lines 5-11, attached the Rau Aff. as Exhibit H. He is a licensed architect and a member of the American Institute of Architects. Campbell Depo. (Vol. I), at p. 10, lines 20-25, attached to the Rau Aff. as Exhibit H.

to the duties, responsibilities and standard of care *as they relate to waterproofing*, and he should not be prohibited from doing so merely because those duties fall within the province of the general contractor on the Promenade project.

Campbell has been devoted to the study, investigation and design of below-ground waterproofing and drainage systems for the past 17 years. *See* Campbell Depo (Vol. I), at p. 21, lines 2-5, attached to the Rau Aff. as Exhibit H; David Campbell C.V., attached to the Rau Aff. as Exhibit I. In his current position as head of the waterproofing department at INSPEC, which position he has held since 1998, his responsibilities include "all aspects of design of waterproofing projects, managing the project from start to finish, all the way through the bidding process," as well as construction observation. *See* Campbell Depo. (Vol. I), at p. 22, lines 10-14, attached to the Rau Aff. as Exhibit H. Campbell has developed a reputation in the industry for expertise in waterproofing and has spoken on the subject of waterproofing at many architectural and engineering seminars and firms. *See* Campbell Depo. (Vol. I) at p. 12, lines 16-25, attached to the Rau Aff. as Exhibit H.

Under the contract between Weis and the original owner of the Promenade Oaks Townhomes, the waterproofing of the plazas at Promenade was design-build, meaning that Weis accepted the responsibility of designing and building the waterproofing system to be used in the plaza courtyards to prevent water from entering the dwelling units and the garage below. While Campbell may not be a general contractor, he is nonetheless more than qualified to testify as to the duties, responsibilities, and standard of care applicable to Weis as the contractor responsible for the design-build of the waterproofing component of the project.

In summary, broad exclusion of any testimony related to a general contractor's standard of care is not appropriate with respect to Campbell's testimony. Any limit of testimony regarding a general contractor's standard of care that this Court *does* choose to impose should *not* include a prohibition of testimony concerning the standards of care relating to waterproofing systems. By

contractual agreement, Weis, the general contractor—rather than some other contractor—was responsible for the design and construction of the plaza waterproofing system at Promenade. Weis' negligence in the performance of that responsibility is a primary issue in this case, and Promenade is entitled to submit expert testimony from David Campbell, a qualified expert in the waterproofing field.

## II. Since Substantial Evidence Exists Regarding Leaks Occurring After Weis Performed Repairs, Testimony Regarding Such Repairs Should be Allowed

In an attempt to have this Court preclude any testimony regarding a critical fact in this matter, Weis makes the unfounded claim that no evidence exists regarding leaks occurring after repairs were made to the property. Specifically, Weis asserts, "[t]here is no evidence that anyone has tested or performed any specific investigation to determine whether any of the areas that Weis repaired continue to leak." Weis Memorandum in Support of Motions *in Limine* at p. 4, 7-8. Despite Weis' wish that its repairs resolved the leak problems, numerous contemporaneous documents prove otherwise.

For instance, a handwritten document drafted by Healey Ramme Company Vice President of Property Management, Lisa Dahl, ("the Dahl Memo") directly addresses the problem that Weis claims never occurred. *See* January 27 Memorandum drafted by Lisa Dahl, which is attached to the Rau Aff. as Exhibit A. The Dahl Memo lists one hundred leaks in Buildings 1-6 at the property in July 1999, forty leaks in Buildings 1-3 and sixty leaks in Buildings 4-6. Critically, the next column lists twenty-four actual "Leaks After Repairs Done" in Buildings 1-3. The final column performs the math and shows 40% of the leaks resolved by the repairs. The Dahl Memo thus estimates that, assuming the same 40% success rate after repairs in Buildings 1-3, thirty six of the sixty repairs will continue to leak after repairs are completed in Buildings 4-6. The Dahl Memo concludes with a statement that "[b]ased on Bldgs 1, 2 & 3 status we estimate that after our current construction plan is completed, 60 leaks will remain." Unless a 60% leak rate after repairs somehow equates to

success, this document serves as reliable evidence that Weis' repairs did not prevent further leaks in Buildings 1-3.

