**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Civil File No. 00-CV-987(JNE/JSM)

Westfield Insurance Company,

Plaintiff,

vs.

Weis Builders, Inc.; Healey Ramme Co., sued as Healey Ramme Company; CNA Insurance Companies, sued as CNA Insurance Company; Promenade Village Townhomes, L.L.C.; Valley Forge Insurance Company, one of the CNA Insurance Companies,

Defendants,

and

Weis Builders, Inc.,

Third Party Plaintiff,

vs.

Waterproofing By Experts, Inc.; BRW Elness Architects, Inc., n/k/a Elness Swenson Graham Architects, Inc.; Promenade Village Townhomes; Valley Forge Insurance Company; Colliod Environmental Technologies Company; and J-Berd Mechanical Contractors, Inc.,

Third Party Defendants,

and

Colloid Environmental Technologies Company; and J-Berd Mechanical Contractors, Inc.,

Fourth-Party Plaintiffs,

vs.

Chris Craft Industrial Products, Inc.; and Mikesh, Inc.,

Fourth-Party Defendants.

**THIRD-PARTY DEFENDANT ELNESS SWENSON GRAHAM ARCHITECTS, INC.'S MEMORANDUM IN OPPOSITION TO MOTION OF WATERPROOFING BY EXPERTS, INC. TO EXCLUDE TESTIMONY OF RICHARD STEHLY**

---

## INTRODUCTION

Third-Party Defendant Waterproofing by Experts, Inc. ("WBE") seeks to exclude the testimony of BRW Elness Architects, Inc., n/k/a Elness Swenson Graham Architects, Inc.'s ("ESG") expert, Richard Stehly, that the Swelltite 3000 product was an inappropriate product for the Promenade Apartments ("Promenade"), and that the liquid of flashing applied at the termination of the Swelltite was improper. WBE contends that Mr. Stehly's opinions lack foundation and are irrelevant. These contentions are without merit.

## ARGUMENT

### I. MR. STEHLY'S OPINION THAT THE SWELLTITE 3000 WAS INAPPROPRIATE FOR USE AT THE PROMENADE HAS FOUNDATION AND IS RELEVANT.

Rule 702 of the Federal Rules of Evidence governs the use of testimony by experts. The comments to Rule 702 note that "a review of the case law after *Daubert* shows that the rejection of expert testimony is the exception, rather than the rule." The United States Supreme Court stated in *Kumho Tire Co. v. Carmichael*, 119 S. Ct. 1167, 1176, that "We conclude that the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." The ultimate objective of Rule 702, as with the other Rules of Evidence, is to insure that evidence is reliable and helpful to the trier of fact.

Mr. Stehly's opinion that the Swelltite was not an appropriate product for this application, and that the liquid flashing applied at the termination of the Swelltite was inappropriate and improperly installed, are both reliable and helpful to a jury.

Mr. Stehly's opinion regarding the appropriateness of the Swelltite 3000 for use at the Promenade is set forth in his report, which states in part as follows:

> The use of a bentonite membrane was inappropriate for this design. A bentonite membrane cannot be used on a horizontal surface which will be exposed to standing water. It is not recommended by the National Roofing Contractors Association in its Roofing and Waterproofing Manual for this application. The courtyard drains will allow an accumulation of at least two inches of water on the membrane.

(See Exhibit A to Hull Aff.) Mr. Stehly's opinion is based upon the National Roofing Contractors Association's Roofing and Waterproofing Manual, and upon his education and experience.

Mr. Stehly has a degree in civil engineering from the University of Minnesota where he also did graduate studies in civil engineering. He spent seventeen (17) years, from 1971 to 1988, working for Twin City Testing, an independent testing laboratory that provided testing services relating to soil engineering, roofing, concrete and masonry. During that time, he worked on up to fifty (50) projects testing the permeability of bentonite waterproofing. He also did leak investigations involving basements and plazas. (Stehly deposition, P 11, L 8 to P 22, L 10; see Exhibit B to Affidavit of William D. Hull ("Hull Aff.").)

