**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

Civil File No. 00-CV-987 JEL/JSM

Westfield Insurance Company,

Plaintiff,

v.

Weis Builders, Inc., Healey Ramme Co., sued as Healey Ramme Company, CNA Insurance Companies, sued as CNA Insurance Company; Promenade Village Townhomes, L.L.C., and Valley Forge Insurance Company, one of the CNA Insurance Companies,

Defendants,

*and*

Weis Builders, Inc.,

Third-Party Plaintiff,

v.

Waterproofing By Experts, Inc., and BRW Elness Architects, Inc., a/k/a/ Elness Swenson Graham Architects, Inc., Colloid Environmental Technologies, Co., and J-Berd Mechanical Contractors, Inc.,

Third-Party Defendants.

*and*

Colloid Environmental Technologies Co.,

Fourth-Party Plaintiff,

v.

Chris Craft Industrial Products, Inc.,

Fourth-Party Defendant,

*and*

J-Berd Mechanical Contractors, Inc.,

Fourth-Party Plaintiff,

v.

Mikesh, Inc.,

Fourth-Party Defendant.

**CHRIS CRAFT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO STRIKE**

[Oral Argument Is Requested]

**INTRODUCTION**

With less than one month to go before trial, Promenade Village Townhomes, LLC ("Promenade") has disclosed for the first time new evidence about the water-soluble film which it hopes to introduce as evidence at trial. [Aff. of GJV, Ex. A]. On September 30, 2004, David Campbell removed a piece of film from Deposition Exhibit 795 and placed it in a beaker of water. Campbell claims the film sample has not dissolved and he now intends to use this sample jar as an exhibit at trial and offer testimony about it.

Campbell also, in an affidavit submitted on September 17, 2004, added a new opinion about the Volclay Seamtape used to seal the seams in the waterproofing membrane. [Aff of David Campbell dated 9/17/04]. In that affidavit, he now opines the Seamtape "may not" be watertight because he can't be sure whether the adhesive on that product is waterproof.

Chris Craft was not given prior notice of Promenade's intent to have Campbell remove a piece of film from a marked deposition exhibit and conduct such a "test". Instead, Promenade waited until October 5, 2004—less than a month before trial—to supplement the scope of Campbell's intended testimony with a new exhibit. Similarly, Promenade waited until September 17, 2004—well after the parties' trial submissions under Local Rule 39.1 were due—to file Campbell's affidavit containing his new opinion about the seamtape.

It would certainly seem that Promenade's tactics in delaying the disclosure of Campbell's only test until so near the trial date is calculated to deprive Chris Craft of the time to prepare any evidence to refute it. Indeed, where Promenade has had possession of the film samples for at least 2 ½ years, there can be no substantial justification for waiting until now to "test" them. This is particularly so where Campbell testified in his deposition that he had no understanding of the chemistry of the material, no idea how to test the film for solubility, and that there was nothing more he could have done to perform a more complete assessment. [Campbell dep. vol. 1 pp. 30, 35].

Promenade's expert disclosure deadline was July 15, 2003, well over a year ago. Further, Promenade had a duty under Rule 26(e)(1) to supplement its expert disclosures no later than September 3,

2004, the date set by this Court for disclosure of pretrial submissions required by Local Rule 39.1. *See,* Fed. R. Civ. P. 26(e)(1).

Since Chris Craft does not have the time or opportunity to prepare a defense to refute Campbell's new opinions and evidence, Chris Craft is substantially prejudiced by Promenade's untimely disclosures. Accordingly, Chris Craft requests that this Court recognize Promenade's tactic for what it is, trial by ambush, and issue an Order striking as untimely Promenade's attempt to supplement Campbell's opinions, exhibits and testimony.

## I.

## DAVID CAMPBELL'S "NEW EVIDENCE" SHOULD BE STRICKEN BECAUSE PROMENADE'S DISCLOSURES ON THE EVE OF TRIAL ARE UNTIMLEY.

Promenade's belated attempt to supplement Campbell's testimony after all disclosure deadlines have passed constitutes a disregard for this Court's scheduling orders and the disclosure requirements established by the Federal Rules of Civil Procedure. There are a few procedural rules which apply in this situation.

