**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Civil File No. OO-CV-987 JNE/JSM

Westfield Insurance Company,

Plaintiff,

vs.

Weis Builders, Inc., Promenade Village Townhomes, LLC, Healey Ramme Company, and Valley Forge Insurance Company, one of the CNA Companies,

Defendants,

and

Weis Builders, Inc.,

Third Party Plaintiff,

vs.

Waterproofing By Experts, Inc., BRW Elness Architects, Inc., n/k/a Elness Swenson Graham Architects, Inc., Colloid Environmental Technologies Company, and J-Berd Mechanical Contractors, Inc.,

Third Party Defendants,

and

Colloid Environmental Technologies Company,

Third Party Defendant and Fourth Party Plaintiff,

vs.

Chris Craft Industrial Products, Inc.,

Fourth Party Defendant,

**WATERPROOFING BY EXPERTS, INC.'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO STRIKE**

(Oral Argument is Requested)

and

J-Berd Mechanical Contractors, Inc.,

Fourth Party Plaintiff,

vs.

Mikesh, Inc.,

Fourth Party Defendant.

---

## INTRODUCTION

Third Party Defendant Waterproofing By Experts, Inc., seeks an Order striking an Affidavit dated September 17, 2004, by Promenade's expert David Campbell precluding any party from offering evidence or testimony pertaining to the subject matter of that Affidavit at the upcoming trial. Waterproofing By Experts also seeks an Order precluding Promenade or any other party from offering evidence or testimony pertaining to the fact or subject matter of a test Mr. Campbell purportedly performed on a piece of allegedly undissolved water-soluble film on or about September 30, 2004. The Affidavit contains new opinions or suggests additional grounds for certain opinions held by Mr. Campbell which were not previously disclosed and are not timely under the applicable rules. Similarly, Promenade's disclosure on October 5, 2004, of Campbell's September 30 test is untimely. Both the subject matter of the Affidavit and the physical evidence and any related testimony or conclusions pertaining to the test must be stricken in view of the absence of substantial justification for Promenade's untimely disclosure and the prejudice that will result if Promenade is permitted to use the untimely disclosed information as evidence at trial or in connection with Waterproofing By Experts' Rule 702 Motion.

## FACTS

On September 17, 2004, Promenade served and filed its Memorandum opposing Waterproofing By Experts', CETCO's and Chris Craft's separate Motions to exclude certain testimony and opinions of David Campbell. Promenade attached an Affidavit of Mr. Campbell to its Memorandum which contained new opinions or bases for opinions that had not previously been disclosed. Among the previously undisclosed information contained in Campbell's Affidavit is the following:

- The term "waterproofing tape" is a technical term of art in the waterproofing industry, the use of which "conotates" (*sic*) that the tape itself is required and useful in waterproofing.
- "CETCO does not refer to the seam tape as waterproof (in its product literature) or, even, as 'waterproofing' seam tape."
- "Even if the tape substance were waterproof, the issue of whether the adhesive used on the tape was waterproof remains open because in my experience not all adhesives are waterproof. Moreover, seams without tape, seams where the tape has puckered, or seams otherwise breached provide avenues for leakage where the PVOH film has not dissolved."
- "Ultimately, water can penetrate to the concrete deck of the Promenade through numerous other avenues identified in my report. This of course includes areas where the PVOH film does not dissolve and allow the bentonite to seal off the water. These other courses for the leaks are conclusions I reached based on the investigation I did including my visual observations at the DTO's."

(Exhibit A, Affidavit of Brown).

On October 5, 2004, Promenade's counsel faxed all parties a letter stating Mr. Campbell had gone to counsel's office on September 30, 2004, and placed a small piece of supposedly water-soluble film taken from a sample of Swelltite he had removed from the subject property during his 2001 investigation (which sample had previously been marked as evidence) in a glass of water, whereupon the material did not dissolve. Promenade advised the parties of its intent to

offer the glass of water and supposedly undissolved film as evidence at trial (Exhibit B, Affidavit of Brown).

Mr. Campbell was retained by Promenade in November 2001. His investigation involved in large part the creation of 20 destructive test openings (DTOs) excavated at various locations in the subject property's courtyards in late 2001 and perhaps into January 2002. He removed samples of Swelltite from six or so of those openings to which he contends small remnants of undissolved water-soluble film are adhered.

