UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Westfield Insurance Company,
Plaintiff,

v.

Civ. No. 00-987 (JNE/JSM)
ORDER

Weis Builders, Inc. and Promenade Village Townhomes, L.L.C.,
Defendants,
and

Weis Builders, Inc.,
Third-Party Plaintiff,
v.

Waterproofing by Experts, Inc.; BRW Elness Architects, Inc., a/k/a/ Elness Swenson Graham Architects, Inc.; Colloid Environmental Technologies Co.; and J-Berd Mechanical Contractors, Inc.,
Third-Party Defendants,

and

Colloid Environmental Technologies Co.,
Fourth-Party Plaintiff,

v.

Chris Craft Industrial Products, Inc.,
Fourth-Party Defendant,

and

J-Berd Mechanical Contractors, Inc.,
Fourth-Party Plaintiff,

Andrea E. Reisbord, Esq., Cousineau, McGuire & Anderson, appeared for Plaintiff Westfield Insurance Company.

Dean B. Thomson, Esq. and Jocelyn L. Knoll, Esq., Fabyanske, Westra & Hart, P.A., and Chad J. Stepan, Esq., Meagher & Geer, P.L.L.P., appeared for Defendant and Third-Party Plaintiff Weis Builders, Inc.

Steven E. Rau, Esq. and Steven Gaskins, Esq., Fruth, Jamison, & Elsass, appeared for Defendant Promenade Village Townhomes, L.L.C.

Mark S. Brown, Esq., Iverson Reuvers, LLC, appeared for Third-Party Defendant Waterproofing by Experts, Inc.

William Dennis Hull, Esq., Coleman Hull & Van Vliet, appeared for Third-Party Defendant BRW Elness Architects, Inc., n/k/a Elness Swenson Graham Architects, Inc.

Patrick D. Reilly, Esq., Erstad & Riemer, P.A., appeared for Third-Party Defendant and Fourth-Party Plaintiff Colloid Environmental Technologies Co.

Jeanette Cogelow, Esq., Tomsche, Sonnesyn, & Tomsche, P.A., appeared for Third-Party Defendant and Fourth-Party Plaintiff J-Berd Mechanical Contractors, Inc.

G. John Veith, Esq., Brown & Carlson, P.A., appeared for Fourth-Party Defendant Chris Craft Industrial Products, Inc.

---

This case involves water leaks at a townhome development (Development). The case is before the Court on the parties' pretrial motions in limine. At an all-day hearing on October 15, 2004, the Court took several motions under advisement and allowed the parties to submit supplemental briefing on certain motions by October 18, 2004. The remaining motions in limine can be grouped into three categories: (1) the proper measure of Promenade's damages; (2) whether the trial should be bifurcated; and (3) the proper scope of David Campbell's testimony. The Court will consider each in turn.

# I. DISUCSSION

## A. Promenade's Damages

Promenade has alleged claims against Weis for breach of contract, breach of warranty, and negligence. In its trial brief, Promenade asserts that it seeks to recover approximately $14.3 million in diminution in value damages.[1] It arrived at that figure by subtracting the Development's appraised value without water damage, as estimated by its expert Robert Strachota, from the price the current owner paid for the Development in December 2002. At trial, Promenade intends to introduce evidence that will show that it would have cost $3 million to $5 million to repair the Development. Given these high repair costs, Promenade contends that it was forced to sell the Development and unable to mitigate its damages. If it introduces such evidence, however, Promenade wants to ensure that it is not precluded from seeking its claimed $14.3 million in diminution in value damages. Promenade's concern stems from the comments to the Minnesota Civil Jury Instructions relating to property damage. *See* 4A Minnesota Jury Instruction Guides, § 92.10 (4th ed. 1999). Those comments instruct courts to use part B of § 92.10 when a claimant introduces evidence during its case-in-chief of the cost of repairs. Part B instructs the jury to award either the cost of repair or diminution in value, whichever is less. Because it was forced to sell the Development and it is also seeking damages based on its negligence claim, Promenade contends that such an instruction should not be applied in this situation; instead, it asserts that it is entitled to elect its measure of damages.