Weis began leak repairs in 1997 and continued performing them until at least July 2001. Promenade's records indicate that leaks continued to occur from the time of these first repairs until the sale of the property in 2002. For instance, Terry Weiderhoft, the Maintenance Supervisor for Healey Ramme, created charts entitled "Promenade Water Leaks," listing the locations of the leaks. *See* 10/08/02 Promenade Water Leaks Charts, which are attached to the Rau Aff. as Exhibit B & C. Exhibit C includes a list of the 138 leaks in 2001 and 2002, and also contains background data regarding the specific dates and units where the leaks occurred. Prior to the creation of those documents in 2002, Weis had performed repairs on the posts above the garages in 2000 and 2001. Despite these repairs, the charts list numerous leaks in the garage ceiling in the areas underneath the posts that had ostensibly been repaired by Weis.

Evidence of leaks in areas in which Weis had already made repairs is also found in a "Water Leak Summary by Year for 1997 – October 8, 2002." *See* Promenade Oaks Townhomes, Water Leak Summary by Year, 1997- October 8, 2002 ("Water Leak Summary"), which is attached to the Rau Aff. as Exhibit D. Healey Ramme staff drafted the Water Leak Summary by compiling Weiderhoft's leak reports. *See* Terry Weiderhoft Depo. , at p. 138, attached to the Rau Aff. as Exhibit E. The Water Leak Summary lists 112 leaks in 1997, 145 leaks in 1998, 121 leaks in 1999, 156 leaks in 2000, 72 leaks in 2001 and 92 leaks in 2002. Eighty five of the leaks listed in the Water Leak Summary happened in the "Garage Level," under areas in which Weis had purportedly made waterproofing repairs in 2001.

Although Weis' Memorandum is not clear on this point, it appears to argue that any opinions regarding leaks following repairs would not be reliable because there is no evidence that anyone *specifically* investigated each location at which repairs were attempted. Regardless of whether

anyone dug up the same posts that had been repaired or other repair sites, Weis cannot ignore the substantial evidence of post-repair leaks. Certainly, the above documents – documents that were drafted when leaks were found after Weis' repair attempts – constitute reliable evidence that plazas continued to leak even after Weis' attempted repairs.[3] Thus, Weis's motion *in limine* to exclude opinions regarding post-repair leaks at repaired areas should be denied, and Promenade should be allowed to offer such testimony and exhibits.

## III. Strachota's Opinion Regarding His Appraisal of the Property Is Relevant and Reliable and Should Be Admitted

Weis also asks this Court to exclude the opinion of Robert Strachota regarding what the Property's value would have been had the leaking problems not occurred, apparently because Weis prefers the opinion of Thad Palmer. As long as Strachota is qualified and his opinion is relevant and reliable, it is for the jury, not Weis or the Court, to determine whose opinion should be accepted. While it may be Promenade's burden to establish admissibility of Strachota's testimony, Weis does not get to have it excluded by merely implying that it is superfluous because Palmer offered an opinion regarding the same issue. Instead of bringing a *Daubert* motion to exclude Strachota, Weis merely states that Palmer's testimony on this critical issue is all the jury will need. Apparently Weis believes it can dictate the means by which Promenade undertakes to bear its burden of proof in its damages; this belief is silly.

Promenade intends to have Strachota testify about his appraisal of the Property with and without leaks. In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), the Supreme Court instructed that the Federal Rules of Evidence require the trial court to "ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable." 509 U.S. at 589. Later, in *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999), the Supreme Court made clear that this gate-

[3] Allowing Promenade to introduce evidence of leaks in previously repaired areas does not preclude Weis from cross-examining witnesses regarding it or otherwise testing this evidence.

keeping function "applies not only to testimony based on 'scientific' knowledge," as was the case in *Daubert*, but also to testimony based on 'technical' and 'other specialized' knowledge." 526 U.S. at 141; *Lauzon v. Senco Products, Inc.*, 270 F.3d 681, 686 (8th Cir. 2001) (scientific, technical, or other specialized knowledge must be relevant or useful to the finder of fact in deciding the ultimate issue; the expert must be qualified to assist the finder of fact; and the proposed evidence must be reliable or trustworthy). Admission of appraisal expert testimony is commonplace. *See Cayuga Indian Nation of New York v. Pataki*, 188 F.Supp.2d 223, 246-47 (N.D.N.Y 2002) (real estate appraisers' testimony both "reliable and relevant[,] . . . and w[ould] assist the jury in deciding the property valuation issue"); *Schack v. Schack*, 354 N.W.2d 871, 874 (Minn. Ct. App. 1985).