After Twin City Testing, Mr. Stehly was President of Anchor Block, a company that makes concrete blocks such as the ones used in the plazas at the Promenade. In that capacity, he was involved in waterproofing issues relating to leaking in basements and plazas through the concrete blocks his company manufactured. In 1989, Mr. Stehly started American Engineering and Testing, an independent testing laboratory doing work similar to Twin City Testing. (Stehly deposition, P 23, L 9 to P 26, L 12, see Exhibit B to Hull Aff.)

Mr. Stehly's education and work experience since 1971 has been directly related to the construction industry and construction materials, much of it directly related to waterproofing, and specifically bentonite waterproofing products.

The waterproofing membrane at issue here is described in Colloid Environmental Technologies Company's ("CETCO") literature as "Composite Bentonite Waterproofing Products." (See Exhibit C to Hull Aff.) Mr. Stehly testified in his deposition that he had extensive experience investigating bentonite and its permeability (up to 50 projects). There is no question that Mr. Stehly understands the nature of bentonite, its permeability, and its use as a waterproofing material. The fact that he may not know everything about Swelltite 3000, or that WBE may disagree with his opinions or the facts on which his opinions are based, goes to his credibility, not the foundation for his opinions.

WBE goes on to argue that because Mr. Stehly cannot identify the source of any particular leak, his testimony is irrelevant. This argument is absurd. The plazas at the Promenade are covered with three (3) feet of dirt. Because water can travel both vertically and horizontally, it is impossible for anyone to pinpoint the source of any particular leak. If the Court accepts WBE's argument, no one could testify about the causes of the leaks at the Promenade.

## II. MR. STEHLY'S OPINION REGARDING THE LIQUID APPLIED FLASHING SHOULD NOT BE EXCLUDED.

Mr. Stehly's opinion regarding the use of liquid flashing at the termination of the Swelltite is set forth in his report, which provides in part as follows:

> The flashing of the perimeter wall was inappropriate. The liquid applied flashing terminated near the ground surface. The flashing should have extended above the ground at least six inches, and preferably one foot. The flashing below ground was unprotected above the membrane termination, and could easily be penetrated. Copper or

> stainless steel sheet metal should have been used to protect the flashing. Also, flashing material such as neoprene, copper or stainless steel would have been more reliable than the liquid applied flashing.

This opinion is based on Mr. Stehly's observations, his review of construction documents and photographs, and upon his knowledge and experience regarding construction materials, construction techniques and waterproofing. Mr. Stehly's opinion will be helpful to the trier of fact, because a jury is unlikely to understand the need to protect the liquid membrane from damage during backfilling or even from routine maintenance, such as trimming with a weed wacker. Additionally, Mr. Stehly's knowledge of construction materials such as neoprene, copper or stainless steel flashing, would not likely be within the scope of a lay persons knowledge.

WBE argues that Mr. Stehly's opinion regarding the use of a liquid applied flashing at the termination of the Swelltite should be excluded because he didn't consider all possible alternative sources of water penetration. There are no doubt multiple sources of leaks in the plazas at the Promenade. Mr. Stehly identified eight (8) possible causes of the leaks. Every expert has identified multiple sources of leaks. The fact that there are multiple sources of leaks and the fact that experts may disagree as to what they are, does not disqualify Mr. Stehly from rendering an opinion that the liquid flashing, based upon his education, 33 years of experience in the construction industry, his knowledge of construction materials, including waterproofing products and its application, was one possible source of leaks at the Promenade. In fact, every expert in this case has identified the area around the termination of the Swelltite as a possible source of leaks.

WBE again goes on to argue that Mr. Stehly's opinion regarding the liquid flashing is irrelevant because he cannot connect any leaks to a particular cause or

condition. As stated previously, if this were the standard, no one could testify as to the possible sources of leaks at the Promenade.

## CONCLUSION

For the reasons stated herein, WBE's Motion in Limine should be denied.

COLEMAN, HULL & VAN VLIET, PLLP

September 21, 2004.

By *s/ William D. Hull*

William D. Hull (#47995)
8500 Normandale Lake Boulevard
Suite 2110
Minneapolis, Minnesota 55437
952-841-0001
*Attorneys for Third-Party Defendant Elness Swenson Graham Architects, Inc.*

*elness_memo in opp to wbe*