First, Rule 26(a)(2)(B) provides:

> Except as otherwise stipulated or directed by the court, this disclosure shall, with respect to a witness who is retained or specially employed to provide expert testimony in the case or whose duties as an employee of the party regularly involve giving expert testimony, be accompanied by a written report prepared and signed by the witness. **The report shall contain a complete statement of all opinions to be expressed and the basis and reasons therefor**; the data or other information considered by the witness in forming the opinions; **any exhibits to be used as a summary of or support for the opinions**; the qualifications of the witness, including a list of all publications authored by the witness within the preceding ten years; the compensation to be paid for the study and testimony; and a listing of any other cases in which the witness has testified as an expert at trial or by deposition within the preceding four years.

Fed. R. Civ. P. 26(a)(2)(B) (emphasis added).

The proponent of the expert must make these disclosures at the times and in the sequence directed by the court. Fed. R. Civ. P. 26(a)(2)(C). Moreover, a party is required to supplement those disclosures as required under Rule 26(e)(1), which provides:

> A party is under a duty to supplement at appropriate intervals its disclosures under subdivision (a) if the party learns that in some material respect the information disclosed is incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing. **With respect to testimony of an expert from whom a report is required under subdivision (a)(2)(B) the duty extends both to information contained in the report and to information provided through a deposition of the expert, and any additions or other changes to this information shall be disclosed by the time the party's disclosures under Rule 26(a)(3) are due.**

Fed. R. Civ. P. 26(e)(1) (emphasis added).

Rule 26(a)(3) requires that "pretrial disclosures," in addition to other initial disclosures and disclosures of experts, be made "at least 30 days before trial," unless otherwise directed by the court. Fed. R. Civ. P. 26(a)(3).

In the Eighth Circuit, a failure to disclose discovery information in a timely manner is equivalent to a failure to disclose. *Trost v. Trek Bicycle Corporation*, 162 F.3d 1004, 1008 (8th Cir. 1998); *Sylla –Sawdon v. Uniroyal Goodrich Tire Co.*, 47 F.3d 277, 284 (8th Cir. 1995); *see also, Reid v. Lockheed Martin Aeronautics Co.*, 205 F.R.D. 655, 662 (N.D. Ga. 2001) (Rule 26(e) is not to be used to delay disclosures until 30 days before trial). A party who fails to disclose information required by Rule 26(a) is not permitted to use the undisclosed information as evidence at trial unless the failure is harmless or there was a substantial justification for the failure to disclose. Fed. R. Civ. P. 37(c)(1).

It is quite clear Promenade has not met its disclosure obligations according to the foregoing principles. There is no question the evidence is late. Promenade's revelation it intends to offer Campbell's testimony about this new test and Campbell's affidavit about the seam tape come well after this Court's established deadlines. Promenade's disclosures as to its experts, including Campbell, were due over a year ago, on July 15, 2003. [Final Pretrial Scheduling Order dated March 19, 2004]. Moreover, any supplementation of Promenade's disclosures were required to have been made no later than the time its pretrial submissions were due. *See*, Fed. R. Civ. P. 26(e)(1) and 26(a)(3). In this case, the Court ordered that all pretrial disclosures be made no later than September 3, 2004 – a deadline which expired more than a month ago.

Chris Craft's first notice of Campbell's "test" that lead to his supplemental testimony and exhibit came in the form of a faxed letter on October 5, 2004. [Aff. of GJV, Ex. A]. Promenade did not even give Chris Craft a chance to attend, observe or monitor Campbell's test. Since Campbell has never conducted any real test in this case, Chris Craft should have been notified of Campbell's last-minute effort to bolster his opinions by way of this rudimentary and unscientific test.

Similarly, the first notice given of Campbell's new opinion about the seam tape came by way of an affidavit filed by Promenade on September 17, 2004 in connection, along with its Memorandum of Law in Opposition to [CETCO's], [WBE's] and [Chris Craft's] *Daubert* Motions *In Limine*. By forming new opinions about the seam tape so late, Promenade deprived Chris Craft of it's right to conduct additional discovery on the issue and respond at trial.

**II.**

**PROMENADE'S UNTIMELY DISCLOSURES ARE PREJUDICIAL AND NOT SUBSTANTIALLY JUSTIFIED.**

Rule 37(c)(1) provides that, "[a] party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1) . . . is not, unless such failure is harmless, permitted to use as evidence at a trial . . . any witness or information no so disclosed." Fed. R. Civ. P. 37(c)(1).