Campbell issued his final report on May 1, 2002. Copies of his report have previously been filed by a number of parties in connection with the upcoming pretrial motions. Promenade furnished the parties with Campbell's report in compliance with one of the earlier Pretrial Scheduling Orders. Promenade filed its Rule 26(a)(2) Disclosures on July 15, 2003, in compliance with the then-existing Pretrial Scheduling Order deadlines. The portion of the disclosure pertaining to experts, and specifically Mr. Campbell, states that his report was previously provided. In other words, Campbell's May 1, 2002, report was not supplemented or amended.

Mr. Campbell was deposed on August 26, 2003, and October 8, 2003. He was questioned extensively regarding his observations and conclusions as set forth in his final report. Moreover, he was questioned extensively regarding other documents, including his preliminary report, contained in his file. Neither in any of those documents, including his final report, nor in his deposition, did Mr. Campbell make reference to the information set forth in his September 17, 2004, Affidavit. Specifically, Campbell did not testify or state in his report that he held the opinion or based any of his opinions and conclusions upon: the supposed definition of "waterproofing tape" as a term of art in the waterproofing industry meaning the tape is required

and useful; the implication that the absence of the specific term "waterproofing tape" in the CETCO product literature means the seam tape component of the Swelltite 3000 system must not be waterproof according to that supposed industry-wide definition; that even if the seam tape is waterproof, "whether the *adhesive* used on the tape is waterproof remains open because in [his] experience not all adhesives are waterproof;" that (evidently even if the seam tape is waterproof) "seams without tape, seams with the tape that has puckered, or seams otherwise breached provide avenues for leakage where the PVOH film has not dissolved;" and that, seam and tape issues aside, water can penetrate to the concrete deck through numerous other avenues "identified in my report," including areas where the film does not dissolve and allow the bentonite to seal off the water.

In addition, Mr. Campbell made clear during his deposition that he had completed his investigation without conducting any tests on Swelltite 3000, the seams, seam tape or the film. He further testified he had no intention of performing any additional testing or analysis following his deposition (Exhibit C, Affidavit of Brown, October 8, 2003, deposition of Campbell at 72, 142-43).

Campbell did, however, telephone a Mr. Perales and Mr. Rutila earlier in the week of day two of his deposition at the request of Promenade's counsel. Those individuals were supposedly retained as expert consultants in connection with a project in Ohio. Supposedly a piece of water soluble film from a sample of Swelltite material used on that project still floats undissolved in a glass of water. That issue is the subject of motions to exclude by Chris Craft and CETCO.

Now, over a year after Mr. Campbell was deposed, over two years after his final report was issued, and nearly three years after he took possession of samples removed from the property during his investigation, Promenade, in an obvious attempt to thwart WBE's, CETCO's

and Chris Craft's motions to exclude, discloses for the very first time information in the form of Campbell's Affidavit containing new opinions or grounds for opinions and the fact and results of a "test" conducted at counsel's office.

**ISSUE**

**WHETHER MR. CAMPBELL'S SEPTEMBER 17, 2004, AFFIDAVIT AND THE PHYSICAL EVIDENCE AND SURROUNDING CIRCUMSTANCES OF THE SEPTEMBER 30 TEST SHOULD BE STRICKEN AND ALL EVIDENCE AND TESTIMONY BY ANY PARTY PERTAINING TO THE SUBSTANCE OF THE AFFIDAVIT OR TEST SHOULD BE EXCLUDED AT TRIAL.**

**ARGUMENT**

**MR. CAMPBELL'S SEPTEMBER 17, 2004, AFFIDAVIT AND THE GLASS OF WATER PURPORTEDLY CONTAINING THE ALLEGEDLY UNDISSOLVED FILM SHOULD BE STRICKEN AND THE COURT SHOULD PROHIBIT ANY PARTY FROM OFFERING EVIDENCE OR TESTIMONY PERTAINING TO THE CONTENTS OF THE AFFIDAVIT OR THE TEST OR TEST RESULTS.**

Rule 26(a)(2) of the Federal Rules of Civil Procedure entitled "disclosure of expert testimony" provides in subpart (B) that a party must provide to the other parties with respect to witnesses retained to provide expert testimony a written report prepared and signed by the witness containing:

> *a complete statement of all opinions to be expressed and the basis and reasons therefore;* the data or other information considered by the witness in forming the opinions; any exhibits to be used as a summary of or support for the opinions; . . .

and other information not pertinent to this discussion.

Subpart (c) provides that the disclosures must be made at the times and in the sequence directed by the court. Furthermore, subpart (c) requires parties to supplement these disclosures when required under subdivision (e)(1).