In support of this proposition, Promenade primarily relies on *R.E.T. v. Frank Paxton Co.*, 329 N.W.2d 416 (Iowa 1983). In that case, the plaintiff, who sold the building through a

---

[1] In total, Promenade claims $17 million in damages, specifically $14.3 million in diminution in value, $2.7 million in income loss, and $190,000 in other costs.

distressed sale, alleged claims of breach of contract, breach of warranty, and negligence against the architect and builder. *R.E.T.*, 329 N.W.2d at 419-20. The Iowa Supreme Court addressed whether the trial court's decision that contractual and tort damages were identical was a reversible error. *Id.* at 420. The court found no error because the damages awarded were appropriate in that situation. *Id*. at 421. In reaching that conclusion, the court focused on the fact that "the purpose of a damage suit is compensation; the goal is to place the injured party in as favorable position as though no wrong had occurred," "damages are limited to the actual loss," and that "in defective constructive cases, damages may include diminution in value, cost of construction, and completion in accordance with the contract, or loss of rentals." *R.E.T.*, 329 N.W.2d at 421.

In response, J-Berd, Chris Craft, CETCO, Weis, and WBE oppose Promenade's motion. They contend that under Minnesota law the proper measure of damages in this situation is the lesser amount of either the cost of repair or diminution in value. Thus, they agree with Promenade that it can introduce cost of repair estimates in its case-in-chief, but they disagree with Promenade's assertion that it is entitled to elect its measure of damages.

The Court agrees with J-Berd, Chris Craft, CETCO, Weis, and WBE. Promenade is not entitled to elect a higher measure of damages. In general, and as is the case here, "the measure of damages for injuries to property . . . which is not totally destroyed is the difference in value before and after, or the cost of restoration, whichever is the lower amount." *Rinkel v. Lee's Plumbing & Heating Co.*, 99 N.W.2d 779, 783 (Minn. 1959); *see also* 5 Dunnell Minn. Digest *Building and Construction Contracts*, § 1.08k (5th ed. 2002) (discussing the measure of damages in construction cases). In cases involving real property, Minnesota courts have consistently held that the proper measure of damages is the diminution in value or cost of repair, whichever is less.

*See In re Commodore Hotel Fire & Explosion Cases*, 324 N.W.2d 245, 249 (Minn. 1982) (involving negligence claims related to a fire in a hotel and applying principles of contract law); *N. Petrochemical Co. v. Thorsen & Thorshov, Inc.,* 211 N.W.2d 159, 166 (Minn. 1973) (involving breach of contract claim for defective construction of a building); *VanLandschoot v. Walsh*, 660 N.W.2d 152, 156 (Minn. Ct. App. 2003) (involving a negligence claim concerning a commercial building); *Johnson v. Garages, Etc.*, 367 N.W.2d 85, 86-87 (Minn. Ct. App. 1985) (involving a breach of contract claim related to a home owner's garage).

Promenade's reliance on *R.E.T.* is misplaced because the focus of that case involved whether the damage award was appropriate and "limited to the actual loss," not what the appropriate measure of damages should be in a forced sale context. *See R.E.T.*, 329 N.W.2d at 421-22. To the extent that Promenade relies on Minnesota cases to support its position, the Court is not persuaded because those cases involved chattel, not real property. *See e.g., Computer Tool & Eng'g, Inc. v. N. States Power Co.*, 453 N.W.2d 659, 757 (Minn. Ct. App. 1990). Minnesota's election-of-remedy cases rely on Restatement of Torts (Second)§928, which is exclusively limited to harm to chattels. Finally, the Court is not convinced by Promenade's argument that it is entitled to elect diminution in value damages because it was *forced* to sell the Development. There is evidence in the record that the Development was generating income, that at least some of the repairs had been successful, and that it would not have been economic waste to repair the problem. Thus, the Court finds that the facts of this case do not distinguish it from controlling Minnesota precedent. Therefore, based on the arguments presented, the Court denies Promenade's motion insofar as it relates to Promenade's ability to pursue its claim for $14.3 million in diminution in value damages and grants the motion insofar as it relates to the introduction of evidence of cost of repairs.