In an earlier ruling from the *Cayuga* matter, the court, under *Daubert* and its progeny, explained its reasoning for allowing the testimony of two real estate appraisers, while excluding that of another. *See Cayuga Indian Nation of New York v. Pataki*, 83 F.Supp.2d 318 (N.D.N.Y. 2000). The court recognized that Federal Rule of Evidence 702 permits opinion testimony by experts when the witness "'is qualified as an expert by knowledge, skill, experience, training or education,' and '[i]f scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue.'" *Id.* at 321; Fed. R. Evid. 702. Through Strachota's curriculum vitae and testimony regarding his credentials, education, training and experience, Promenade will certainly show this Court that he has "sufficient knowledge, skill, training and education to establish himself as an expert in terms of 'specialized knowledge' as to real estate appraisal." *See* Strachota's curriculum vitae, which is attached to the Rau Aff. as Exhibit F; Robert J. Strachota Depo. ("Strachota Depo.") , at p. 13-20, attached to the Rau Aff. as Exhibit G; *Cayuga*, 83 F.Supp.2d at 321.

The *Cayuga* court next tested the proposed expert appraisers' testimony to ensure that it "both rests on a reliable foundation and is relevant to the task at hand." *Cayuga*, 83 F.Supp.2d at 322

(citing *Daubert*, 509 U.S. at 597). Although the valuation issue in *Cayuga* was novel, the court noted that it could differentiate between the unreliable testimony of the appraiser who "relied upon little more than his subjective 'feeling,'" and the reliable testimony of two other appraisers who "both have significant, reliable objective data, from which they then relied upon to extrapolate their conclusions." *Cayuga*, 83 F.Supp.2d at 325. Under *Daubert*, "the focus . . . must be solely on principles and methodology, not on the conclusions that they generate." *Daubert*, 509 U.S. at 595.

Weis did not offer any criticism of the principles or methodology that Strachota used to make his appraisal. Indeed, Strachota used common principles of the appraisal business in evaluating the property: the income approach, the comparable properties approach and the cost approach. *See* Strachota Dep. at p. 29, 68, 70, 120 and 165. By contrast, the excluded appraiser in *Cayuga* used only the comparable properties approach, double counted in making his calculations, used inaccurate sales figures and even failed to follow his own procedures. *Cayuga*, 83 F.Supp.2d at 323-25.

Rather than criticize Strachota's methodology, Weis simply alleges that Palmer's conclusion was more accurate. That is a debatable proposition. Palmer's suggested asking price was for a leaking property and is no less an appraisal than Strachota's determination. The price of $30.5 million suggested by Palmer was his first offer to the buyers before he found out how bad the leaks were and how much they would cost to repair; nor did Promenade ever hold negotiations with the eventual buyer, who Palmer represented, under the assumption that the property did not contain leaks. Given the fact that the leaks unquestionably affected the property income, any evaluation Palmer made before knowing about leaks and after reviewing the property's income stream would show that valuation was nonetheless affected by the water problems. So, Palmer's testimony does not address the issue critical to the damages in this case: how much would the building have been

worth if it had been waterproof from the beginning? The issue of whose appraisal sheds more light on that question is one for the jury.

"Relevancy, the second *Daubert* factor, has 'also be[en] described as ensuring that the evidence 'fits' the facts of the case." *Cayuga*, 83 F.Supp.2d at 326 (citing *Daubert*, 509 U.S. at 591); *see also Lauzon*, 270 F.3d at 686 ("evidence based on scientific, technical, or other specialized knowledge must be useful to the finder of fact in deciding the ultimate issue of fact"). If Palmer's appraisal testimony regarding the value of the property after five years of operating with leaks and after assuming the property is repaired is relevant, so is Strachota's. Weis claims that Palmer's value is more accurate because it was a potential asking price for the property. Strachota will explain to the jury why he believes the appraisal he made is the more accurate one. As mentioned above, the jury will determine whose testimony better appraises the value of the property. But, since Strachota's testimony has a valid connection to the damages question here, it is certainly relevant.

## CONCLUSION

For all of the above reasons, Weis' motions *in limine* should be denied. The Court should allow introduction of evidence from Campbell concerning Weis' duties, responsibilities and standard of care as the general contractor responsible for the design and construction of the waterproofing system on the plaza courtyard, should allow introduction of evidence of leaks occurring subsequent to Weis' repairs, and allow testimony from Strachota regarding his appraisal of the property assuming that the leaks had not occurred.

Respectfully submitted,

Dated: September 17, 2004

**FLYNN, GASKINS & BENNETT, L.L.P.**

*s/Steven E. Rau*

Steve W. Gaskins, #147643
Steven E. Rau, #147990
333 South Seventh Street
Suite 2900

Minneapolis, MN 55402
612-333-9500 Telephone
612-333-9579 Facsimile
***Attorneys for Defendant Promenade Village Townhomes, L.L.C.***