Here, there is simply no justifiable reason for Promenade to have waited until now for Campbell to perform his test. Promenade has had possession of the samples which comprise Deposition Exhibit 795 since before the date of Campbell's report, May 1, 2002. This means Promenade has had at least 2 ½ years in which to decide to conduct a test. That Campbell has decided to perform an unscientific solubility test now comes as a real surprise given this deposition testimony:

Q Do you know how to test the film component of the product for solubility?

A No.

[Campbell dep. vol. 1 p. 35]. Given the long time Promenade had to plan how best to present Campbell's testimony and the evidence about the film, the only reasonable conclusion to draw is that Promenade's delay

in supplementing its expert disclosures was intentional and calculated. Nor is there any justifiable excuse for the delay in disclosing Campbell's brand new, untimely opinion about the adhesive on Volclay Seamtape. In other words, Promenade is pursuing a strategy of trial by ambush.

While a plaintiff may make tactical choices about how best to present its case, it may not abuse or ignore its discovery obligation under Rule 26(e)(1) to supplement its expert disclosures in a timely fashion. Nor can a party intentionally delay divulging evidence about which its expert will testify until right before trial such that it causes prejudice to an adverse party. *Trost v. Trek Bicycle Corporation*, 162 F.3d 1004, 1008-9 (8th Cir. 1998).

The *Trost* case provides a demonstration of this principle in action. *Trost* involved a products liability claim brought against a bicycle manufacturer. Like the present case, the plaintiff's expert did not have competent evidence to support his opinion that the frame of the bicycle was defective. Upon receiving the report of the defendant's expert, the plaintiff realized he needed additional opinions and evidence in order to prevail. Despite a looming disclosure deadline, the plaintiff made no attempt to obtain an extension. Instead, he proceeded to have his expert perform an additional test on the bicycle frame a little over a month after the deadline, and approximately a week after the defendant had filed its summary judgment motion. *Id*. at 1007. Plaintiff disclosed the results of the additional test (in the form of an affidavit by his expert) at the time he submitted his summary judgment response. *Id*. The trial court refused to accept the additional evidence on the grounds that the plaintiff's failure to disclose the evidence on a timely basis was not substantially justified and was not harmless. *Id*.

In affirming the trial court's (J. Montgomery) decision, the Eighth Circuit Court of Appeals stated:

> His [the plaintiff's] failure to comply with the deadline was not substantially justified, and it cannot be said that it was harmless. Trek had prepared its summary judgment motion at least partially premised on the lack of expert opinion to support Trost's claims. Since the case was then on the court's January trial calendar, Trek would have been significantly prejudiced by the late production of Engel's opinion because of lack of time to prepare to refute the evidence at trial.

*Id*. at 1008. Importantly, the Court noted that, had there been a compelling need for additional testing after

the disclosure deadline, the plaintiff's proper course of action would have been to seek an extension of the deadline. *Id*.

If the circumstances of the *Trost* case sound familiar, they should. Like the defendant in that case, Chris Craft's defense has consistently focused on Campbell's lack of evidence, failure to conduct any testing, and unreliable opinions. It has been nearly a year since Chris Craft's motion for summary judgment which argued Campbell's opinions about the film were not competent because he had not performed a single test. Moreover, this Court now has before it Chris Craft's motion to exclude Campbell's unreliable opinions about the film pursuant to *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993). Chris Craft's pending motion is premised, in part, upon Campbell's failure to perform any tests. Though clearly designed to defeat Chris Craft's *Daubert* motion filed on September 3, Promenade let over a month go by before disclosing this new evidence.

As neither Campbell nor any other expert had ever tested his theories, Chris Craft made a corresponding decision not to conduct any tests of its own on the film samples. After all, since Promenade is effectively the plaintiff, it bears the burden of proof to produce competent evidence to make its case. *Trost*, at 1008 (8th Cir. 1998). Chris Craft rationally developed its defense strategy in response to the disclosures of Promenade, none of which included any test of the film samples or an assertion that the adhesive on Volclay Seamtape is not waterproof.

If Promenade believed it had a compelling need for additional expert opinions or evidence, it should have sought an extension of the deadline. Rather than do that, Promenade instead made a calculated decision to wait until mere weeks before trial in which to conduct any sort of test at all, and then to conduct such testing without even the benefit of advance notice.