Subdivision (e)(1) provides:

> A party is under a duty to supplement at appropriate intervals his disclosures under subdivision (a) if the party learns that in some material respect the information disclosed is incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing. With respect to testimony of an expert from whom a report is required under subdivision (a)(2)(B) the duty expends both to information contained in the report and to information provided through a deposition of the expert, and any additions or other changes to this information shall be disclosed by the time the party's disclosures under Rule 26(a)(3) are due.

Rule 26(a)(3) requires the parties to serve and file certain pretrial disclosures, including witness lists, exhibit lists and deposition designations *at least 30 days before trial, unless otherwise directed by the court*. The parties were ordered by the court in this case to submit those pretrial disclosures by no later than September 3. Promenade submitted Campbell's Affidavit two weeks beyond the deadline and notified the parties of his September 30 "test" over a month beyond the deadline. The submissions are consequently untimely.

Rule 16(f) of the Federal Rules of Civil Procedure provides in part that:

> If a party or party's attorney fails to obey a scheduling or pretrial order, . . . the judge, upon motion or the judge's own initiative, may make such orders with regard thereto as are just, and among others any of the orders provided in Rule 37(b)(2)(B), (C), (D). . .

Rule 37(b)(2)(B) describes among possible sanctions "orders prohibiting that party from introducing designated matters in evidence."

Finally, Rule 37(c)(1) provides:

> "a party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1) . . . is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on a motion any witness or information not so disclosed. . ."

In Trost v. Trek Bicycle Corp., 162 F.3d 1004 (8th Cir. 1998), the Eighth Circuit affirmed Judge Montgomery's Order excluding the plaintiff's expert's opinion based on the unjustified and prejudicial late disclosure of the expert's affidavit.

The affidavit was submitted after the deadline for expert discovery and thus authorized the district court to impose sanctions for violating the trial management order. Id. at 1008. The Court of Appeals observed that "failure to disclose in a timely manner is equivalent to failure to disclose," Thus the plaintiff "needed to produce competent evidence within deadlines set by the court or risk sanctions under Rule 16 and 37." Id.

The court rejected the plaintiff's suggestion the disclosure substantially complied with the order because his expert needed to see the defendant's expert's report before conducting additional testing, which report was not submitted until a week before the deadline. The court explained that the proper course would have been to seek an extension if plaintiff legitimately needed to wait for the opposing expert's report. Id. Accordingly, the court determined the plaintiff's failure to comply with the deadline was not substantially justified. Id.

Nor was it harmless. The defendant "would have been significantly prejudiced by the late production of Engel's opinion because of lack of time to prepare to refute the evidence at trial." In addition, the Court's trial calendar would have been disrupted if a continuance became necessary." Id. at 1008, 1009.

In Omaha Public Power District v. Siemens Aktiengesellschaft, 2002 WL 826830 (D. Neb. Jan. 15, 2002), the district court granted a motion to strike the affidavit of a Siemens' expert. There, as here, Siemens timely disclosed both an initial and supplemental report of the expert. The expert's deposition was then taken. No additional amendments to his opinions were presented until his affidavit was filed in connection with Siemens' opposition to Argus' summary judgment motion. The affidavit contained opinions not set forth in his reports or during his deposition. Id. at *2.

The court examined the expert's reports and deposition testimony and concluded they were disclosed for the first time in the affidavit. Id. at *3. The court concluded the opinions contained in the affidavit were disclosed "after all applicable court deadlines." Id. The court noted that Siemens could have and should have supplemented its expert's opinions "in the amended report prepared in August, or by the time the deposition was provided at the end of September. At the latest, the opinions critical of Argus should have been provided before the deadline for the completion of discovery . . ." Id.

The court then discussed whether the delay was justified or harmless under Fed. R. Civ. P. 37(c)(1). The court cited Trost and Sylla-Sawdon v. UniRoyal Goodrich Tire Co., 47 F.3d 277, 281-82 (8th Cir. 1995), as support for its conclusion that Siemens' untimely disclosure of the expert affidavit was unjustified, and further that "the surprise and prejudice to Argus cannot be credibly disputed." Id. at *5. The opinions contained in the affidavit were disclosed just a few weeks before the final pretrial and less than three months before trial. The court determined that permitting Siemens to offer those new opinions "would warrant reopening discovery for Argus to explore the opinions and, if necessary, counter them, which would result in a delay of the trial." Id. Consequently, the court excluded the opinions contained in the affidavit. The court further explained the sanction was fair, since all of the expert's opinions from his earlier reports remained available for use at trial. Id.