Given this conclusion, the Court next turns to Weis's motion in limine that seeks to preclude Promenade from introducing Stachota's opinions about the value of the Development. As stated above, Promenade retained Strachota to appraise the Development's value with and without water leaks. Strachota appraised the Development's value without leaks to be $38.8 million, and Promenade now seeks to use this estimate to support its $14.3 million diminution in value claim. Promenade has stated that the experts in the case will testify that the cost of repairs will be between $3 million and $5 million. Given that the cost of repairs is lower than its diminution in value claim, the introduction of Strachota's testimony supporting Promenade's $14.3 million damages claim could confuse the jury and result in a decision that is contrary to applicable law. *See In re Commodore Hotel*, 324 N.W.2d at 248-49; Fed. R. Evid. 403. For these reasons, the Court grants Weis's Motion in Limine insofar as it relates to Strachota's testimony.

**B. Bifurcation and Order of Proof**

Westfield commenced this action as a declaratory judgment action against Weis, Promenade, and various other interested parties, seeking a declaration regarding the extent to which Westfield was required to indemnify Weis against claims made by Promenade involving water damage to the Development. Weis now seeks to have the case bifurcated between the insurance and construction cases, though it is willing to have the "consent" issue tried to the Court. J-Berd also seeks to have the case bifurcated. Westfield opposes the motions and instead seeks to have the parties realigned and to be permitted to cross-examine witnesses relating to remaining factual issues involving its insurance case. Promenade joins Westfield's motion.

Whether Westfield is entitled to a jury trial for its declaratory judgment claim turns on the underlying nature of the claim. *See Northgate Homes, Inc. v. City of Dayton*, 126 F.3d 1095,

1099 (8th Cir. 1997); *Johnson v. Fid. & Cas. Co. of New York*, 238 F.2d 322, 324-25 (8th Cir. 1956).[2] The Court does not reach that issue, however, because the parties, in essence, have consented in their statements to the Court to the Court's proposal at the October 15 hearing. Therefore, the trial will proceed as follows: Westfield will try its case only to the Court, during the trial of the construction case but without the jury present, and the Court will act as the fact-finder for the three remaining factual insurance issues.[3] In this way, the insurance case and the construction case will proceed on parallel tracks. Westfield will be able to question the witnesses present during the construction case trial, the jury will not be influenced by Westfield's questions, and Weis will not be forced to defend itself against Westfield in the presence of the jury. Given this, the case will be recaptioned, and the parties will present their case in the order discussed at the October 15 hearing. Accordingly, the Court grants Weis's and J-Berd's motions to bifurcate, and Westfield's and Promenade's motions relating to realignment and order of proof at trial.

**C. The Expert Opinion of David Campbell**

Promenade retained INSPEC, Inc. to investigate the water leak problems at the Development. David Campbell, INSPEC's waterproofing department manager who is a licensed architect with 16 years experience in the design and installation of waterproofing systems, supervised and led the INSPEC investigation. Campbell conducted 20 destructive test openings

---

[2] The Court appreciates Weis's and Westfield's informative and succinct supplemental briefs on this issue.

[3] In its July 1, 2004 Order, the Court determined that Westfield insurance coverage would be precluded to the extent that the fact-finder determined that the alleged damages were attributable to the rendering or failure to render professional services as described in the first endorsement or attributable to Weis's rending of failure to render professional services on the work it did itself. In addition, the Court held that coverage for certain repair work would be covered only if the fact-finder determined that Weis obtained Westfield's consent prior to incurring $669,022 in costs.

(DTO) at strategic places throughout the Development. At four of those DTOs, he observed that the water soluable film on the waterproofing membrane had not dissolved. Based on this finding, he opined in both his preliminary and final report that the waterproofing membrane failed to perform and was, in part, responsible for the leaks at the Development. Specifically, Campbell asserts that the seam tape may not have had the same watertightness characteristics of the membrane itself, that the water soluble film does not always dissolve when it comes into contact with water, that water could migrate laterally between the waterproofing membrane and the concrete deck, and that the membrane was terminated too close to the soil surface to allow the bentonite component to work properly.