As there are now only three and a half weeks before trial, Chris Craft is left with insufficient time to prepare a defense to refute Campbell's new opinion and testing evidence. Given more time, Chris Craft would have been able to have the film samples examined and tested by its own experts using proper scientific

methods and instruments to determine whether the film has truly become insoluble and for what reason. Chris Craft could also have performed discovery regarding the conditions under which Campbell's test was performed, and whether the sample Campbell tested is representative of other samples taken from the Promenade. Chris Craft also would have been able to conduct discovery to determine the basis for Campbell's new opinion about the adhesive component of the seam tape.

While the film in Campbell's jar may not yet have dissolved, this does not necessarily mean Chris Craft's film was defective. It does not satisfy Promenade's burden to prove the component was defective at the time it left Chris Craft. A manufacturer of a component part has no liability unless the defect resides in the component itself, rather than in the overall design of the integrated product. *In re Temporomandibular Joint (TMJ) Implants Prod. Liab. Lit.*, 97 F.3d 1050, 1055 (8th Cir. 1996) (quoting *Bond v. E.I. Du Pont De Nemours & Co.*, 868 P.2d 1114, 1119 (Colo. Ct. App. 1993). Moreover, Minnesota law requires that the plaintiff prove the defect was present at the time it left the manufacturer's control. *Hudson v. Snyder Body, Inc.*, 326 N.W.2d 149, 155 (Minn. 1982); *Kerr v. Corning Glass Works*, 284 Minn. 115, 117, 169 N.W.2d 587, 588 (Minn. 1969) (defect in product before leaving factory must be proved).

Campbell's simple test does not demonstrate there was anything wrong with the film when it left Chris Craft. Nor is Campbell's test necessarily fool proof. Since no proper testing has ever been done, there is no way of knowing whether the molecular structure of Campbell's film sample has changed since the time it left Chris Craft. This is a distinct possibility, since Chris Craft last had control over Campbell's film samples in 1996, and since all the conditions to which the film has been exposed cannot be fully known (e.g., exposure to incompatible chemicals or materials, storage and handling conditions, sunlight exposure, etc.).

Ultimately, the question of whether the film component itself was defective at the time of sale, or whether its chemistry was somehow altered by some other circumstance cannot be fully known without proper scientific testing such as infrared spectrophotometry and nuclear magnetic resonance. Campbell's new test placed Chris Craft in the unenviable position of having to ask this

Court for appropriate relief, or of suffering prejudice at trial because it had insufficient time to refute it. Chris Craft is able to have the proper testing done, but would likely need to outsource some of the analysis to an independent testing laboratory. With trial only three weeks away, Chris Craft does not now have sufficient time to engage in such testing in order to prepare a defense to Campbell's new evidence.

Had Promenade timely presented Campbell's new opinions, or requested an extension of the expert discovery deadline, Chris Craft would have been able to respond to Campbell's assertions the seam tape is not waterproof and can pucker or be otherwise breached. Remember, Campbell has still not performed any test of the seams or the seam tape, (at least not that Promenade has disclosed to this point).

With little time before trial, this Court should either strike the "test" and Campbell's newly-asserted opinion about the seam tape, or exclude them from trial. Furthermore, this Court should issue an Order precluding any party (including but not limited to Promenade) from producing any new opinions or conducted any further tests of any of the products at issue in this case. The parties should not be permitted to continue to invent new opinions or conduct repeated tests in order to generate additional evidence for use at trial. In the alternative, this Court should continue the trial and extend the expert discovery deadlines to allow Chris Craft properly to respond to the new evidence mere days ago by Promenade.

## CONCLUSION

For the foregoing reasons, Chris Craft's motion to strike and exclude from trial the newly disclosed opinions and the test performed by David Campbell should be granted.

**BROWN & CARLSON, PA**

By: s/ G. John Veith________________
G. John Veith (#241519)
Samuel J. Glover (#327852)
5411 Circle Down Avenue
Suite 100
Minneapolis, MN 55416
763.591.9950
763.591.9202 (facsimile)

*Counsel for Fourth Party Defendant*
*Chris Craft Industrial Products, Inc.*

Dated: October 11, 2004