The same sanction is warranted here. Campbell's September 17 Affidavit and the physical evidence regarding the September 30 test should be stricken and any testimony or evidence referring to or relying upon the substance of either should not be allowed at trial.

First, there is no question Promenade's disclosure of the Affidavit and test, and indeed the test itself, were untimely and violated both the Court's Pretrial Order and Rule 26(e)(1).

The next issue is whether there is substantial justification for the late disclosures. There is none. Promenade will be able utterly unable to satisfactorily explain why it could not or did not furnish new information much earlier, or at least before the deadlines all expired. Promenade clearly submitted the affidavit in an attempt to rebut the parties' motions to exclude certain opinions and testimony of Mr. Campbell. See Trost, 162 F.3d at 1009. Campbell and Promenade had ample time and opportunity during the two-plus years between completing his report and the September 3 deadline for filing pretrial pleadings to supplement his opinions. Promenade has no other reasonable justification for submitting the affidavit when it.

Nor does Promenade have any valid excuse for waiting until September 30 to have Campbell conduct the new "test." After all, Campbell or Promenade's attorneys have had custody of the samples since they were taken from the site in late 2001 or early 2002. Campbell arrived at his opinions and conclusions and issued his final report on May 1, 2002, without performing such a test. He was deposed more than a year ago. He even spoke briefly on the phone with two individuals shortly before his deposition who were supposedly either privy to or had conducted a similar test, yet he (or Promenade) evidently saw no need to conduct his own test until a year later - on the eve of trial after all deadlines had expired.

Finally, there is no doubt allowing evidence and testimony consistent with the Affidavit and the test will be extremely prejudicial to WBE as well as CETCO and Chris Craft. Trial starts November 2. The parties have no way of knowing and no way to find out before trial either the basis for the new opinions set forth in the Affidavit or the facts and circumstances surrounding the so-called test. Frankly, the very fact the test was conducted at all without proving advance notice or allowing the other parties to observe, let alone object, is disturbing and highly unprofessional. The underlying purpose of the expert disclosure requirements in the Rules is to

eliminate unfair surprise to the opposing party. Sylla-Sawdon, 47 F.3d at 284; Fed. R. Civ. P. 26(a)(2)(B), Advisory Committee's Note. To allow either the opinions contained in the Affidavit or evidence of the test under these circumstances would be to sanction what the rules themselves are meant to prohibit: trial by ambush.

The only fair approach if the court considers allowing the new information is to permit the parties opposing this evidence adequate preparation to confront it. That would require, at minimum, deposing Mr. Campbell again. Fairness would also dictate permitting the opposing parties and their experts be examine the material in the water container, conduct their own tests, and evaluate the validity of Mr. Campbell's test, given the age and condition of the sample and the environment in which it has been kept all these years. Testing and analysis regarding the theories or opinions regarding "waterproofing tape" and waterproof adhesive, and whether those are even viable theories, would also have to be conducted.

Finally, the parties opposing the evidence must be given the opportunity to supplement their Rule 702 motions in the event Mr. Campbell's testimony and the results of the opposing parties' additional analysis demonstrate this untimely information lacks the requisite indicia of relevance and reliability. However, the time required to complete this additional work necessitated solely by Promenade's late (and highly questionable) disclosures would require continuing the trial date. In short, the untimely disclosures are unjustified and prejudicial to all the parties, not just WBE.

Waterproofing By Experts therefore respectfully requests the Court exercise its authority under Rules 16(f) and 37(C)(1) of the Federal Rules of Civil Procedure to strike the September 17 Affidavit of Campbell and opinions and conclusions stated therein, along with the physical evidence and testimony regarding the September 30 test. Waterproofing By Experts furthermore

requests a ruling in limine prohibiting any party from offering evidence or testimony referring to or relying upon the test or the information contained in the affidavit.

**CONCLUSION**

Based on the foregoing, Waterproofing By Experts respectfully requests the Court grant its Motion to Strike and rule in limine excluding any evidence or testimony regarding the untimely and prejudicial September 17, 2004, Affidavit of Campbell and September 30, 2004, test.

Dated: October 12, 2004.

IVERSON REUVERS, LLC

By__s/ Mark S. Brown__________

Mark S. Brown, #226774
Attorneys for Third-Party Defendant Waterproofing by Experts, Inc.
9321 Ensign Avenue South
Bloomington, MN 55438
(952) 548-7200