Chris Craft, CETCO, and WBE seek to exclude Campbell's opinions insofar as they relate to the waterproofing membrane. They assert that Campbell is not qualified to render such opinions because he did not perform any testing to confirm his conclusions about the membrane or its component parts. They also seek to exclude other expert's testimony to the extent those experts rely on Campbell's opinions. Weis and Promenade oppose these motions, contending the Campbell's opinions meet the standards required in Rule 702 of the Federal Rules of Evidence.

The admissibility of expert testimony is governed by Federal Rule of Evidence 702, which states that "if scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise. The United States Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), makes it plain that the trial court is to act as a gatekeeper in screening such testimony for relevance and reliability. *See Daubert*, 509 U.S. at 591-93. In doing so, a

court should consider, among other factors, (1) whether the theory or technique "can be (and has been) tested;" (2) "whether the theory or technique has been subjected to peer review and publication;" (3) "the known or potential rate of error;" and (4) whether the theory has been generally accepted. *Id*. at 593-94. These factors, however, are not exclusive, and a trial court "is left with great flexibility in adapting its analysis to fit the facts of each case." *Jaurequi v. Carter Mfg. Co.*, 173 F.3d 1076, 1082 (8th Cir. 1999).

In this case, there is no dispute that Campbell did not perform any testing on the waterproofing membrane, water soluable film, or the seam tape. However, he has extensive experience in the waterproofing industry. He performed a detailed assessment of the Property, and he personally observed instances where the water soluable film had not dissolved in areas where it had come into contact with water. His testimony is relevant and will help the jury determine the cause of the leaks at the Development. Chris Craft's, CETCO's, and WBE's disputes with Campbell's conclusions can be made clear on cross-examination. Accordingly, at the present time and as a gatekeeper of the evidence, the Court denies Chris Craft's, CETCO's, and WBE's motions insofar as they relate to Campbell's testimony and the testimony of other witnesses who rely on Campbell's opinions about the waterproofing membrane.

## II. CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. Promenade's Motion in Limine [Docket No. 453] is DENIED IN PART and GRANTED IN PART.

2. Weis's Motion in Limine [Docket No. 415] is GRANTED insofar as it relates to Strachota and GRANTED insofar as it relates to consent. Robert Strachota is precluded from opining at trial about the Development's appraised value with and without water leaks.

3. Westfield's Motion for Realignment and to Set Order of Proof for Trial [Docket No. 377] is GRANTED.

4. Promenade's Joinder Motion [Docket No. 457] is GRANTED.

5. The case will be recaptioned as follows:

   Promenade Village Townhomes, L.L.C., Plaintiff,
   v.
   Weis Builders, Inc., Defendant,
   v.
   Weis Builders, Inc., Third-Party Plaintiff,
   v.
   Waterproofing by Experts, Inc.; BRW Elness
   Architects, Inc., a/k/a/ Elness Swenson Graham
   Architects, Inc.; Colloid Environmental Technologies
   Co.; and J-Berd Mechanical Contractors, Inc., Third-Party Defendants,
   v.
   Colloid Environmental Technologies Co.,
   Fourth-Party Plaintiff,
   v.
   Chris Craft Industrial Products, Inc.,
   Fourth-Party Defendant.

6. Weis's Motion to Bifurcate [Docket No. 420] is GRANTED.

7. J-Berd's Motion to Bifurcate [Docket No. 433] is GRANTED.

8. Chris Craft's Motion in Limine and *Daubert* Motion [Docket No. 379] is DENIED insofar as it relates to David Campbell and the other experts.

9. WBE's Motion in Limine to Exclude Certain Opinions Proffered by David Campbell [Docket No. 451] is DENIED.

10. CETCO's Motion in Limine [Docket No. 426] is DENIED insofar as it relates to David Campbell and the other experts.

Dated: October 19, 2004

S/ Joan N. Ericksen
JOAN N. ERICKSEN
United States District Judge